1   LAW OFFICE OF MICHAEL J. REISER
    MICHAEL J. REISER, ESQ. (SBN 133621)
2   961 Ygnacio Valley Road
    Walnut Creek, California 94596
3   Telephone: (925) 256-0400
    Facsimile: (925) 476-0304
4
    TALISMAN LAW, P.C.
5   DONALD E. CHOMIAK, ESQ. (SBN 225156)
    100 Wilshire Boulevard, Suite 950
6   Santa Monica, California 90401-1145
    Telephone: (310) 917-1019
7   Facsimile: (310) 494-0762
8   MEADE & SCHRAG LLP
    TYLER R. MEADE, ESQ. (SBN 160838)
9   MICHAEL L. SCHRAG, ESQ. (SBN 185832)
    1816 Fifth Street
10  Berkeley, CA 94710
    Telephone: (510) 843-3670
    Facsimile: (510) 843-3679
11
    FOSTVEDT LEGAL GROUP, LLC
12  WENDY C. FOSTVEDT (SBN CO 34294), ADMITTED PRO HAC VICE
    100 Elk Run Drive, Suite 129
13  Basalt, Colorado 81623
    Telephone: (970) 319-4648
14
    Attorneys for Plaintiffs
15  DEAN BEAVER, *et al.*

16              UNITED STATES DISTRICT COURT

17           SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 18  DEAN BEAVER AND LAURIE BEAVER, HUSBAND AND WIFE; STEVEN ADELMAN, AN INDIVIDUAL; AND ABRAM AGHACHI, AN INDIVIDUAL, DINESH GAUBA, AN INDIVIDUAL, KEVIN KENNA AND VERONICA KENNA, HUSBAND AND WIFE, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | Case No.  11-cv-01842-GPC-KSC  **THIRD AMENDED CLASS ACTION COMPLAINT FOR:**  1.  **VIOLATION OF THE INTERSTATE  LAND SALES FULL DISCLOSURE ACT, 15 U.S.C. § 1703 (a)(2)(A)-(C);** 2.  **VIOLATION OF THE SUBDIVIDED LANDS ACT, §§ BUS. & PROF. CODE §§ 11000, *et seq.*;** |
| 26                      Plaintiffs, | 3.  **FRAUD;** 4.  **NEGLIGENCE;** |

28   *(caption continues on next page)*

v.

TARSADIA HOTELS, A CALIFORNIA CORPORATION; TUSHAR PATEL, AN INDIVIDUAL; B. U. PATEL, AN INDIVIDUAL; GREGORY CASSERLY, AN INDIVIDUAL; 5TH ROCK, LLC, A DELAWARE LIMITED LIABILITY COMPANY; MKP ONE, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; GASLAMP HOLDINGS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; PLAYGROUND DESTINATION PROPERTIES, INC., A WASHINGTON CORPORATION; and DOES 1 – 50, inclusive,

Defendants.

**5. UNFAIR COMPETITION – VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200,** *et seq.*

**JURY TRIAL DEMANDED**

Plaintiffs Dean Beaver, Laurie Beaver, Steven Adelman, Abram Aghachi, Dinesh Gauba, Kevin Kenna and Veronica Kenna (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class"), bring this action against Defendants based upon the investigation of counsel and information and belief:

## **INTRODUCTION**

1. This class action lawsuit involves the purchase and sale of condominium-hotel units ("Unit(s)") at the Hard Rock Hotel & Condominiums project in San Diego, California (the "Hard Rock"). In connection with these sales, Defendants violated the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701 *et seq.* ("ILSA"), California's Subdivided Lands Act, Bus. & Prof Code §§ 11000 *et seq.* ("SLA"), and California's Unfair Competition Law, Bus. & Prof.

1 Code §§ 17200, *et seq.* ("UCL") by failing to disclose and intentionally concealing

2 that buyers had an absolute right to rescind their purchase contracts within two

3 years of the date of signing under ILSA and an even longer period to rescind under

4 the SLA.

5       2.     This Complaint brings causes of action against the following

6 "developers," and/or "agents" thereof, within the meaning of ILSA: 5th Rock, LLC

7 ("5th Rock" or "Seller"), the Seller identified in the standardized purchase contracts

8 signed by Plaintiffs and other members of the Class; MKP One, LLC ("MKP"), the

9 managing member of 5th Rock and the party that signed these contracts on behalf

10 of 5th Rock; Tarsadia Hotels ("Tarsadia"), the parent corporation of 5th Rock and

11 MKP; three principals of Tarsadia (Tushar Patel, its Chairman; B. U. Patel, its Vice

12 Chairman and founder; and Gregory Casserly, its President); and Gaslamp

13 Holdings, LLC ("Gaslamp"), an affiliate of 5th Rock that owns the land underlying

14 the Hard Rock (collectively "Developer Defendants"). Playground Destination

15 Properties, Inc. ("Playground"), the real estate broker for the Hard Rock, acted as

16 an "agent" of the Developer Defendants as that term is defined under ILSA.

17       3.     Beginning on or about May 18, 2006, Plaintiffs (and other members of

18 the Class) and Defendant 5th Rock executed a pre-printed, standardized Purchase

19 Contract and Escrow Instructions ("Contract") prepared by Defendants for the

20 purchase of one or more Units at the Hard Rock. Most closed escrow on their Units

21 in the late summer or fall of 2007. A copy of the Contract signed by plaintiffs Dean

22 and Laurie Beaver is attached hereto as Exhibit A, and is incorporated herein by

23 reference. A copy of the Contract signed by plaintiffs Steven Adelman and Abram

24 Aghachi is attached hereto as Exhibit B and is incorporated herein by reference. On

25 information and belief, Exhibits A & B are the same form Contract entered into by

26 the other named Plaintiffs and Class members in all material respects.

27       4.     This case arises as a result of Defendants' failure to comply with their

28 disclosure obligations under ILSA and the SLA, giving rise to Plaintiffs' and Class

members' rescission rights under both statutes. Further, Defendants affirmatively misled Plaintiffs and Class members about the rescission rights they possessed.

5.     ILSA was enacted by Congress in 1968 to protect consumers from fraud and abuse in the sale of subdivided lots, including condominium units, marketed in interstate commerce using a common promotional scheme. ILSA provides broad protections to purchasers of condominium units such as those the Defendants sold. The protections are analogous to those provided under federal securities laws and obligate developers and their agents to comply with registration and disclosure requirements prescribed by ILSA. The SLA provides similar protections for consumers buying real property in developments in California.

6.     Developers and their agents are required to comply with ILSA unless they fall under an ILSA exemption. As discussed below, no exemptions apply to the Hard Rock. ILSA prohibits developers of non-exempt projects and their agents from making false or misleading statements of material fact or omitting material facts from sales agreements and other disclosure documents required under this statutory scheme. If developers and their agents fail to make the required disclosures, or they make false or misleading statements, ILSA provides purchasers with automatic rescission rights, equitable relief and/or damages.

7.     The SLA is similar. It mandates certain disclosures and requires that buyers be provided with a public report that includes a true statement of the terms and conditions for the sale of real property governed by the SLA. Bus. & Prof. Code §§ 11010(b)(5), 11018. Where a developer fails to include in this public report a material term to the contract imposed by ILSA, the developer has violated the SLA and the buyer is entitled to rescission. Unlike ILSA, however, the SLA does not set a time limit for the exercise of this rescission right.

8.     At its most basic level, ILSA requires a developer to register a project governed by ILSA with the U.S. Department of Housing and Urban Development ("HUD") and to provide buyers with an ILSA property report that discloses

THIRD AMENDED CLASS ACTION COMPLAINT

material facts regarding the sales transaction.[1]  Where a developer chooses not to obtain an ILSA property report to be distributed to buyers before they sign their purchase contracts (or in the alternative, in California, where a developer fails to provide buyers with an ILSA-compliant public report issued by the DRE), ILSA imposes an absolute two-year right to rescind from the date of contract for the benefit of buyers where this right to rescind must be disclosed in the purchase contract.  15 U.S.C. § 1703(c).

9.    Here, Defendants failed to obtain an ILSA property report from HUD and purposefully chose to obtain a public report from the DRE that was not ILSA-compliant.  Defendants also failed to disclose the resulting two-year rescission right in the Contract, which only disclose a three-day rescission right from date of signing.  In other words, Defendants made a calculated business decision to completely ignore their disclosure obligations under ILSA in order to deny buyers certain rights otherwise imposed by ILSA.

