UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN BEAVER, et al.,<br><br>                       Plaintiffs,<br><br>vs.<br><br>TARSADIA HOTELS, et al.,<br><br>                       Defendants,<br>_____<br>TARSADIA HOTELS, et al.,<br><br>                       Third Party Plaintiffs<br><br>GREENBERG TRAURIG, LLP, et al.,<br><br>                       Third Party Defendants | CASE NO. 11CV1842-GPC(KSC)<br><br>**ORDER DENYING THIRD PARTY DEFENDANT'S MOTION TO DISMISS, AND ALTERNATIVELY, MOTION TO STAY**<br><br>[Dkt. No. 124.] |

      On June 14, 2013, Third Party Plaintiffs Tarsadia Hotels; Tushar Patel; B.U. Patel; Gregory Casserly; 5th Rock, LLC; MKP One, LLC; and Gaslamp Holdings, LLC (collectively "Tarsadia Defendants") filed a third party complaint for professional negligence; breach of contract and breach of fiduciary duty against their attorney law firm, Third Party Defendant Greenberg Traurig, LLP ("Greenberg"); and Richard

Davis.[1] Before the Court is Third Party Defendant Greenberg's motion to dismiss, or in the alternative, stay the third party complaint. (Dkt. No. 124.) Third Party Plaintiffs filed an opposition on October 18, 2013. (Dkt. No. 129.) Third Party Defendant filed a reply on October 31, 2013. (Dkt. No. 132.) After a review of the briefs, supporting documentation and the applicable law, the Court DENIES Third Party Defendant's motion to dismiss, and DENIES Third Party Defendant's motion to stay the action.

## Background

On March 26, 2004, Tarsadia Hotels and 5th Rock's predecessor PBP Hotel Corporation entered into a professional services agreement or engagement agreement with Greenberg Traurig, LLP relating to the development, structuring, marketing and sale of condominium units at the Hard Rock Hotel and Condominium Project, a mixed-use development to include 420 guestroom commercial condominium units ("Units") located at 205 Fifth Avenue in San Diego, California. (Dkt. No. 106-2, Third Party Compl. ("TAC") ¶¶ 17, 18, 19; Ex. A.) All legal services were provided to 5th Rock and all other Third Party Plaintiffs. (Id. ¶ 18.) Due to their inexperience with condo-hotels, Tarsadia Defendants wanted to ensure that the sales and development, structuring, marketing and sales of the units complied with all applicable laws and regulations and sought expertise and retained Greenberg. (Id. ¶ 21.) Greenberg was retained to advise in the development, structuring, marketing and sale of the condo-hotel units and to prepare all documents related to the legal transfer of units to the owners. (Id.) Greenberg represented that it was an expert in real estate development and specifically with condominiums and condo-hotels. (Id. ¶¶ 22-22.)

The March 26, 2004 engagement letter stated that the scope of the work would include the "design, implementation and regulatory compliance of a mixed use hotel project known as the Hard Rock Gaslamp." (Id. ¶ 28.) A separate description of Greenberg's scope of work was provided on March 11, 2006. (Id. ¶ 29; Ex. B.) These

---

[1] A notice of voluntary dismissal was filed by Third Party Plaintiffs as to Richard Davis on July 26, 2013. (Dkt. No. 117.)

included review of existing plans and objectives; design and creation of subdivision and condominium program and documents; regulatory compliance review; and sales registrations. (Id. ¶ 29.) Greenberg drafted all legal documents related to the development, structuring, marketing and sales process. These included the Purchase and Sale Contract and Addendum ("Purchase Contract"), the Unit Management Agreement ("UMA"), the Rental Management Agreement ("RMA"), and the governing documents of the management of the Hotel and owners' associations and it prepared and filed the necessary documents with the California Department of Real Estate. (Id. ¶ 30.)

Greenberg specifically advised Tarsadia Defendants that the Interstate Land Sales Full Disclosure Act ("ILSA") did not apply because the project would be completed within two year and qualified for the Improved Lot Exemption under ILSA, 15 U.S.C. § 1702(a)(2). (Id. ¶ 31.) Greenberg assured Tarsadia Defendants that the documents drafted by Greenberg would comply in all respects with all state and federal requirements. (Id. ¶ 33.) Greenberg never disclosed sufficient information to allow them to have any input into the decision not to include a 20-day opportunity for a buyer to remedy a default or breach of contract, not to include a two-year rescission right or that should ILSA be found to apply, a buyer may be afforded an absolute two-year right to rescind his purchase agreement from the date he signed it. (Id. ¶ 34.) Greenberg also advised Tarsadia Defendants that they did not need to register with or submit a property report to HUD because ILSA did not apply to the Project since it complied with the Improved Lot Exemption under ILSA. (Id.)