10.    Additionally, as described herein, under 15 U.S.C. § 1703(d)(2) of ILSA, a developer is required to include in the purchase contract written notice of a 20-day opportunity for the buyer to remedy default or breach of contract.  Should the developer omit this notice provision, then a buyer is afforded an absolute, two-year right to rescind his purchase agreement from the date he signed it.  Here, Developer Defendants chose not to give Plaintiffs and members of the Class any notice of an opportunity to remedy default or breach in the Contract.  As a result,

---

[1]    On July 21 2011, the newly-formed Consumer Financial Protection Bureau took over enforcement of ILSA from HUD.  Pub.L. 111-203, Section 1061(b)(7).  However, at all times relevant to the events underlying this dispute, California was a HUD-certified state.  Pursuant to HUD regulation 24 CFR §1710.506(c), when a developer obtained a Final Subdivision Public Report from the California Department of Real Estate ("DRE") and said report was filed with HUD pursuant to the certification program, it would "automatically be effective as the Federal Statement of Record and Property Report…"

1  Plaintiffs and Class members were entitled to an automatic, two-year right to
2  rescind their Contracts.

3       11.    Prior to signing their Contracts, Plaintiffs and Class members received
4  the "Final Subdivision Public Report, File No. 120249LA-F00" concerning the
5  Hard Rock (the "Public Report"), which was issued by the DRE on April 4, 2006
6  and is attached hereto as Exhibit C and incorporated herein by reference.  This
7  report did not disclose buyers' federal rescission right imposed by ILSA and
8  otherwise failed to include notice of any rescission right whatsoever.

9       12.    In failing to comply with their disclosure obligations under ILSA, and
10  in then concealing the resulting two-year rescission right that arises under ILSA,
11  Defendants engaged in a scheme to defraud Plaintiffs and Class members in
12  violation of § 1703(a)(2)(A) of ILSA.  Alternatively, Defendants obtained money
13  from the Plaintiffs and Class members by means of omitting from the Contract and
14  the Public Report this two-year rescission right, which information was necessary
15  to make the representations concerning rescission made in the Contract, Public
16  Report and other communications not misleading, in violation of § 1703(a)(2)(B) of
17  ILSA.  Defendants otherwise engaged in a practice or course of business that
18  operated as a fraud upon Plaintiffs and Class members in violation of §
19  1703(a)(2)(C) of ILSA.

20       13.    By failing to disclose this two-year rescission right and actively
21  concealing it, Defendants' conduct constituted continuing violations of 15 U.S.C.
22  §§ 1703(a)(2)(A)-(C) through the expiration of their duty to disclose (May 18, 2008
23  at the earliest) because Defendants had an affirmative, continuing obligation to
24  disclose this rescission right.

25       14.    In taking these actions, Defendants denied Plaintiffs and Class
26  members their legal rights as the real estate market deteriorated and the economy
27  slid into recession.

28  ///

15.     Plaintiffs and Class members had no reason to suspect that the representations made by Defendants in the Contracts, Public Report and other communications concerning their rescission rights were false.

16.     After Plaintiffs and Class members closed on their Units at the Hard Rock and began receiving rental income statements from the entity operating the Hard Rock, Plaintiffs and Class members learned that actual rental income splits between owners and the management company varied significantly from the representations made to them before these buyers signed their Contracts.  At this time, Plaintiffs exercised reasonable diligence in an attempt to determine what their rights were against Defendants.  Despite retaining counsel and filing a lawsuit in July 2010, Plaintiffs' exercise of reasonable diligence did not lead to discovery of the violations of ILSA and the SLA alleged herein until Plaintiffs' former counsel introduced Plaintiffs to their current counsel in or about April 2011.

17.     As a result of Defendants' violations of ILSA and SLA, Plaintiffs and Class members are entitled to equitable rescission of their Contracts or damages under § 1709 of ILSA and comparable provisions of California law.

## PLAINTIFFS

18.     Plaintiffs Dean and Laurie Beaver are residents of San Jose, California.

19.     Plaintiff Steven Adelman is a resident of Los Angeles, California.

20.     Plaintiff Abram Aghachi is a resident of the State of California.

21.     Plaintiff Dinesh Gauba is a resident of Pleasanton, California.

22.     Plaintiffs Kevin Kenna and Veronica Kenna are residents of Santa Clarita, California.

## DEFENDANTS

23.     Defendant Tarsadia Hotels is a California corporation with its headquarters in Newport Beach, California and the ultimate parent corporation of the other corporate entities that are Developer Defendants.

24.     Defendant 5th Rock, LLC is a Delaware limited liability company, the seller of condominium-hotel Units in the Hard Rock Hotel & Condominiums project in San Diego, California, the owner of the Hard Rock Hotel San Diego, and is headquartered in Newport Beach, California.

25.     Defendant MKP One, LLC is a California limited liability company, the managing member of 5th Rock, LLC, and is headquartered in Newport Beach, California.

26.     Defendant Gaslamp Holdings, LLC is a California limited liability company, owns the land underlying the Hard Rock Hotel & Condominium project in San Diego and is headquartered in Newport Beach, California.

27.     Defendant Tushar Patel is Chairman of Tarsadia Hotels and, on information and belief, a resident of the State of California.

28.     Defendant B. U. Patel is Vice-Chairman and founder of Tarsadia Hotels and, on information and belief, a resident of the State of California.

29.     Defendant Gregory Casserly is President of Tarsadia Hotels and, on information and belief, a resident of the State of California.

30.     Defendant Playground Destination Properties, Inc. is a Washington corporation and a real estate brokerage licensed by the DRE.

31.     On information and belief, Tarsadia is the majority and dominating owner of defendants 5th Rock, MKP and Gaslamp.  Defendant Tarsadia is liable for the acts of these defendants alleged in this complaint as their alter ego.  Recognition of the privilege of separate corporate existence would promote injustice because defendant Tarsadia, on information and belief, in bad faith, dominated, controlled and otherwise failed to adequately capitalize these defendants.

32.     The true names and capacities of the Defendants, DOES 1 through 50, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs at the time of filing this Complaint and Plaintiffs, therefore, sue said Defendants by such fictitious names and will ask leave of court to amend this Complaint to show

their true names or capacities when the same have been ascertained. Plaintiffs are informed and believe, and therefore allege, that each of the DOE Defendants is, in some manner, responsible for the events and happenings herein set forth and proximately caused injury and damages to the Plaintiffs as herein alleged. All references to "Defendants" in this Class Action Complaint include the DOE Defendants.

33. Plaintiffs are informed and believe, and on that basis allege, that each Defendant named in this action, including each of the DOE defendants, was the agent, ostensible agent, servant, aider and abettor, co-conspirator, partner, joint venturer, representative and/or associate of each of the other Defendants, and was at all times relevant herein acting within the course and scope of his, her or its authority as agent, ostensible agent, servant, aider and abettor, co-conspirator, partner, joint venturer, representative and/or associate, and with the knowledge, authorization, consent, permission, and/or ratification of the other Defendants. On information and belief, all actions of each Defendant alleged herein were ratified and approved by the officers and/or managing agents of each other Defendant, whether DOE or otherwise.

## JURISDICTION AND VENUE

34. Plaintiffs originally filed this action in the Superior Court of the County of San Diego, State of California, a contractually specified forum, and then this matter was removed to this Court. The relevant property is located in San Diego County.

## COMMON ALLEGATIONS

35. In or about 2005, the Developer Defendants, through 5th Rock, began to develop a residential condominium hotel called the "Hard Rock Hotel & Condominium" project, located at 205 Fifth Avenue in the City of San Diego, California. This project was to consist of 420 Units, including 244 studios, 159 Hard Rock Suites, and 17 Rock Star Suites. Defendants and each of them, by and

through the Internet, marketing materials, brochures, and verbal statements, and utilizing the mails, telephone and other means, marketed Units at the Hard Rock through the above-referenced instruments of interstate commerce.

**A.      Sales of subdivided parcels of land are governed by state and federal law.**

36.      Pursuant to Business and Professions Code §§ 11000 – 11200, the offering and sale of subdivision parcels, including the condominium hotel Units at issue in this lawsuit, are regulated by the SLA, which is administered by the Real Estate Commissioner and the DRE.  The purpose of the SLA is to protect individual members of the public who purchase lots, including proposed condominiums, from subdivision developers, by requiring disclosure of all material terms such as federal rescission rights, and by preventing fraud, misrepresentation or deceit in the sale of parcels of unimproved real property.  This objective is accomplished by providing a prospective buyer with a disclosure of the risks so that the buyer is informed of the essential facts and can make an informed decision.

37.      Pursuant to the disclosure provisions of the SLA, a developer is required to submit information regarding the proposed subdivision and receive a "public report" from the Real Estate Commissioner reflecting the submitted information. A developer cannot sell any condominium without first obtaining a public report (*see* Bus. & Prof. Code § 11018.2) and delivering a copy of the report to any prospective purchaser prior to the purchase of the condominium.  *See* Bus. & Prof. Code § 11018.1.