Tarsadia Defendants also sought Greenberg's counsel on whether to structure the sale as a sale of real estate, requiring DRE approval, or a security, requiring registration with the Securities and Exchange Commission ("SEC") and the California Department of Corporations ("DOC"). (Id. ¶ 36.) Greenberg specifically told Tarsadia Defendants that the sale of units would not be deemed a security under applicable state and federal law and provided an opinion letter. (Id.) Tarsadia Defendants contend that

Greenberg failed to advise them that there was any risk that buyers would later argue that the sale of units was in fact a security and the Purchase Contract was an investment contract. (Id. ¶ 39.) As a result, five lawsuits have been filed against Tarsadia Defendants.

On May 18, 2011, Plaintiffs Dean Beaver, Laurie Beaver, Steven Adelman, Abram Aghaehi, Dinesh Gauba, Kevin Kenna and Veronica Kenna initiated a purported class action against Tarsadia Defendants stemming from their acquisition of hotel-condo units at the Property. (Id. ¶ 40.) Since then, Tarsadia Defendants have had to defend the litigation brought by these plaintiffs at considerable cost and have been subject to negative publicity and a damaged reputation. (Id. ¶ 49.) The purported class action has also had a detrimental effect on the relationship between Tarsadia Defendants and the owners of the units, with many of the owners filing litigation alleging that the sale of condo-hotel units was done fraudulently and unlawfully. (Id.) Lastly, the claims have negatively impacted the value of the Hotel. (Id.) Further, Tarsadia Defendants and Greenberg have entered into an agreement tolling any applicable statutes of limitation. (Id.)

On December 8, 2009, Tamer Salameh and others filed a complaint against the Third Party Plaintiffs in the United States District Court for the Southern District in a matter entitled Tamer Salameh, et al v Tarsadia Hotel, et al., (Case No. 3:09cv-02739-DMS-CAB) ("Salameh Action"). (Id. ¶ 50.) The plaintiffs alleged that the Purchase Contract, coupled with the UMA and RMA, constitute an investment contract, and the sale of the Units should have been registered as a security. (Id. ¶ 51.)

On April 26, 2010, Royal Alliance filed a complaint against Tarsadia Defendants asserting a class action on behalf of parties that entered into Purchase Contracts for condo-hotel units but failed to close, in San Diego County Superior Court in a matter entitled Royalty Alliance, Inc. v. Tarsadia Hotels, et al., (Case No. 37-2010-00090678-CU-SL-CTL) ("Royalty Alliance Action"). (Id. ¶ 54.) The plaintiffs in the Royalty Alliance Action asserted claims similar to those asserted in the

Salameh Action, claiming that the sale of the units constituted a fraudulent sale of securities under state law. (Id. ¶ 55.) After much expense, the Third Party Plaintiffs prevailed on a motion for summary judgment on January 4, 2013. (Id. ¶ 56.) The ruling in that matter is on appeal before the California Court of Appeal and although the trial court awarded the Tarsadia approximately $1.2 million in attorneys' fees and costs as the prevailing party, they have not been able to attempt to collect on the award due to the pending appeal. (Id.)

On July 26, 2010, a large group of owners, including many of the named Plaintiffs in this action, filed an action in San Diego County Superior Court in a matter entitled James Bell, et al v. Tarsadia Hotels, et al (Case No. 37-201 0-00096618- 7 CU-BT-CTL) ("Bell Action"). (Id. ¶ 57.) The plaintiffs in the Bell Action also alleged that the Tarsadia Defendants failed to comply with securities laws when selling the condo-hotel units. (Id. ¶ 58.) Tarsadia Defendants were again forced to defend their actions at considerable expense. (Id. ¶ 59.) Only after the Salameh Action was dismissed by the Court did the plaintiffs in the Bell Action voluntarily dismiss their claims. (Id.) Though Tarsadia attempted to recover their attorney's fees as the prevailing party, the Court held that the claims had been brought under an alleged "investment contract" and that specific wording in the Purchase Contract and the RMA did not extend to the specific claims set forth in the Bell Action. (Id.)