38.      The development at the Hard Rock was also regulated by ILSA.  15 U.S.C. §§ 1701 *et seq*.  ILSA was enacted by Congress in 1968 to protect consumers from fraud and abuse in the sale of large subdivisions of lands that are marketed in interstate commerce.  ILSA applies to the sale of condominium units, and at all times relevant to this action was administered by HUD.  ILSA has three basic components.  First, it includes anti-fraud provisions which are contained in 15

U.S.C. §§ 1703(a)(2); second, it requires certain consumer-friendly disclosures in the purchase and sale agreements, as set forth in 15 U.S.C. §§ 1703(d)(1)-(3); and third, it requires the developer to register property with HUD and to give a detailed Property Report to a buyer before a contract is signed, as set forth in 15 U.S.C. §§ 1703(a)(1), 1704-1707.

39.     Pursuant to 15 U.S.C. § 1701(5), a "developer" is "any person[2] who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision."  ILSA defines "agent" as "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision; but shall not include an attorney at law whose representation of another person consists solely of rendering legal services[.]"  15 U.S.C. § 1701(6).  Pursuant to 15 U.S.C. § 1712, compliance with ILSA cannot be waived by contract.

**B.     California developers register projects with HUD using a DRE Public Report.**

40.     California is one of four states certified under ILSA by HUD.  Under this certification program, a developer registers a California property with HUD by submitting to HUD the "Final Subdivision Public Report" issued by the DRE in lieu of a separate registration.  Under the agreement between HUD and the DRE, an ILSA-compliant public report must include the buyers' federal rescission rights imposed by ILSA.  When a developer in California obtains a California Final Subdivision Public Report *and* said report is filed with HUD pursuant to the certification program, it "will automatically be effective as the Federal Statement of Record and [ILSA] Property Report…" 24 CFR § 1710.506(c).  Contrariwise, if a Final Subdivision Report obtained from the DRE is not filed with the HUD (and no

///

---

[2]     ILSA defines "person" as "an individual, or an unincorporated organization, partnership, association, corporation, trust or estate[.]"  15 U.S.C. § 1701(2).

separate HUD Property Report is obtained), then there is no Federal Statement of Record or Federal Property Report in effect.

41.    Although a California Final Subdivision Report properly filed with HUD under the certification program eliminates the need for developers to file a full Statement of Record and Property Report with HUD, the developer is otherwise required to fully comply with the requirements of ILSA. *See* 24 CFR § 1710.500(a).  Federal regulations provide that HUD has the same authority over California developers who follow the streamlined certification program as it has over those who file directly with HUD.  24 CFR § 1710.500.

42.    In issuing a Final Subdivision Public Report, the DRE authorizes the sale of lots within a subdivision pursuant to the terms disclosed in said report under Bus. & Prof. Code § 11018, which requires that this report "contain the data obtained in accordance with Section 11010 and which the commissioner determines are necessary to implement the purposes of this article."  Section 11010, in turn, requires, in part, "[a] true statement of the terms and conditions on which it is intended to dispose of the land, together with copies of any contracts intended to be used."  Bus. & Prof. Code § 11010(b)(5).

43.    The developer and/or its agent shall give each prospective purchaser a copy of the Final Subdivision Public Report "prior to the execution of a binding contract or agreement for the sale or lease of any lot or parcel in a subdivision."  Bus. & Prof. Code § 11018.1(a).  Thus, under the ILSA certification program, which in California relies on the provisions of the SLA, Defendants were required by ILSA and the SLA to include in the Public Report a true statement of the terms and conditions relevant to the sale of condominiums at the Hard Rock, including the buyers' federal rescission rights imposed by ILSA, and to provide Plaintiffs and Class members with this report before Plaintiffs and Class members entered into their standardized Contracts to purchase Units at the Hard Rock.

///

**C.    Defendants chose not to comply with ILSA in developing the Hard Rock to make the terms of the resulting Contract favor the Developer Defendants.**

44.    In or before early 2005, the Developer Defendants retained counsel from the Santa Monica, California office of the law firm of Greenberg Traurig, LLP ("Greenberg Traurig") for the purpose of handling the application for public reports to be obtained from the DRE and to liaison with the DRE as the "Single Responsible Party" in connection with the development and sales of Units at the Hard Rock.  Greenberg Traurig has long marketed itself as a firm specializing in ILSA.  The firm's website currently has this to say on its industry-specific webpage related to the "Hospitality" industry:

> "We have wide-ranging experience with the federal Interstate Land Sales Disclosure Act (ILSDA), as well as the individual state land sales acts and regulations, and the associated advertising and registration requirements that apply under the federal and state acts. We efficiently evaluate the spectrum of requirements and restrictions that apply to a particular project and design and implement an effective sales and marketing program that complies with the multitude of federal and state laws. We prepare detailed public offering statements under ILSDA and applicable state laws, and the application and implementation of available exemptions, according to jurisdiction. We also assist clients in training and monitoring sales staff to manage the risk associated with Internet and other marketing initiatives within the structure of a meaningful legal sales and marketing campaign."

45.    On or about March 25, 2005, Greenberg Traurig submitted to the DRE on behalf of the Developer Defendants a Preliminary Public Report Application, which is the first step in ultimately obtaining a Final Subdivision Public Report.

46.    In or about November 2005, Greenberg Traurig submitted to the DRE on behalf of the Developer Defendants a "Notice of Intention (Common Interest)," DRE Form RE 624 Part III, which is a DRE form application that the Developer Defendants used to apply for both a Conditional Public Report and a Final Subdivision Public Report (*i.e.*, the Public Report attached hereto as Exhibit C).  In

this form application, one of the questions asks whether the applicant intends to file the resulting Final Subdivision Public Report "with the HUD office of Consumer and Regulatory Affairs, Interstate Land Sales/RESPA Division (HUD-OCRA)." In response to this question, the Developer Defendants checked "No." Had they checked yes, they would have been required to submit to the DRE a copy of the Contract with the "HUD-OCRA required provisions underlined in red." By checking "No," Developer Defendants were informing the DRE that they were not applying for an ILSA-compliant Final Subdivision Public Report.

47. The Developer Defendants had two options in developing the Hard Rock as a project that was not exempt from ILSA. They could register the Hard Rock directly with HUD and obtain an ILSA property report, or they could obtain an ILSA-compliant public report issued by the DRE to be submitted to HUD in lieu of separately registering with HUD. They chose to do neither and attempted to draft the Contract to make it appear exempt from complying with ILSA by having the Contract state that construction would be complete within two years of the date of contract. However, as demonstrated below, the two-year exemption under ILSA only applies where the developer has a binding obligation under the purchase contract to complete construction within two years and buyers have the right to seek specific performance. Here, the Developer Defendants are not obligated to complete construction within two years. By ignoring their obligations under ILSA, Defendants were able to draft the Contract to include terms that robbed buyers of contractual rights they were entitled to under ILSA.

48. For instance, to comply with ILSA, the Developer Defendants were required to provide buyers with written notice in the Contract of a 20-day opportunity to remedy default or breach. 15 U.S.C. § 1703(d)(2). No such notice is included in the Contract. Similarly, under ILSA, a developer must include in the purchase contract a right to revoke the contract for at least seven days and up to two years after date of signing, depending on whether the developer has otherwise

complied with certain disclosure obligations. 15 U.S.C. § 1703(b)-(d). No such right is included in the Contract. Instead, the Contract stated buyers at the Hard Rock had three days to cancel their "offer" after signing the Contract. Lastly, in California, a developer can sell units while the property is only governed by a Conditional Subdivision Public Report, provided that a Final Subdivision Public Report is timely obtained before close of escrow, and provided the Final Subdivision Public Report does not differ in a material manner from the Conditional Subdivision Public Report. However, under the HUD certification program, developers cannot sell units until an ILSA-compliant Final Subdivision Public Report has been obtained from the DRE and submitted to HUD.

49.     The law presumes that the Developer Defendants knew what their disclosure obligations were under ILSA. The law firm that the Developer Defendants retained to act as their Single Responsible Party with the DRE specializes in assisting developers in complying with state and federal laws related to such developments. The Seller's real estate broker at the Hard Rock, defendant Playground, is a subsidiary of Intrawest U.S. Holdings, Inc. This entity and Playground, in conjunction with their affiliates, have been developing and marketing condominium-hotel units in the United States for more than a decade and have registered multiple condominium-hotel projects with HUD. Playground itself is well-versed in the disclosure obligations under ILSA.

**D.     Plaintiffs and Class members had an absolute right under ILSA to rescind their Contracts for two years from the date of signing.**

50.     Pursuant to 15 U.S.C. § 1703(c):

"In the case of any contract or agreement for the sale or lease of a lot for which a property report is required by this chapter and the property report has not been given to the purchaser or lessee in advance of his or her signing such contract or agreement, such contract or agreement may be revoked at the option of the

///

purchaser or lessee within two years from the date of such signing, and such contract or agreement shall clearly provide this right."[3]

51.     The Developer Defendants never obtained an ILSA property report. Nor did these defendants obtain an ILSA-compliant public report from the DRE to be submitted to HUD in lieu of obtaining an ILSA property report. The Public Report was never submitted to HUD by Developer Defendants and there is no mention in the Public Report of any rescission right imposed by ILSA. In fact, the Public Report fails to disclose any rescission right afforded buyers.