On May 19, 2011, Tamer Salameh and others filed a cross-complaint against the Tarsadia Defendants in the matter entitled 5th and K Parcel 2 Owners' Association. Inc. v. Tamer Salameh, et al (Case No. 37-2010-OO094424-CU-21 OR-CTL) ("5th & K Action"). (Id. ¶ 60.) Like the other claims before the 5th & K Action, third party plaintiffs in that action alleged that Tarsadia had fraudulently devised the sales program for the condo-hotel units, omitting material facts in the Purchase Contract, RMA and UMA. (Id. ¶ 61.) They further alleged that by omitting material facts, the Third Party Plaintiffs were able to avoid scrutiny by the DRE regulators. (Id.) The scope and nature of the claims asserted against the Third Party Plaintiffs in the 5th and K Action

continue to evolve to include other aspects of the manner in which the development was structured by the Third Party Defendants. (Id. ¶ 62.) Recently, the case was certified as a class action and requires that Tarsadia Defendant defend themselves at great expense. (Id.)

Tarsadia Defendants allege causes of action for professional negligence; breach of contract; and breach of fiduciary duty against Greenberg.

**A.     Legal Standard on Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of

the plaintiff. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a Court may consider exhibits attached to the complaint, matters subject to judicial notice, or documents necessarily relied on by the complaint whose authenticity no party questions. See Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007); Lee v. City of Los Angeles, 250 F.3d 668, 688–689 (9th Cir. 2001); United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment.").

Greenberg argues that the third party complaint ("TPC") is time barred as a matter of law. Alternatively, if the TPC is not time barred, then it seeks to stay the action pending resolution of the main action.

**B.  Statute of Limitations**

Third Party Defendant argues that the third party complaint is barred by the one year statute of limitations pursuant to California Code of Civil Procedure section 340.6. It contends that Tarsadia Defendants incurred an actual injury in December 2009, when the first action, the Salameh Action, was filed. Therefore, the statute of limitations expired in December 2010 and bars this action. Third Party Plaintiffs oppose arguing that they did not sustain any actual injury until they paid attorney's fees to defend each litigation matter asserted against them. Moreover, they argue that the malpractice allegations arise not only from the filing of the litigation but also from Greenberg's failure to properly advise Tarsadia Defendants as to the risks involved in the project concerning the relevant federal and state laws, and drafting errors in the documents prepared by Greenberg.

California Code of Civil Procedure section 340.6 provides:

> (a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have

> discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. . . . in no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:
>
> (1) The plaintiff has not sustained actual injury.

Cal. Civ. Proc. Code § 340.6(a)(1). In Jordache, the California Supreme Court stated that "[a]ctual injury occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions." Jordache Enters. v. Brobeck, Phleger & Harrison, 18 Cal. 4th 739, 743 (1998). "The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm-not yet realized-does not suffice to create a cause of action for negligence." Id. at 750. The client must suffer "appreciable and actual harm" emanating from the attorney's negligence. Id. The court further explained that:

> [a]ctual injury refers only to the legally cognizable damage necessary to assert the cause of action. There is no requirement that an adjudication or settlement must first confirm a causal nexus between the attorney's error and the asserted injury. The determination of actual injury requires only a factual analysis of the claimed error and its consequences. The inquiry necessarily is more qualitative than quantitative because the fact of damages, rather the amount, is the critical factor.

Id. at 752 (citations omitted). The court further clarified that "the existence of appreciable actual injury does not depend on the plaintiff's ability to attribute a quantifiable sum of money to consequential damages," but rather that "actual injury may consist of impairment or diminution, as well as the total loss or extinction, of a right or remedy." Id. at 750.

Actionable harm "may occur at any one of several points in time subsequent to an attorney's negligence" and therefore, the determination is generally a question of fact. Adams v. Paul, 11 Cal. 4th 583, 588 (1995). "Actual injury issues require examination of the particular facts of each case in light of the alleged wrongful act or omission." Jordache, 18 Cal. 4th at 761 n. 9. However, where the facts are undisputed, "the trial court can resolve the question as a matter of law in accordance with the

general principles governing summary judgment." Adams, 11 Cal. 4th at 591.

Greenberg argues that the statute of limitations began to run on December 8, 2009 when the first lawsuit was filed against Tarsadia Defendants and expired on December 8, 2010. It contends that at that point, Tarsadia Defendants hired outside counsel to defend against those allegations and incurred attorneys' fees. Tarsadia Defendants argue that they did not sustain any injuries until they paid the attorney's fees to defend each litigation matter asserted against them.