52.     Defendants' standardized Contract includes the following language in Section 20(i) on page 12: "BUYER MAY CANCEL BUYER'S OFFER TO PURCHASE THE UNIT AND THE CONTRACT RESULTING FROM SELLER'S ACCEPTANCE OF BUYER'S OFFER, AND RECEIVE A FULL REFUND OF BUYER'S INITIAL DEPOSIT UNTIL MIDNIGHT OF THE THIRD (3rd) CALENDAR DAY AFTER THE DAY ON WHICH THE BUYER SIGNS THIS CONTRACT, BY NOTIFYING SELLER IN THE MANNER PROVIDED IN THIS CONTRACT."

53.     Given Defendants' failure to obtain an ILSA property report or an ILSA-compliant Final Subdivision Public Report for the Hard Rock, Plaintiffs and Class members had an absolute, two-year right to rescind under ILSA that was not disclosed to them in the Defendants' form Contract as required under 15 U.S.C. § 1703(c).

54.     Similarly, pursuant to 15 U.S.C. § 1703(d)(2):

"Any contract or agreement which is for the sale or lease of a lot not exempt under section 1702 of this title and which does not provide … (2) that, in the event of a default or breach of the contract or agreement by the purchaser or lessee, the seller or lessor (or successor thereof) will provide the purchaser or lessee with

---

[3]     As discussed below, the Hard Rock was not exempt from complying with the requirements of ILSA.

written notice of such default or breach and of the opportunity, which shall be given such purchaser or lessee, to remedy such default or breach within twenty days after the date of the receipt of such notice… may be revoked at the option of the purchaser or lessee for two years from the date of signing of such contract or agreement."[4]

55.    Under § 1703(d)(2), a buyer has an absolute 2-year right to rescind if the contract does not contain the referenced 20-day cure provision.  In this case, the standardized Contract does not provide buyer with written notice of an opportunity to remedy default or breach within 20 days, and instead includes the following language:

"Except as otherwise set forth herein, Buyer's failure to perform within the time or in the manner required under any of the provisions of this Contract shall constitute a default.  In the event of any default, Seller shall be entitled to terminate this Contract, cancel the Escrow and pursue any available remedy at law or in equity against Buyer, or if Seller and Buyer have initialed Section 9(a) below titled 'Liquidated Damages', Seller shall be entitled to retain the sum set forth in said section as Liquidated Damages for default."

*See* Contract, § 8 (Exhibit A or B).

56.    The only "notice" to be provided to buyer regarding default under the terms of the Contract is found in Section 9(a)(iii) under the heading "Payment of Liquidated Damages," which likewise does not comport with ILSA.  Section 9(a)(iii) provides as follows:

"LIQUIDATED DAMAGES SHALL BE REMITTED TO SELLER ACCORDING TO THE FOLLOWING PROCEDURES: SELLER MAY GIVE WRITTEN NOTICE TO ESCROW HOLDER AND TO BUYER, IN THE MANNER PRESCRIBED BY SECTION 116.340 OF THE CODE OF CIVIL PROCEDURE FOR SERVICE IN A SMALL CLAIMS ACTION, OF SELLER'S

_____

[4]    As discussed below, the Hard Rock was not exempt from complying with the requirements of ILSA.

DETERMINATION THAT BUYER IS IN DEFAULT, AND DEMAND THAT ESCROW HOLDER DISBURSE THE LIQUIDATED DAMAGES TO SELLER ('SELLER'S DEMAND'). WITHIN SEVEN (7) DAYS AFTER BUYER'S RECEIPT OF SELLER'S DEMAND, BUYER MAY DELIVER A WRITTEN NOTICE TO ESCROW HOLDER INSTRUCTING ESCROW HOLDER NOT TO DISBURSE SUCH FUNDS TO SELLER ('BUYER'S OBJECTION'). IF BUYER DOES NOT DELIVER BUYER'S OBJECTION TO ESCROW HOLDER WITHIN THE SEVEN (7) DAY TIME PERIOD, (1) ESCROW HOLDER SHALL RELEASE THE LIQUIDATED DAMAGES TO SELLER, AND REMIT THE BALANCE OF FUNDS IN ESCROW, IF ANY, TO BUYER, AND (2) BUYER SHALL BE DEEMED TO HAVE WAIVED BUYER'S RIGHT TO RECOVER DAMAGES, IF ANY[.] UPON THE RECEIPT OF THE BUYER'S OBJECTION, ESCROW HOLDER SHALL IMMEDIATELY NOTIFY SELLER AND THE CONTROVERSY REGARDING THE DISPOSITION OF THE ESCROW DEPOSIT SHALL BE RESOLVED IN ACCORDANCE WITH THE PROVISIONS HEREIN."

57.     In summary, because the standardized Contract failed to give buyer written notice of an opportunity to remedy default or breach within 20 days of receipt of notice of same, under both ILSA and the SLA, Defendants were required to provide notice to the Plaintiffs and Class members in the Public Report that they had a federal statutory two-year right to rescind their Contracts from the date of signing.

**E.      The Public Report fails to disclose to Plaintiffs and Class members their two-year right to rescind in violation of ILSA and the SLA and Defendants had a continuing obligation to disclose this two-year rescission right.**

58.     Under HUD regulation 24 CFR § 1710.105(c), the first page of an ILSA Property Report is required to include the following disclosure:

"This Report is prepared and issued by the developer of this subdivision. It is *not* prepared or issued by the Federal Government. [¶] Federal law requires that you receive this Report prior to your signing a contract or agreement to buy or lease a lot in

this subdivision. However, NO FEDERAL AGENCY HAS JUDGED THE MERITS OR VALUE, IF ANY, OF THIS PROPERTY. [¶] If you received this Report prior to your signing a contract or agreement, you may cancel your contract or agreement by giving notice to the seller any time before midnight of the seventh day following the signing of the contract or agreement. [¶] If you did not receive this Report before you signed your contract or agreement, you may cancel the contract or agreement any time within two years from the date of signing." (Emphasis in orig.)

59.     In California, a Final Subdivision Public Report issued by the DRE is provided to buyers by Seller in place of an ILSA Property Report otherwise required under 15 U.S.C. § 1707(a). The formatting of a DRE Public Report does not allow for the placement of the above notice on the first page of the report, but the notice must still appear somewhere in the Public Report under HUD's agreement with the DRE. It must also be included in the Public Report because a rescission right is a material fact under ILSA.

60.     However, under 24 CFR § 1710.105(d)(2)(iii)-(iv), where a purchase contract does not provide buyer with written notice of a 20-day opportunity to remedy default or breach, the developer is required to replace all rescission language in an ILSA Property Report (here the Public Report) with the following language: "**Under Federal law you may cancel your contract or agreement of sale any time within two years from the date of signing.**" (Emphasis added.)

61.     The Public Report attached to this Third Amended Complaint as Exhibit C does not include ANY rescission language. Nowhere in the Public Report are Plaintiffs and Class members provided notice of their two-year right to rescind their Contracts.

62.     The Developer Defendants failed to register the Hard Rock project with HUD. Even had they done so, the Public Report provided does not disclose Plaintiffs' and Class members' two-year right to rescind. The resulting violations of ILSA and the SLA are not the end of the story, however, because Defendants had an ongoing obligation to disclose this two-year rescission right.

63.     "After a developer is effectively registered with the Secretary through a certified state, the Secretary has the same authority over that developer as the Secretary has over developers who file directly with the Secretary."  24 CFR § 1710.500(c).

64.     The HUD regulations implementing ILSA prohibit the use of a Property Report (here a DRE Public Report) that omits a material fact required to be stated therein.  24 CFR § 1710.29.  On its face, the front page of the Public Report states that "[s]ome material changes may require amendment of the Public Report; which Amendment must be obtained and used in lieu of this report."  Exhibit C, p. 1.

65.     Given the ability of the Developer Defendants to amend the Public Report, the failure of the Public Report to disclose Plaintiffs' and Class members' two-year rescission right in violation of HUD regulations and the fact that Defendants fall under the authority of HUD despite having obtained a DRE Public Report versus an ILSA Property Report, Defendants had an ongoing obligation to amend the Public Report to disclose this two-year rescission right and failed to do so.[5]

66.     As discussed below, a two-year rescission right is a material fact under ILSA, because a reasonable purchaser would consider a two-year rescission right important to the decision to make the purchase.  By omitting this two-year right from the Public Report and the Contract, and by otherwise failing to disclose this right, Defendants violated ILSA.