While Tarsadia Defendants became aware of the alleged negligence of Greenberg when the first lawsuit was filed, it is not clear whether they incurred "appreciable and actual harm" at that time.[2] Moreover, the fact that five lawsuits were filed complicates the issue and will require an examination of the particular facts to determine when Tarsadia Defendants suffered "actual injury." The Court concludes that the determination of when Tarsadia Defendants sustained "actual injury" is a question of fact and may have occurred at any one of several points in time subsequent to Greenberg's alleged negligence. See Adams, 11 Cal. 4th at 588. Therefore, the Court DENIES Greenberg's motion to dismiss the TPC on the basis of the statute of limitations.[3]

**C.     Securities Related Claims**

Greenberg argues that even if the claims are not time barred, the securities related claims fail as a matter of law because the Ninth Circuit recently affirmed the district court's order granting Defendant's motion to dismiss in the Salameh case which

---

[2] In Jordache, the Court held that the actual injury sustained occurred when the subsequent litigation was filed because the client had already lost millions of dollars in unpaid insurance benefits for defense costs and in lost profits from diversion of investment funds to pay the defense costs. Jordache, 18 Cal. 4th at 752.

[3] The parties also discuss the tolling agreement between the parties. The Court need not address the tolling agreement as it denies Greenberg's motion to dismiss due to the factual nature of the "actual injury" inquiry.

confirms that Greenberg's advice was correct.[4] Tarsadia Defendants contend that the Salameh decision does not conclusively establish that Greenberg is not liable for malpractice.

A legal malpractice cause of actions requires the plaintiff to show "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Thomas v. Lusk, 27 Cal. App. 4th 1709, 1716 (1994). A favorable ruling by the Ninth Circuit does not relieve Greenberg of its alleged failure to provide competent representation. See Jordache, 18 Cal. 4th at 753 ("Although the outcome of the coverage litigation may have reduced Jordache's damages, that action could neither necessarily exonerate Brobeck, nor extinguish Jordache's action against Brobeck for failure to render timely advice on insurance issues."). Similarly here, while a favorable ruling by the Ninth Circuit may relieve Tarsadia Defendants from damages, the case does not exonerate Greenberg from an allegation that it did not provide adequate legal advice on these issues.

In the TPC, Tarsadia alleges that Greenberg breached the duty of care and has failed to exercise the reasonable care, skill, diligence, and fidelity to clients required of attorneys by (i) concluding that the sale of the units was not a security that required registration without disclosing to Tarsadia that there was any risk that a purchaser would so allege; (ii) concluding that the Purchase Contract coupled with the RMA was not a common enterprise without disclosing to Tarsadia that there was any risk that a purchaser would so allege; (iii) failing to properly draft sales documentation, including the Purchase Contract, the RMA and the UMA to avoid any claim that the sale of the units would later be alleged to be a security; and (iv) failing to adequately advise the

---

[4] In its reply, Tarsadia Defendants raise the issue of judgmental immunity doctrine; however, the Court notes that Greenberg does not assert judgmental immunity argument in its moving papers.

Tarsadia of the consequences of marketing the Hotel in such a manner that could potentially be accused of being in violation of federal and state securities laws. (Dkt. No. 106-2, TPC ¶ 72.) These issues have nothing to do with the outcome of the Salameh case.

Greenberg also argues that the engagement letter[5] signed by both parties expressly disclaimed any promise or guarantee with respect to the outcome of the Hard Rock Project. Tarsadia Defendants contend that an engagement letter cannot exculpate Greenberg from liability as to attorney malpractice.

While an attorney may not limit the attorney's liability to the client for legal malpractice, it can limit the scope of the representation. Nichols v. Keller, 15 Cal. App. 4th 1672, 1684 (1993). While the engagement letter expressly disclaimed any promise or guarantee with respect to the outcome of the Hard Rock, it did not relieve itself from liability based on attorney malpractice. Accordingly, Greenberg's argument is without merit and the Court DENIES Greenberg's motion to dismiss the securities related claims.

**D.  Request to Stay the Action Pending Outcome of the Main Action**

Greenberg requests that the Court stay the proceedings on the TPC until the outcome of the main action contending that the Court will need to delay the trial in the main case as Greenberg will be required to reopen discovery and file dispositive motions. Tarsadia Defendants oppose a stay arguing that it would create redundant litigation and possibly inconsistent results since Greenberg would not be bound by any judgment in this action. Exercising its inherent authority, the Court DENIES Greenberg's request for a stay.

**Conclusion**

Based on the above, the Court DENIES Third Party Defendant Greenberg's

---

[5] "7. No Guarantee of Results. We have not made and shall not make any promises or guarantees to you concerning the outcome of your success in the Transaction and you acknowledge that nothing previously communicated to you or contained in this engagement letter shall be construed as such a promise or guarantee." (Dkt. No. 106-3, TPC, Ex. A.)

1  motion to dismiss, and alternatively, DENIES its motion to stay the proceedings.
2      IT IS SO ORDERED.
3
4  DATED: December 17, 2013
5
6  HON. GONZALO P. CURIEL
   United States District Judge