_____

[5]     Defendants' ongoing obligation to amend the Public Report to include a two-year rescission right as required by 24 CFR § 1710.105(d)(2)(iii)-(iv) is also demonstrated by a HUD regulation implementing ILSA.  HUD regulation 24 CFR § 30.55 concerns the imposition of civil money penalties for violations of ILSA or the regulations set forth in 24 CFR part 1710, among others, and orders issued pursuant to these authorities.  Under 24 CFR § 30.55(b), entitled "Continuing Violations," "[e]ach day that a violation continues shall constitute a separate violation."  *Id*.

67.     As previously discussed and under the SLA, the report must contain a true statement of the terms and conditions of the transaction.  *See* Bus. & Prof. Code § 11010(b)(5).  By failing to disclose this two-year rescission right in the Public Report, Defendants violated both ILSA and the SLA.

**F.     Plaintiffs' and Class members' Contracts uniformly failed to disclose the two-year right to rescind despite an obligation under the HUD regulations implementing ILSA to do so.**

68.     Under HUD regulation 24 CFR § 1710.559(a)(1), all contracts or agreements governed by ILSA must disclose a seven day rescission right where the buyer receives an ILSA Property Report before signing a purchase contract. However, "[i]f the purchaser is entitled to a longer revocation period by operation of State law or [ILSA], that period becomes the Federal revocation period and the contract or agreement must reflect the longer period, rather than the seven days." 24 CFR § 1710.559(a)(2).

69.     Here, the standardized Contract includes the following language in Section 20(i) on page 12: "BUYER MAY CANCEL BUYER'S OFFER TO PURCHASE THE UNIT AND THE CONTRACT RESULTING FROM SELLER'S ACCEPTANCE OF BUYER'S OFFER, AND RECEIVE A FULL REFUND OF BUYER'S INITIAL DEPOSIT UNTIL MIDNIGHT OF THE THIRD (3rd) CALENDAR DAY AFTER THE DAY ON WHICH THE BUYER SIGNS THIS CONTRACT, BY NOTIFYING SELLER IN THE MANNER PROVIDED IN THIS CONTRACT."

70.     Thus, the Contracts failed to disclose Plaintiffs' and Class members' two-year right to rescind despite a legal obligation under the HUD regulations implementing ILSA.

///

///

///

**G.    This statutory two-year right to rescind was a "material" fact that had to be disclosed.**

71.    The materiality standard under ILSA is drawn from federal securities jurisprudence.  Under ILSA, a "fact stated or omitted is material if there is a substantial likelihood that a reasonable purchaser or seller of a security (1) would consider the fact important in deciding whether to buy or sell the security or (2) would have viewed the total mix of information made available to be significantly altered by disclosure of the fact." *Burns v. Duplin Land Development, Inc.*, 621 F.Supp.2d 292, 308 (E.D.N.C. 2009) (internal citations and quotes omitted).  Any reasonable buyer would consider the existence of a two-year right to rescind as an important fact in deciding whether to enter into a contract to buy a condominium at the Hard Rock, because it would give the buyer a guaranteed way to escape any liability for two years from the date of signing the Contract.  The SLA also requires that material terms – like the federally mandated two year right to rescind – be disclosed.

**H.    The Hard Rock is not exempt from complying with ILSA or the SLA.**

72.    ILSA does not apply to the sale of land where the contract unconditionally obligates the seller to complete construction within two years.  15 U.S.C. § 1702(a)(2).  Here, Plaintiffs' and Class members' standardized Contracts contemplate the completion of construction in under two years, but the above exemption does not apply because:

   a. The standardized Contract provides an Estimated Completion Date of September 30, 2007; however, the Seller's promise to build is illusory and equivocal and does not satisfy the strict HUD guidelines which require the builder to unequivocally obligate itself to complete construction within two years.  HUD requires that the "contract must not allow nonperformance by the seller at the seller's discretion,"

because such an obligation is "not an obligation in reality." HUD Guidelines, 61 Fed. Reg. 13596, 13603;

    b. Pursuant to Paragraph 4.2(iii) of the Contract, Seller may cancel the Escrow and refund the Buyer's security deposit should Seller fail to obtain a Certificate of Occupancy by December 29, 2007; and

    c. Paragraphs 4.2(i) and 4.2(ii) significantly limit buyer's remedies in case of a default. The language in the Contract includes statements such as "Buyer's sole remedy" and "Buyer's Escrow Deposit... shall be refunded to Buyer." HUD Guidelines also state that "contracts that directly or indirectly waive the buyer's right to specific performance are treated as lacking a realistic obligation to construct." HUD Guidelines, 61 Fed. Reg. 13596, 13603.

73. For the foregoing reasons, the Developer Defendants were not exempt from complying with the registration and reporting obligations under ILSA in connection with their marketing and sales efforts at the Hard Rock. Nor were the Developer Defendants exempt from the SLA.

**I.    Defendants took affirmative steps to conceal from Plaintiffs and Class members their statutory two-year right to rescind the Contracts.**

74. In developing and marketing the Hard Rock, no single Tarsadia entity was responsible for a particular aspect of this process. The Developer Defendants shared office space, officers and directors, where single individuals bore titles in multiple entities and decisions were made not by a single entity, but collectively by these entities operating as a single enterprise.

75. In or before April 2006, the Developer Defendants prepared the standardized Contract to be used in connection with sales at the Hard Rock and obtained the Public Report from the DRE, where these documents were purposefully drafted to conceal Plaintiffs' and Class members' two-year rescission

rights. The Developer Defendants then provided these documents to their real

estate broker, Playground.

76. On or about May 5, 2006, Playground distributed to all or substantially all prospective buyers a publication entitled "Perspectives + Prices," which was dated May 5, 2006. In this document, Playground provided would-be buyers with drawings of the various buildings comprising the Hard Rock and the unit numbers and prices to give these prospective purchasers an idea where the various Units were situated within the proposed complex, what the views would be from these Units and how much each unit would cost. Interested persons were then requested to submit "Pre-Commitment Packages" to Playground by May 11, 2006 and a "Unit Selection Event" was scheduled for May 18, 2006.

77. Playground was also the real estate broker selling Units for Defendants at the Hard Rock. In this capacity, Playground had a statutory duty to "disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties." Cal. Civ. Code § 2079.16; *see also Holmes v. Summer*, 188 Cal.App.4th 1510, 1522-1523 (2010) (Where seller's broker is aware of information regarding the financial risks of the transaction and the broker is also aware that such information has not been disclosed to the buyer, the "broker has a duty to disclose this state of affairs to the buyer, so that the buyer can inquire further and evaluate whether to risk entering into a transaction with a substantial risk of failure").

78. Similarly, "[i]n the context of real estate transactions, it is now settled in California that where the seller knows of facts materially affecting the value of desirability of the property … and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer. [Citation.] Undisclosed facts are material if they have a significant and measureable effect on market

value. [Citation.] A breach of the duty to disclose gives rise to a cause of action for rescission or damages." *Newhall Land & Farming Co. v. Superior Court*, 19 Cal.App.4th 334, 349 (1993); *see also* Cal. Civ. Code § 1572. Moreover, where a seller has made a representation that is true when made, but which is subsequently rendered false by changed circumstances or events occurring before a change of position by the purchaser, the seller has a duty to disclose the falsity of the original representation. *See Southern Cal., etc. Assemblies of God v. Shepherd of Hills, etc. Church*, 77 Cal.App.3d 951, 955-956 (1978).

79.  The fact that Class Members had an absolute two-year right to rescind materially affected the value or desirability of the property. Playground knew of this right yet failed to disclose it to Class Members.

80.  On or about May 18, 2006, the would-be buyers selected the Unit(s) they intended to purchase at the Hard Rock.

81.  On or about May 18, 2006, the Plaintiffs and Class members received the Public Report and entered into their respective Contracts, where these documents failed to disclose Plaintiffs' and Class members' two-year right to rescind and made affirmative misrepresentations regarding their rescission rights.

82.  In addition, in or about the beginning of August 2007, Playground distributed a document to all purchasers who had already signed standardized Contracts entitled "CLOSING – IT'S TIME TO MAKE YOUR MOVE," ("Closing Notice") which was dated August 2007 and included questions and answers related to the upcoming closing of escrow on Units at the Hard Rock. On the second page of this document, the following question and answer are included:

Q: AM I REALLY IN JEOPARDY OF DEFAULT?
A: If you have not completed your loan application and seen it into underwriting, yes, you have fallen behind and may be in jeopardy. [¶] The deadline for having your loan approved is the end of August, which is just 3 weeks away and it takes on average 4 weeks to get a loan approved. See the problem? [¶] **We hate to say it but if you don't close on the date to be announced by the developer,**

**you will be in default and lose your deposit….**" (Emphasis added.)

83.    Playground distributed this Closing Notice with the full knowledge and consent of the Developer Defendants.  In distributing this notice, Defendants misled Plaintiffs and Class members by asserting that these buyers would lose their deposits if they failed to close on time, because each of these buyers had a two-year right to walk away from their Contracts.  At no point did any defendant disclose to Plaintiffs or Class members that they had the right to rescind their Contracts for two years from the date of execution.  Rather, each defendant purposefully concealed from Plaintiffs and Class members their two-year right to rescind.

84.    In response to the Closing Notice, Plaintiffs and Class members' recourse was to seek guidance from their Contracts and the Public Report, which documents misled them into believing either that their rescission rights were limited to three days from signing under the Contract or that they had no right to rescind.

85.    In or after October 2007, believing that they would lose their deposits if they did not close and that they had no other options, the Plaintiffs and Class members closed escrow on their Units at the Hard Rock.

86.    By the spring of 2008, in the midst of the imploding real estate market, unbeknownst to the Plaintiffs and Class members, they were still within the window to exercise their two-year right to rescind.

87.    The Defendants knowingly and willfully devised and carried out a common plan, scheme or artifice to defraud members of the Class by purposefully omitting the two year right of rescission from both the Contract and the Public Report and instead intentionally misrepresenting in the Contract that only a three day right of rescission existed.  Defendants further purposefully concealed this two-year rescission right and in August 2007 wrongfully led buyers to believe that they would lose their deposits if they did not close escrow, which statement requires the assumption that no rescission right existed.

88.     Under applicable law, a Plaintiff demonstrates reliance on a wrongful omission by showing that had the information withheld been disclosed, Plaintiff would have been aware of this information and would have acted differently.  Here, Plaintiffs justifiably relied on the Defendants' wrongful omission of Plaintiffs' two-year right to rescind by closing escrow on their Units at the Hard Rock.  Had this two-year right to rescind been disclosed in the spring of 2008, Plaintiffs and Class members would have rescinded their contracts and recovered their purchase monies to escape the effects of the real estate market crash underway at the time.

**J.     Even with the exercise of reasonable diligence, Plaintiffs were unable to discover their rescission rights before April 2011 and Class members cannot be held to a higher standard.**

89.     After Plaintiffs and Class members closed on their Units at the Hard Rock and began receiving rental income statements from the entity operating the Hard Rock, Plaintiffs and Class members learned over time that actual rental income splits between Unit owners and the management company varied significantly with the representations made regarding these splits before Plaintiffs and Class members signed their Contracts.

90.     In or about the spring of 2010, Plaintiffs retained counsel, provided counsel with the relevant documents and sought legal advice concerning what their rights were in connection with their purchases at the Hard Rock.  This resulted in the filing of an earlier case entitled *Bell v. Tarsadia Hotels, et al.*, San Diego County Superior Court Case No. 37-2010-00096618-CU-BT-CTL, which was filed on July 26, 2010.  Four separate law firms were involved in the preparation and filing of this earlier action, which was brought as a securities case and did not mention or rely on either ILSA or the SLA.

91.     Despite retaining counsel and eventually filing a lawsuit in July 2010, Plaintiffs did not discover their two-year rescission right under ILSA or Defendants' violations of ILSA and the SLA alleged herein until Plaintiffs' former

counsel introduced Plaintiffs to their current counsel, who have experience litigating ILSA claims, in or about April 2011.

92.     Thus, Plaintiffs did exercise reasonable diligence, but due in large part to the Defendants' affirmatively false statements about Plaintiffs' rescission rights, and due in part to the novel nature of the ILSA and SLA claims alleged herein, Plaintiffs were unable to discover their rescission rights and Defendants' violations of ILSA and the SLA any earlier than April 2011.  In other words, the exercise of reasonable diligence did not lead to the discovery of Plaintiffs' rescission rights or Defendants' violations of ILSA and the SLA before April 2011.  Class members cannot be held to a higher standard.

**K.      Plaintiffs and Class members have suffered damages as a result of Defendants' wrongful conduct.**

93.     As a result of Defendants' wrongful conduct, Plaintiffs and Class members suffered damages due to the concealment of Plaintiffs and Class members two year rescission rights as the Defendants' concealment of these rights prevented Plaintiffs and Class members from timely exercising their rescission option. If the Plaintiffs and Class members had been allowed to exercise these rights, Plaintiffs and Class members would not have incurred damages.

94.     Plaintiffs' damages include monetary losses, as well as incidental and consequential damages consisting of, but not limited to, financial expenditures related to ownership of their Units at the Hard Rock, travel expenses, the decrease in value of their respective Units and the loss of business opportunities, the exact measure of which damages shall be determined at trial.

95.     Plaintiffs and Class members have been damaged, in part, because the costs of ownership for their Units at the Hard Rock have exceeded rental income since the Hard Rock opened in December 2007.  Additionally, should Plaintiffs and Class members prevail in this action, they would be entitled to recover reasonable

///

attorneys' fees, costs and other consequential damages, including the cost of travel to and from the property to conduct their pre-purchase inspection pursuant to ILSA.

**L.  Seller and its real estate broker owed Plaintiffs and Class members a duty to disclose.**

96.  Finally, under California law, where the seller (5th Rock) and its real estate broker (Playground) are aware of facts materially affecting the value or desirability of the property which are known or accessible only to them, they are under an affirmative legal duty to disclose such facts to the buyer.  As described above, the required disclosures were never made to Plaintiffs or Class members.

## CLASS ACTION ALLEGATIONS

97.  This action is brought on behalf of Plaintiffs individually and, pursuant to Fed.R.Civ.P. 23, on behalf of all individuals and businesses who purchased Units at the Hard Rock at any time between May 2006 and December 2007 (the "Class"). Excluded from the Class are Defendants and their officers, affiliates, directors, employees and the immediate family members of its officers, directors and employees.

98.  This action is properly brought against Defendants as a class action for the following reasons.  The class is composed of hundreds of people and entities that are geographically widely disbursed.  The Class is so numerous that joinder of all members is impracticable.  The disposition of Plaintiffs' and Class members' claims in a class action will provide substantial benefits to both the parties and the Court.  The Class is readily ascertainable and there is a well-defined community of interest in the questions of law and fact alleged because the rights of each Class member were infringed or violated in the same fashion based on Defendants' wrongful concealment of Plaintiffs' and Class members' rescission rights afforded to them under the operation of ILSA.  The violations of ILSA and SLA arise from material omissions in standardized contracts signed by Plaintiffs and all Class Members.  Notice to the Class can be provided through the records of Defendants,

its affiliates and subsidiaries, or by publication, the cost of which is properly imposed upon Defendants.

99.     Questions of law or fact common to the Class predominate over questions that may affect particular Class members.  Some common questions include:

        a.  Whether the Public Report provided to buyers at the Hard Rock before they signed their Contracts was an ILSA-compliant Final Subdivision Public Report;

        b.  Whether Defendants obtained an ILSA property report from HUD;

        c.  Whether Defendants' failure to present an ILSA property report or an ILSA-compliant Final Subdivision Public Report obtained from the DRE concerning the Hard Rock to Plaintiffs and Class members before they signed their Contracts resulted in ILSA imposing a two-year right to rescind from date of contract required to be disclosed in the Contract under 15 U.S.C. § 1703(c);

        d.  Whether the form Purchase Contract And Escrow Instructions used by Defendants in connection with the sale of Units at the Hard Rock includes written notice of an opportunity for buyer to remedy default or breach within 20 days of receiving notice of default or breach;

        e.  Whether Defendants' failure to include such an opportunity for buyer to remedy default or breach in the Contract results in buyers obtaining a statutory right to rescind their Contracts for two years from the date of signing under 15 U.S.C. § 1703(d)(2);

        f.  Whether Defendants had a legal obligation under ILSA or any regulations promulgated thereunder to disclose in the Public Report buyer's absolute right to rescind his Contract for two years from date of signing;

///

g. Whether Defendants had a legal obligation under the SLA to disclose in the Public Report buyer's absolute right to rescind his Contract for two years from date of signing;

h. Whether Defendants had a legal obligation under the ILSA to replace the three day right to rescind language in Section 20(i) of the uniform Contract with language disclosing the two-year right to rescind arising under 15 U.S.C. § 1703(c);

i. Whether Defendants had a legal obligation under the ILSA to replace the three day right to rescind language in Section 20(i) of the uniform Contract with language disclosing the two-year right to rescind arising under 15 U.S.C. § 1703(d)(2);

j. Whether Defendants had a legal obligation under the SLA to replace the three day right to rescind language in Section 20(i) of the uniform Contract with language disclosing the two-year right to rescind arising under 15 U.S.C. § 1703(c);

k. Whether Defendants had a legal obligation under the SLA to replace the three day right to rescind language in Section 20(i) of the uniform Contract with language disclosing the two-year right to rescind arising under 15 U.S.C. § 1703(d)(2);

l. Whether Defendants otherwise had an affirmative legal obligation to disclose to Plaintiffs and Class members this two year right to rescind;

m. Whether Defendants failed to disclose to Plaintiffs and Class members this two-year right to rescind and took affirmative steps to conceal such right until after the period expired;

n. Whether this material omission and concealment violates ILSA;

o. Whether this material omission and concealment violates the SLA;

p. Whether Plaintiffs and Class members were damaged by Defendants' failure to disclose this two-year right to rescind;

q. Whether Plaintiffs and Class members are entitled to compensatory damages, consequential damages, punitive damages, restitution, disgorgement and other remedies because of Defendants' conduct.

100. Plaintiffs' claims are typical of the claims of the members of the Class in that they entered into identical or substantially similar contracts omitting the same material rescission rights as the contracts of all other Class members. Plaintiffs will fairly and adequately protect the interests of the Class in that they have no interest antagonistic to those of the Class members, and Plaintiffs have retained attorneys experienced in class action and complex litigation.

101. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons among others:

a. This action will promote an orderly and expeditious administration and adjudication of the Class claims, economies of time and effort and resources will be fostered, and uniformity of decisions will be ensured;

b. Without a class action, Class members will likely continue to suffer damages, and Defendants' violations of law will go without remedy while Defendants continue to reap and retain the substantial proceeds of their wrongful conduct.

102. Given the size of the individual Class members' claims and the expense of litigating these complex claims, not all Class members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions.

///
///
///
///

# FIRST CAUSE OF ACTION

## (Violation of ILSA, 15 U.S.C. § 1703(a)(2)(A), (B) and (C)
## Against All Defendants)

103.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 102 as if fully set forth herein.

104.    Under the HUD certification program discussed above, a developer of a California property subject to ILSA satisfies ILSA's requirements regarding both the Statement of Record and Property Report by obtaining a Final Subdivision Public Report from the DRE issued pursuant to Bus. & Prof. Code § 11018, which report shall contain "[a] true statement of the terms and conditions on which it is intended to dispose of the land..."  Bus. & Prof. Code §§ 11010(b)(5), 11018.

105.    Under the terms of the Agreement between HUD and the DRE, this public report must include buyers' federal rescission rights imposed by ILSA. There are two federal rescission rights imposed by ILSA that are applicable to this case.  First, Pursuant to 15 U.S.C. § 1703(d)(2):

> "Any contract or agreement which is for the sale or lease of a lot not exempt under section 1702 of this title and which does not provide … (2) that, in the event of a default or breach of the contract or agreement by the purchaser or lessee, the seller or lessor (or successor thereof) will provide the purchaser or lessee with written notice of such default or breach and of the opportunity, which shall be given such purchaser or lessee, to remedy such default or breach within twenty days after the date of the receipt of such  notice… may be revoked at the option of the purchaser or lessee for two years from the date of signing of such contract or agreement."

Second, pursuant to 15 U.S.C. § 1703(c):

> "In the case of any contract or agreement for the sale or lease of a lot for which a property report is required by this chapter and the property report has not been given to the purchaser or lessee in advance of his or her signing such contract or agreement, such contract or agreement may be revoked at the option of the purchaser or lessee within two years from the date of such signing, and such contract or agreement shall clearly provide this right."

106.    Moreover, under 15 U.S.C. § 1703(b)-(d), a purchaser's rescission right under ILSA must be disclosed in the purchase contract.  Thus, under ILSA, if a purchase contract fails to provide buyer with written notice of an opportunity to remedy default or breach within 20 days of receiving notice of default or breach, or where a developer fails to obtain an ILSA property report or to obtain an ILSA-compliant Final Subdivision Public Report from the DRE and present such a report to buyer before buyer signs a purchase contract, then buyer has the right to rescind his contract for two years from the date of signing and this right must be disclosed in the relevant purchase contract.  Plaintiffs' Contracts do not disclose this two-year right to rescind, a material omission under ILSA.

107.    In contrast, the Contracts mislead Plaintiffs and Class members and include only a three day right to rescind in violation of 15 U.S.C. § 1703(b)-(c), and 24 CFR § 1715.2.

108.    Defendants failed to disclose to Plaintiffs and Class members their two-year right to rescind both in their Contracts and in the Public Report, and otherwise misled Plaintiffs and Class members and concealed their true two year right of rescission for more than three years.

109.    Defendants further purposefully misled Plaintiffs and Class members as to their two year right of rescission and actively concealed the right from Plaintiffs and Class members until expiration of such rights.

110.    By this scheme and concealment, Defendants, and each of them:

a.    employed a device, scheme or artifice to defraud Plaintiffs and Class members in violation of U.S.C. § 1703(a)(2)(A);

b.    obtained money from Plaintiffs and Class members by means of omissions of material facts necessary in order to make the statements made in the Public Report and the Contracts not misleading, in violation of U.S.C. § 1703(a)(2)(B); and

///

c. engaged in a practice and course of business which operated as a fraud or deceit upon Plaintiffs and Class members in violation of 15 U.S.C. § 1703(a)(2)(C).

111.   Defendants violated the anti-fraud obligations under § 1703(a)(2) (a)-(c) by actively concealing the two year right to rescind to protect themselves at Plaintiffs' and Class members' expense in a collapsing real estate market.

112.   Despite exercising reasonable diligence which included hiring counsel to investigate their legal claims when they were suspicious that Defendants were misreporting rental revenues and expenses relating to their Units, Plaintiffs were unable to discover Defendants' ILSA violations until April 2011.

113.   The purposeful concealment of Plaintiffs' and Class members' rescission rights substantially damaged Plaintiffs and Class members by preventing them from timely rescinding their respective Contracts had they known of their absolute right to rescind under ILSA in the spring of 2008.

114.   Given Defendants' purposeful deception in withholding from Plaintiffs and Class members this critical information for more than three years, the equities demand rescission. Pursuant to 15 U.S.C. § 1709(a), Plaintiffs and Class members are entitled bring an action in law or equity for damages, specific performance, or such other relief as the Court deems fair, just and equitable.

115.   Accordingly, Plaintiffs and Class members hereby elect to rescind their respective contracts and recover the full consideration paid for their respective Units; or alternatively, Plaintiffs and Class members seek damages pursuant to 15 U.S.C. § 1709(a), which, pursuant to said section, should be measured by the difference between "the amount actually paid" and "the fair market value of the lot or leasehold at the time relief is determined[,]" plus other damages as alleged herein, which total sum will be determined at trial.

///

///

116. Pursuant to 15 U.S.C. § 1709(c), in addition to rescission or damages, Plaintiffs and Class members are entitled to interest, costs, and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

**(Violations under SLA, Bus. & Prof. Code 11000 *et seq.*, Against All Defendants)**

117. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 116 as if fully set forth herein.

118. California's Subdivided Lands Act provides, in part, that "a copy of the public report of the commissioner, when issued, shall be given to the prospective purchase by the owner, subdivider or agent prior to the execution of a binding agreement." Bus. & Prof. Code § 11018.1.

119. Section 11010 of the SLA requires, in part, that a public report contain "[a] true statement of the terms and conditions on which it is intended to dispose of the land, together with copies of any contracts intended to be used." Bus. & Prof. Code § 11010(b)(5). Although Defendants provided Plaintiffs and Class members with the Public Report, Defendants did not include in this report a true statement of the terms and conditions of the transaction, because the report fails to disclose Plaintiffs' and Class members' two-year right to rescind their Contracts from the date of signing.

120. A sale of real property in violation of the Subdivided Lands Act gives the purchaser the right to rescind or to seek damages.

121. Plaintiffs and Class members hereby elect to rescind their respective Contracts and recover the full consideration paid for their respective Units; or alternatively, Plaintiffs and Class members seek damages in excess of the jurisdictional threshold of this Court, which damages were caused by Defendants' wrongful conduct.

///

122.   Despite exercising reasonable diligence which included hiring counsel to investigate their legal claims when they were suspicious that Defendants were misreporting rental revenues and expenses relating to their units, Plaintiffs were unable to discover Defendants' SLA violations until April 2011.

## THIRD CAUSE OF ACTION

### (Fraud Against All Defendants)

123.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 122 as if fully set forth herein.

124.   Defendants failed to disclose to Plaintiffs and Class members their two-year right to rescind both in their Contracts and in the Public Report, and otherwise concealed this right from Plaintiffs and Class members for more than three years despite the affirmative legal duty to disclose this right both under ILSA and the SLA.

125.   Moreover, Playground, as an agent for the Developer Defendants, made affirmative misrepresentations in the August 2007 Closing Notice on the Developer Defendants' behalf regarding the risks Plaintiffs and Class members would face if they failed to close escrow.

126.   Under applicable law, a party is held to rely on an omission where had the information wrongfully concealed been disclosed, the party would have been aware of this information and would have acted differently.  Here, had Plaintiffs and Class members been informed of their two-year rescission rights in the spring of 2008, they would have rescinded their Contracts and recovered their purchase monies.

127.   As a proximate result of Defendants' deception, Plaintiffs and Class members have been damaged in a sum in excess of the jurisdictional threshold of this Court, and in additional amounts to be determined at time of trial, including interest and costs.

///

128.   The aforementioned conduct of Defendants, and each of them, involved the concealment of a material fact known to each of the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiffs and Class members of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiffs and Class members to a cruel and unjust hardship in conscious disregard of their rights, so as to justify an award of exemplary and punitive damages.

## FOURTH CAUSE OF ACTION

### (Negligence Against All Defendants)

129.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 128 as if fully set forth herein.

130.   Defendants had a legal duty to disclose Plaintiffs' and Class members' two-year right to rescind in the Public Report, a duty to replace the language in the Contract concerning a three-day right to rescind with language disclosing this two-year right, and a duty to otherwise disclose to Plaintiffs and Class members their two-year right to rescind.

131.   Defendants breached these duties by failing to disclose in any fashion the existence of this two-year rescission right.

132.   Plaintiffs and Class members were damaged by Defendants' negligence in failing to disclose Plaintiffs' and Class members' two-year rescission right.  Had Defendants fulfilled their admitted and legal disclosure obligations, Plaintiffs and Class members would have rescinded their Contracts or otherwise unwound their purchases at the Hard Rock.

133.   As a proximate result of Defendants' negligent conduct, Plaintiffs and Class members have been damaged in a sum in excess of the jurisdictional threshold of this Court, and in additional amounts to be determined at time of trial, including interest and costs.

///

134.   Defendants' negligence was a substantial factor in causing Plaintiffs' and Class members' harm.

## FIFTH CAUSE OF ACTION

**(Violation of UCL, Bus. & Prof. Code §§ 17200, *et seq*.,
Against All Defendants)**

135.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 134 as if fully set forth herein.

136.   The UCL prohibits anything that constitutes an unfair, unlawful or deceptive business practice.  Bus. & Prof. Code § 17200.  The UCL authorizes a private right of action by anyone who has suffered injury in fact and allows recovery of amounts which may be necessary to restore to any person in interest any money or property which may have been acquired by means of any practice that violates the UCL.  Bus. & Prof. Code § 17203.

137.   The "unlawful prong" of the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL. Here, Defendants have violated the unlawful prong of the UCL because they violated ILSA and SLA.

138.   As a result of Defendants' unlawful practices—the violations of ILSA and SLA, Plaintiffs and all other members of the proposed class have suffered injury in fact and lost money or property in that had Plaintiffs been informed of their right to rescind they would have exercised this right and not closed on their condominium Units and are thus entitled to restitution, as well as injunctive relief.

139.   In addition, Defendants have committed unfair and deceptive business practices in violation of the UCL in that they concealed information that Plaintiffs and Class members were entitled to receive prior to closing escrow on their respective Units at the Hard Rock, including the fact that they had a two-year rescission right.  These practices were deceptive in that they were likely to deceive Plaintiffs and Class members about their rescission rights.  They were also unfair in

that the offended established public policy and the harm caused to Plaintiffs and Class members greatly outweighs any benefits associated with these practices. As a direct and proximate result of these unfair and deceptive practices, Plaintiffs and Class members have suffered injury in fact and lost money or property and are thus entitled to restitution, as well as injunctive relief.

140. In particular, Playground committed unfair and deceptive business practices in that California has a legislative policy demanding that real estate brokers and the sellers of real estate disclose all facts materially affecting the desirability or value of the property that are not known to, or within the diligent attention and observation of, the parties. Here, Class Members did not know about their two-year right to rescind; but Playground, based on its experience selling condominium units, did know about this right. Yet in violation of this established California policy, Playground failed to disclose this right to Class Members and as such committed an unfair practice as defined in the UCL. The Developer Defendants similarly either knew or should have known their disclosure obligations under ILSA given that the law firm that shepherded the Developer Defendants' application for the Public Report specialized in assisting developers in complying with disclosure obligations under ILSA.

141. Plaintiffs are informed and believe and based thereon allege that Defendants have derived substantial revenues from their wrongful and deceptive acts. Plaintiffs and Class members have been deprived of property to which they are entitled and/or in which they have a vested interest in that had Plaintiffs been informed of their right to rescind they would have exercised this right and not closed on their condominium Units. Pursuant to Business and Professions Code section 17203, Plaintiffs and Class members are entitled to an order requiring Defendants to restore to Plaintiffs and Class members any money or property which may have been acquired by means of such unfair competition in connection with the sale of Units at the Hard Rock.

**WHEREFORE**, Plaintiffs and Class members pray for judgment against Defendants, and each of them, as follows:

1. For special damages according to proof;

2. For general damages according to proof;

3. For consequential damages according to proof;

4. For equitable and statutory rescission;

5. For restitution of all monies paid to the Defendants or their assigns, according to proof;

6. For attorneys' fees and costs according to proof;

7. For pre-judgment and post-judgment interest;

8. For punitive and/or exemplary damages; and

9. For such other and further relief as the court may deem just and proper.

Dated: April 18, 2013      LAW OFFICE OF MICHAEL J. REISER
                                MICHAEL J. REISER

                                TALISMAN LAW, P.C.
                                DONALD E. CHOMIAK

                                FOSTVEDT LEGAL GROUP, LLC
                                WENDY C. FOSTVEDT
                                ADMITTED PRO HAC VICE

                                MEADE & SCHRAG LLP
                                TYLER R. MEADE
                                MICHAEL L. SCHRAG


                                By: */s/ Tyler Meade*_____
                                    Tyler Meade
                                    Attorneys for Plaintiffs
                                    tyler@meadeschrag.com

## PROOF OF SERVICE

*Dean Beaver, et al. v. Tarsadia Hotels, et al.*
United States District Court, Southern District of California
Case No. 11-cv-01842-GPC-KSC

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made, in the County of Alameda, State of California. I am over the age of 18, and not a party to this action. My business address is 1816 Fifth Street, Berkeley, California 94710. On the date set forth below, I served the following document(s):

**THIRD AMENDED CLASS ACTION COMPLAINT FOR:**
    1.    **VIOLATION OF THE INTERSTATE LAND SALES FULL DISCLOSURE ACT, 15 U.S.C. § 1703 (a)(2)(A)-(C);**
    2.    **VIOLATION OF THE SUBDIVIDED LANDS ACT, §§ BUS. & PROF. CODE §§ 11000,** *et seq.***;**
    3.    **FRAUD;**
    4.    **NEGLIGENCE;**
    5.    **UNFAIR COMPETITION – VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200,** *et seq.*
**JURY TRIAL DEMANDED**

On all interested parties in this action by ECF as follows:

**VIA ECF:**
Thomas McNamara (mcnamarat@ballardspahr.com)
Daniel M. Benjamin (benjamind@ballardspahr.com)
Chrysta L. Elliott (elliottc@ballardspahr.com)
John J. Rice (ricej@ballardspahr.com)
Ballard Spahr, LLP
655 West Broadway, Suite 1600
San Diego, CA 92101

**VIA ECF:**
Frederick Kranz (fkranz@coxcastle.com)
Alicia N. Vaz (avaz@coxcastle.com)
Perry Hughes (phughes@coxcastle.com)
Cox, Castle & Nicholson LLP
2049 Century Park East, 28th Floor
Los Angeles, CA 90067-3284

[X] (BY EMAIL/ECF) By electronically filing the foregoing through the ECF system which will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on or before April 18, 2013.

[] (BY MAIL) I am readily familiar with my firm's practice for collection and processing of correspondence for mailing with the United States Postal Service, to-wit, that correspondence will be deposited with the United States Postal Service this same day in the ordinary course of business. I sealed said envelope(s) and placed it for collection and mailing on the date indicated below, following ordinary business practices.

[] (BY E-MAIL OR ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the person(s) at the e-mail address(es) listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[] (BY FACSIMILE) I caused the aforementioned document(s) to be transmitted by Facsimile machine to the facsimile number(s) indicated for the person(s) identified above.

[] (BY FEDERAL EXPRESS) I caused the aforementioned envelope(s) to be delivered to Federal Express for overnight courier service to the address(es) listed above for the person(s) identified above.

[] (PERSONAL SERVICE) I caused the aforementioned envelope(s) to be delivered by hand to the address(es) listed above for the person(s) identified above.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed on April 18, 2013 in Berkeley, California.

/s/ Tyler Meade
Tyler Meade