1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

DEAN BEAVER, et al.,

CASE NO. 11CV1842-GPC(KSC)

11

Plaintiffs,

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR RECONSIDERATION; AND GRANTING TARSADIA DEFENDANTS' AND PLAYGROUND'S MOTIONS FOR SUMMARY JUDGMENT ON THE NEGLIGENCE CAUSE OF ACTION**

12
13

vs.

14
15

TARSADIA HOTELS, et als.,

16

Defendants,

17

[Dkt. Nos. 81, 94, 98, 138.]

18
19

Before the Court is Plaintiffs'[1] motion for reconsideration of two rulings in the

20

Court's order filed on October 16, 2013.  (Dkt. No. 133.)  In that order, the Court

21

denied Plaintiffs' motion for summary judgment based on the "unlawful" prong of

22

California's Unfair Competition Law ("UCL") and granted Tarsadia Defendants[2] and

23

Defendant Playground Destination Properties, Inc.'s ("Playground") motions for

24
25
26

---

27

[1] Plaintiffs are Dean Beaver, Laurie Beaver, Steven Adelman, Abram Aghachi, Dinesh Gauba, Kevin Kenna and Veronica Kenna.

28

[2] Tarsadia Defendants consist of 5th Rock, Gregory Casserly, Gaslamp Holdings, LLC, MKP One, LLC, B.U. Patel, Tushar Patel, and Tarsadia Hotels.

[11CV1842-GPC(KSC)]

summary judgment as to all causes of action[3] except the negligence cause of action. (Dkt. No. 128.)   On November 12, 2013, Plaintiffs filed an amended motion for reconsideration.   (Dkt. No. 138.)   Tarsadia Defendants and Playground filed their oppositions on March 7, 2014. (Dkt. Nos. 146, 147.)  A reply was filed on March 14, 2014.  (Dkt. No. 148.)

In the Court's order on the parties' motions for summary judgment, the Court requested supplemental briefing on the negligence cause of action.  (Dkt. No. 128.) Pursuant to the Court's direction, the parties filed supplemental briefs on the negligence cause of action.  (Dkt. Nos. 134, 135, 136.)

A hearing was held on April 18, 2014.  (Dkt. No. 149.)  Michael Rubin, Esq., Michael Reiser, Esq. and Tyler Meade, Esq. appeared on behalf of Plaintiffs.  Alicia Vaz, Esq. and Frederick Kranz, Esq. appeared on behalf of Tarsadia Defendants; and Daniel Benjamin, Esq. appeared on behalf of Defendant Playground.  Based on the reasoning below, the Court GRANTS in part and DENIES in part Plaintiffs' motion for reconsideration; and GRANTS Tarsadia Defendants and Playground's motions for summary judgment on the negligence cause of action.

# I.

# MOTION FOR RECONSIDERATION

## A.    Legal Standard on Motion for Reconsideration

A district court may reconsider a grant of summary judgment under either Federal Rule of Civil Procedure ("Rule") 59(e) or Rule 60(b).  <u>Sch. Dist. No. 1J, Multnomah County, Or. v. AcandS, Inc.</u>, 5 F.3d 1255, 1262 (9th Cir. 1993).  Plaintiffs do not assert which rule they move under but it appears that Plaintiffs are moving under Rule 59(e) based on the standard they assert.

Federal Rule of Civil Procedure 59(e) provides for the filing of a motion to alter

---

[3] As to Tarsadia Defendants, summary judgment was granted as to the first cause of action for violation of the anti-fraud provisions of the ILSA, the third cause of action for fraud, and fifth cause of action for unfair competition.  As to Playground, summary judgment was granted as to the fifth cause of action for unfair competition.

[11CV1842-GPC(KSC)]

or amend a judgment.  Fed. R. Civ. P. 59(e).  A motion for reconsideration, under Federal Rule of Civil Procedure 59(e), is "appropriate if the district court (1) is presented with newly discovered evidence; (2) clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."  Sch. Dist. No. 1J, Multnomah County, Or., 5 F.3d at 1263; see also Ybarra v. McDaniel, 656 F.3d 984, 998 (9th Cir. 2011).

In addition, Local Civil Rule 7.1(i)(1) provides that a motion for reconsideration must include an affidavit or certified statement of a party or attorney "setting forth the material facts and circumstances surrounding each prior application, including inter alia: (1) when and to what judge the application was made, (2) what ruling or decision or order was made thereon, and (3) what new and different facts and circumstances are claimed to exist which did not exist, or were not shown upon such prior application." Local Civ. R. 7.1(i)(1).

The Court has discretion in granting or denying a motion for reconsideration. Fuller v. M.G. Jewelry, 950 F.2d 1437, 1441 (9th Cir. 1991).  A motion for reconsideration should not be granted absent highly unusual circumstances.  389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999).  "A motion for reconsideration cannot be used to ask the Court to rethink what the Court has already thought through merely because a party disagrees with the Court's decision.  Collins v. D.R. Horton, Inc., 252 F. Supp. 2d 936, 938 (D. Az. 2003) (citing United States v. Rezzonico, 32 F. Supp. 2d 1112, 1116 (D. Az.1998)).

Plaintiffs move for reconsideration arguing that the Court's ruling that 1) Plaintiffs' claims under California's Unfair Competition Law, California Business & Professions Code section 17200 et seq. are governed by a three year statute of limitations set forth under the Interstate Land Sales Full Disclosure Act ("ILSA") rather than the four year statute of limitations in section 17208 of the UCL is based on "clear error"; and 2) that scienter is required to establish a violation of the ILSA's anti-fraud provision should be reconsidered based on "an intervening change in the controlling

[11CV1842-GPC(KSC)]

law." (Dkt. No. 138 at 16.)

Tarsadia Defendants oppose both issues while Playground only opposes the reconsideration of the UCL claim since the fraud claim against it was previously dismissed with prejudice.

**B.      California's Unfair Competition Law, UCL**

Plaintiffs' argument is two pronged.  First, Plaintiffs contend that the California legislature intended the UCL's four year statute of limitations to apply to all UCL claims, including those based on federal law with shorter limitations period.  This argument is based on the California legislature's freedom to enact any laws as long as those protections do not violate the Supremacy Clause.  Second, nothing in the ILSA preempts the UCL or its four year statute of limitations.  Specifically, they argue that the ILSA invites states to enact parallel laws that are stricter than the ILSA under 15 U.S.C. § 1708 and § 1713.  Since the ILSA has no preemptive effect, which is the only way federal law can displace state law, courts have the authority to apply Plaintiffs' UCL four year statute of limitations even though it borrows from a federal statute, ILSA, with a shorter three year statute of limitations.

Tarsadia Defendants and Playground[4] oppose arguing that Plaintiffs have failed to meet the standard for reconsideration of "clear error" and are merely improperly repeating their arguments in prior briefing.  Second, they assert that when Congress has established a time limit for enforcing a federal right, that limitations period must apply.

California's Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Each of these three adjectives [unlawful, unfair or fraudulent] captures a separate and distinct theory of liability."  Rubio v. Capital One Bank, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted).  The UCL's coverage is broad, sweeping and embracing of

---

[4]Playground only oppose the unfair and fraudulent prongs of the UCL.  Judge Sabraw dismissed the UCL "unlawful" claim as to Playground because Plaintiffs could not state an ILSA or SLA claim.  (Dkt. No. 34 at 17:8-11.)  Playground concedes that the unfair and fraudulent prongs are remaining.  (Dkt. No. 98-1 at 24.)

anything that can be properly called a business practice and at the same time forbidden by law. Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). "It governs 'anti-competitive business practices' as well as injuries to consumers, and has a major purpose 'the preservation of fair business competition.'" Id. (citations omitted)

The California Supreme Court explained that while the unfair competition law is broad and sweeping, "it is not unlimited" and plaintiffs may not "plead around" an "absolute bar to relief" by "recasting the cause of action as one for unfair competition." Id. at 182. For example, courts may not impose their own notions of what is fair or unfair, specific legislation may limit the court's power to declare conduct unfair, and when specific legislation provides a safe harbor, plaintiffs may not use the general unfair competition law to "assault that harbor." Id. However, the limitation is narrow. Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000). "To forestall an action under the unfair competition law, another provision must actually 'bar' the action or clearly permit the conduct." Cel-Tech Comms., Inc., 29 Cal. 4th at 183.

**C.    Statute of Limitations**

     **1.    Unlawful Prong of the UCL**

Under the "unlawful" prong, the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. Chabner, 225 F.3d at 1048 (citing Cel-Tech Comms. Inc., 29 Cal. 4th at 180). Violation of almost any federal, state or local law may serve as the basis for an "unlawful" UCL claim. Saunders v. Superior Court, 27 Cal. App. 4th 832, 838–39 (1994). "To state a cause of action based on an unlawful business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law." Prakashpalan v. Engstrom, Lipscomb and Lack, 223 Cal. App. 4th 1105, 1133 (2014) ("unlawful practices are practices 'forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory or court-made.'").

[11CV1842-GPC(KSC)]

In this case, the underlying law are the disclosure provisions of the ILSA, 15 U.S.C. §§ 1703(a)(1)(A) & (B) and § 1703(d).  (See Dkt. No. 81.)  These provisions have a three year statute of limitations from the date of signing of the contract, which was either on May 18, 2006 or December 12, 2006.  See 15 U.S.C. § 1711(a), (b).  The Complaint in this case was filed on May 18, 2011 in San Diego Superior Court.  Under the three year ILSA statute of limitations, Plaintiffs' cause of action would be time-barred.  However, it is undisputed that the cause of action would not be time-barred under the four year statute of limitations under the UCL because the limitations period commences after the cause of action accrued, not from the date of the signing of the contract.

The statute of limitations under the UCL provides that "*[a]ny action* to enforce *any* cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued."  Cal. Bus. & Prof. Code § 17208 (emphasis added). Restated, the statute of limitations provision is a broad provision applying to "any action to enforce any cause of action."  See id.  The California Supreme Court has held that the four year statute of limitations applies even if the borrowed statute has a shorter limitations period.  Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 178-79 (2000) (borrowed statute was California Labor Code).  The court stated that "the language of section 17208 admits of no exceptions.  Any action on any UCL cause of action is subject to the four-year period of limitations created by that section."  Id. at 179.  In analyzing the holding in Cortez, the court in Blanks noted that the "general rule is that a UCL cause of action borrows the substantive portion of the borrowed statute to prove the 'unlawful' prong of that statute, but not the limitations procedural part of the borrowed statute."  Blanks v. Shaw, 171 Cal. App. 4th 336, 363 (2009).

Despite the broad and sweeping nature of the UCL statute of limitations, it is not unlimited and exceptions can apply.  For example, in Blanks, the court of appeal held that the one year statute of limitation under the Talent Agencies Act ("TAA"), Cal. Labor Code 1700 *et seq.*, applied and not the UCL.  Id. at 346.  The court held that

1   "plaintiffs seeking affirmative relief under the TAA must bring their cases to the Labor

2   Commissioner within the Act's one-year statute of limitations and cannot rely on the

3   longer statute contained in the Unfair Competition Law." Id.  In the case, the plaintiff

4   alleged a cause of action under section 17200, and alleged a defendant had engaged in

5   an unlawful business practice because he did not have the required licensure under the

6   TAA.  Id. at 363. The court explained the general rule that the UCL claims has a four

7   year statute of limitations does not apply because the TAA vests exclusive original

8   jurisdiction in the Labor Commissioner, see Cal. Labor Code § 1700.44(c), and

9   imposes a one-year limitations period as a predicate to assert any claim.  Id. at 364.

10  Plaintiffs seeking affirmative relief under the TAA may not invoke the jurisdiction of

11  the Superior Court until after the Commissioner has issued a ruling.  Id. at 365.

12          California courts and the Ninth Circuit have not addressed whether the holding

13  in Cortez, that the four year statute of limitations under the UCL applies even if the

14  borrowed statute has a shorter limitations period, is applicable to an underlying federal

15  cause of action.  As a result, district courts are divided on whether the UCL four year

16  statute of limitations applies when the UCL cause of action is based on a federal statute

17  with a shorter three year statute of limitations.  The interpretation of footnote 3 in

18  Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1007 n. 3 (9th Cir. 2008) has created

19  much of the division.

20          In Silvas, the plaintiffs brought a single cause of action under the UCL alleging

21  "misrepresenting rescission rights under the Truth in Lending Act ("TILA") and by

22  failing to provide a refund of the deposit as required by TILA."  Id. at 1003.  The

23  plaintiffs did not assert a claim under TILA itself.  Id.  The district court dismissed the

24  complaint under Federal Rule of Civil Procedure 12(b)(6) holding that federal law

25  preempted the UCL claims, which the Ninth Circuit affirmed.  Id.  The Ninth Circuit

26  held that the Home Owners' Loan Act ("HOLA") and the accompanying regulations

27  by the Office of Thrift Supervision ("OTS") preempted the entire field of lending

28  which also encompassed the TILA claims.  Id. at 1008.

While HOLA, in its regulations, explicitly states that OTS occupies the entire field of lending regulation for federal savings associations, HOLA provides an exception under 12 C.F.R. § 560.2(c) where state laws of general applicability only incidentally affecting federal savings associations are not preempted. Id. at 1006-07. However, the court declined to address that issue because the claims were based on types of laws listed in another provision, 12 C.F.R. § 560.2(b). In the alternative, the Ninth Circuit explained that despite this exception, it noted that "when federal law preempts a field, it leaves 'no room for the States to supplement it.'" Id. at 1007 n.3. The court further explained,

> In this case, it is clear that the UCL has a much longer statute of limitations than does TILA. Compare Cal. Bus. & Prof. Code § 17208 (West 2007) (providing a four-year statute of limitations period) with 15 U.S.C. § 1640(e) (providing a one-year limitations period for TILA claims). It is also clear that Appellants seek to take advantage of the longer statute of limitations under UCL to remedy TILA violations, because without the extended limitations period their claims would be barred.

> An attempt by Appellants to go outside the congressionally enacted limitation period of TILA is an attempt to enforce a state regulation in an area expressly preempted by federal law.

Id. at 1007 n.3.

The court in Silvas also addressed TILA's savings clause where state law is not preempted unless the state law is inconsistent with TILA. 15 U.S.C. § 1610(b). The court held that a "savings clause" or "no preemption clause" only applies to TILA and does not preclude the preemptive effect of HOLA. Id. at 1007.

Since Silvas, many district court cases cite footnote 3 and have held that the shorter federal statute of limitations should apply when a state law cause of action is based on it. See O'Donovan v. Cashcall, Inc., No. C 08-3174 MEJ, 2012 WL 2568174, at *3 (N.D. Cal. July 2, 2012) (under Electronic Funds Transfer Act ("EFTA"); Newsom v. Countrywide Home Loans, Inc., 714 F. Supp. 2d 1000, 1014 (N.D. Cal. 2010) ("In addition, Plaintiffs impermissibly are attempting to revive an otherwise time-barred TILA claim under the guise of a fraud claim."); Santos v. Countrywide

[11CV1842-GPC(KSC)]

Home Loan, No. 09cv912-AWI-SM, 2009 WL 2500710, at *7 (E.D. Cal. Aug. 14, 2009) (discussing Silvas proposition that UCL cannot be used to remedy violations of a time barred TILA claim); Rodriguez v. U.S. Bank Nat'l Ass'n, No. 12-989 WHA, 2012 WL 1996929, at *2 (N.D. Cal. June 4, 2012) (underlying law of TILA and one year statute of limitations).  The court in O'Donovan explained that while cases discussing Silvas addressed federal preemption, these courts also separately concluded that a "federal statute of limitations period should apply when a state law cause of action is based on it."  O'Donovan, 2012 WL 2568174, at 3 (citing Newsom, 714 F. Supp. 2d at 1014 (improper for plaintiffs to revive an otherwise time-barred TILA claim, under the guise of a fraud claim, which has a longer statute of limitations); Adams v. SCME Mortg. Bankers Inc., No. CV F 09-501 LJO SMS, 2009 WL 1451715, at *11 (E.D. Cal. May 22, 2009) (holding that if a TILA claim is time barred, a UCL claim based on TILA violations also fails because courts should not permit a plaintiff to "plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition").

In Jones v. Wells Fargo Bank, NA, No. 13cv903 NC, 2013 WL 2355447 (N.D. Cal. May 29, 2013), the court noted the split by the district courts as to whether the four year statute of limitations under section17200 can be used to extend the limitations period in which to bring a claim under TILA.  Id. at *4.  Ultimately, in that case, the district court followed the Ninth Circuit statement in Silvas that "an attempt to take advantage of the longer statute of limitations under § 17200 to remedy an otherwise time-barred TILA violation 'is an attempt to enforce a state regulation in an area expressly preempted by federal law.'"  Id. (quoting Silvas, 514 F.3d at 1007).  In Champlaie v. BAC Home Loans Serv., LP, 706 F. Supp. 2d 1029, 1045 (E.D. Cal. Oct. 22, 2009), the Court followed Silvas for the proposition that the UCL may not be used to extend TILA's statute of limitations.  The court stated, "[t]here being no adverse reasoning, the court follows Silvas on this issue."  Id.  In Irving, the court, not referencing Silvas but citing to California law, stated, "[b]ecause the statute borrows

violations of other laws, a failure to state a claim under the 'borrowed statute' translates to a failure to state a claim under the unlawful prong of the UCL. As plaintiffs have not adequately pleaded that their ILSA claim is timely, their UCL claim based on unlawfulness is similarly not adequately pleaded." <u>Irving v. Lennar Corp.</u>, No. CIV S-12-290 KJM EFB, 2013 WL 1308712, at *15 (E.D. Cal. Apr. 1, 2013).

On the other hand, courts have also held that the UCL's four year statute of limitations applies even if the borrowed statute has a shorter statute of limitations. <u>RA Medical Sys., Inc. v. PhotoMedex, Inc.</u>, 373 Fed. Appx. 784, 786 (9th Cir. 2010) (UCL claims based on state law misappropriation of trade secrets). Also, in <u>Hunt</u>, the district court held that the four year statute of limitations under section 17200 applied to the underlying time barred federal Fair Debt Collection Practices Act ("FDCPA") claim. <u>Hunt v. Wells Fargo Bank</u>, No. 13–cv–02435–MCE–KJN, 2014 WL 1028391, at *4 n.4 (E.D. Cal. Mar. 17, 2014). In <u>Hunt</u>, the Court concluded that the California Civil Code section 580b; the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civil Code. § 1788 *et seq.* and the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. were time barred. <u>Id.</u> at *3. Without any discussion that courts are divided on this issue and without discussing preemption, the court then explained that the UCL, which has a four year statute of limitations, was timely even though the underlying statutes had shorter statute of limitations and were time barred. <u>Id.</u> at *4 n.4. "Because Plaintiff's causes of action under the UCL survives or fails based upon the underlying statutes, despite the fact those claims are time-barred, it is nonetheless necessary to address the merits of Plaintiff's predicate causes of action." <u>Id.</u> at *4. Ultimately, the UCL claim was dismissed because the underlying causes of action failed to state a claim. <u>Id.</u> at *4-5.

After a careful analysis of <u>Silvas</u>, the Court concludes that footnote 3 in <u>Silvas</u> concerned field preemption under HOLA; therefore, the district courts' subsequent extension of footnote 3 to also support the proposition that the federal statute of limitations period should apply when a state law cause of action is based on it is not

[11CV1842-GPC(KSC)]

based on legally supported analysis.  Therefore, the field preemption analysis in Silvas does not assist the Court in resolving the issues in this case.  The Court now looks to an analysis of the specific statute of limitations at issue.

### a.   ILSA Statute of Limitations

The primary purpose of a statute of limitations is to protect defendants against "stale or unduly delayed claims" and to bar a plaintiff who has "slept on his rights." Credit Suisse Securities, (USA), LLC v. Simmonds, 132 S. Ct. 1414, 1420 (2012) (citing Sand & Gravel Co., 552 U.S. 130, 133 (2008)); American Pipe & Const. Co. v. Utah, 414 U.S. 538, 554 (1974).

In American Pipe & Const. Co., the United States Supreme Court stated:

> [S]tatutory limitation periods are 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.  The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.'

American Pipe & Const. Co., 414 U.S. at 554 (quoting Order of R.R. Telegraphers v. Railway Express Agency, 321 U.S. 342, 348-49 (1944)).

Courts do not have the power to disregard the statute of limitations.  Brown v. Napa Valley Unif. Sch. Dist., No. 11cv5673-JCS, 2012 WL 4364673, at *6 (N.D. Cal. Sept. 24, 2012) (citing Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.")).  "In the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."  Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980).

Statute of limitations are established to cut off rights, with or without merit, and "must be strictly adhered to by the judiciary."  Kavanagh v. Noble, 332 U.S. 535, 539 (1947) (two year statute applicable to income tax refund claims under § 322(b)(1) rather than four year period under § 3313 applied so taxpayer suffered loss).  The Court

[11CV1842-GPC(KSC)]

explained that any inequities resulting from the difference in statute of limitations are to be provided by Congress, not the courts and it is not the Court's province to speculate as to why Congress established a shorter period of limitations relative to the taxes at issue.  Id.  "It is enough that § 322(b)(1) creates a two-year period applicable to all income tax refund claims and that the claim in this case is of that type."  Id.

The ILSA has three separate statute of limitations provisions depending on the type of violation.  § 1711(a)(1) sets a limitations period "three years after the date of signing of the contract of sale or lease."  15 U.S.C. § 1711(a)(1).  § 1711(a)(2) sets a limitations period "three years after discovery of the violation or after discovery should have been made by the exercise of reasonable diligence."  15 U.S.C. § 1711(a)(2).  § 1711(b) provides a limitations period "three years after the signing of the contract or lease, notwithstanding delivery of a deed to a purchaser."  15 U.S.C. § 1711(b).

In 1979, the ILSA was amended to provide more protection to purchasers of land.  In order to provide consumers more time to review the property report and to consider or reconsider the transactions, the bill was amended to require that the property report always be given to the purchaser in advance of signing the contract as opposed to at the time of signing the contract.  H.R. REP No. 96-154 at 2352 (1979).  The amendment also extended the revocation right from three day to ten days in order to give consumers sufficient time to throughly review the property report or to obtain independent professional advice.  Id.

> The HR Conference Report on the ILSA amendment states that the conferees wish to clarify that the purpose of the amendment contained in the conference report is to limit to 3 years after the date of signing the contract those suits based on requirements related to advertising, to contract terms or to information reviewed by the Department of Housing and Urban Development prior to sale.  The fact of a material omission or the use of an untrue statement of material fact in the property report or the statement of record would be covered under this statute of limitations.  The longer statute of limitations which requires a suit to be filed within 3 years from discovery of the violations applies to a variety of fraudulent practices.

H.R. Conf. Rep. 96-716 at 2447-48 (1979).

The legislative history does not demonstrate that Congress intended to preempt

[11CV1842-GPC(KSC)]

the area of statute of limitations and does not address whether a state can impose a longer limitations period.  While Congressional intent on the ILSA's statute of limitations must be respected,  it is also true that state law can supplement the provisions of the ILSA.  See 15 U.S.C. §§ 1708(e), 1713.

With these underlying purposes and policies in mind, the Court looks at whether there is another provision or doctrine that will bar applying the UCL's four year statute of limitations.  See Cel-Tech Comms., Inc., 29 Cal. 4th at 183.

### b.    Preemption

Defendants argue that the ILSA preempts the UCL and is a bar to applying the UCL's statute of limitations.  Plaintiffs oppose arguing no preemption exists.

Under the Supremacy Clause, the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const., Art. VI, cl. 2.  Accordingly, "state laws that conflict with federal law are 'without effect.'"  Mut. Pharm. Co., Inc. v. Bartlett, —— U.S. ——, 133 S. Ct. 2466, 2473 (2013) (citations omitted).  "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field."  Chae v. SLM Corp., 593 F.3d 936, 941 (9th Cir. 2010) (citations omitted).  As stated, there are three categories of preemption: express, field and conflict.  See id.  Field and conflict preemption are subcategories of implied preemption.  Stengel v. Medtronic, Inc., 714 F.3d 1224, 1230 (9th Cir. 2013).

Field preemption is implied when Congress "'so thoroughly occupies a legislative field' that it effectively leaves no room for states to regulate conduct in that field."  Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992).  Conflict preemption examines a federal statute as a whole to determine whether it would be "impossible for a private party to comply with both state and federal requirements," English v. General Elec. Co., 496 U.S. 72, 79 (1990), or where the state law "stands as

[11CV1842-GPC(KSC)]

1    an obstacle to the accomplishment and execution of the full purposes and objectives

2    of Congress," Hines v. Davidowitz, 312 U.S. 52, 67 (1941).

3        At issue is whether conflict preemption applies.  The ILSA has a savings clause[5]

4    which provides:

> [n]othing in this chapter may be construed to prevent or limit the authority of any State or local government to enact and enforce with regard to the sale of land any law, ordinance, or code not in conflict with this chapter. In administering this chapter, the Director shall cooperate with State authorities charged with the responsibility of regulating the sale or lease of lots which are subject to this chapter.

9    15 U.S.C. § 1708(e).  The ILSA also provides that "[t]he rights and remedies provided

10   by this chapter shall be in addition to any and all other rights and remedies that may

11   exist at law or in equity."  15 U.S.C. § 1713.

12       Defendants argue that conflict preemption applies because Congress included

13   specific statute of limitations under the ILSA and Plaintiffs' efforts to expand the

14   statute of limitations expressly created by Congress stands as an obstacle to the

15   accomplishment and execution to the full purposes and objectives of Congress.

16   Plaintiffs contend that the ILSA does not preempt supplementary state laws.[6]

17       15 U.S.C. §1708(e) falls under a provision entitled "Certification of substantially

18   equivalent State law."  15 U.S.C. § 1708.  Section 1708(a) of the Interstate Land Sales

---

[5]The ILSA has a similar savings clause as the Truth in Lendig Act ("TILA"). TILA's savings clause states:

> Except as provided in subsection (e) of this section, this part and parts B and C of this subchapter do not annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent with the provisions of this subchapter and then only to the extent of the inconsistency.

15 U.S.C. § 1610(a)(1).

[6]While Plaintiffs argue that the savings clause indicates Congress' intent not to preempt state law, a savings clause is not a *per se* bar to conflict preemption. Geeir v. Am. Honda Motor Co., 529 U.S. 861, 869 (2000).  The state law is still subject to conflict preemption.  Chicanos Por La Causa, Inc., v. Napolitano, 558 F.3d 856, 866 (9th Cir. 2009).

[11CV1842-GPC(KSC)]

1   Act provides the mechanism by which Congress may adopt a state's regulation of this
2   area." Cranberry Hill Corp. v. Shaffer, 629 F. Supp. 628, 632 (N.D.N.Y. 1986). This
3   provision "allows HUD [now Director of the CFPB] to certify, and thereby adopt, a
4   state law which is substantially equivalent to the federal act." Id. at 631. The purpose
5   of state certification "is to lessen the administrative burden on the individual developer,
6   arising where there are duplicative state and federal registration and disclosure
7   requirements, without affecting the level of protection given to the individual purchaser
8   or lessee." Bodansky v. Fifth on Park Condo, LLC, 635 F.3d 75, 86 (2d Cir. 2011)
9   (quoting 24 C.F.R. § 1710.500(a).).

10      These provisions demonstrate that the ILSA allows for state regulation in this
11  area as long as state regulation does not conflict with the provisions of the ILSA. See
12  15 U.S.C. § 1708; see also Cranberry Hill Corp. v. Shafer, 629 F. Supp. 628, 631
13  (N.D.N.Y. 1986) (§ 1708(e) allows states to regulate land sales as long as their
14  regulation does not conflict with the federal act). The issue is whether the longer UCL
15  four year statute of limitations conflicts with or stands as an obstacle to the objectives
16  of the three year statute of limitations of the ILSA.

17      In TILA cases, courts have held that differences between federal and state statute
18  of limitations do not result in conflict preemption because the longer state statute of
19  limitations provides an additional level of protection for consumers and are not
20  inconsistent with federal law. See Quezada v. Loan Center of California, Inc., No.
21  CIV. 08-177 WBS KJM, 2008 WL 5100241, at *5 (E.D. Cal. Nov. 26, 2008.) (While
22  the UCL provides a longer statute of limitations and may offer additional remedies,
23  these factors alone do not render plaintiff's UCL claims inconsistent with TILA); In re
24  First Alliance Mortgage Co., 280 B.R. 246, 251 (C.D. Cal. 2002) ("A Section 17200
25  claim merely advances the TILA purpose of meaningful disclosure of credit terms by
26  providing increased penalties for non-disclosure."); Plascencia v. Lending 1st
27  Mortgage, No. 07-4485, 2008 WL 4544357, at *7 (N.D. Cal. Sept. 30, 2008) ("[T]he
28  fact that the UCL allows a claim to be brought within four years . . .simply provides an

1  additional level of protection for consumers."). Therefore, the longer statute of

2  limitations period under the UCL does not stand as an obstacle or conflict with federal

3  law but provides additional protection to the consumers. Moreover, courts have held

4  that the ILSA does not preempt state law. Mariott v. Harris, 368 S.E.2d 225, 232 (Va.

5  1988) ("The [ILSA] does not preempt state law"); Cranberry Hill Corp., 629 F. Supp.

6  at 631-32 (no evidence that Congress intended to preempt this area).

7  In Sonada v. Amerisave Mortgage Corp., the district court denied Defendant's

8  motion to dismiss state law claims based on TILA concluding that there is no conflict

9  preemption.  Sonada v. Amerisave Mortg. Corp., No. C-11-1803 EMC, 2011 WL

10 2690451, at *9 (N.D. Cal. July 8, 2011). In the case, the defendant argued that TILA

11 preempts the state law claims under the California Consumers Legal Remedies Act

12 ("CLRA") and California Business & Professions Code section 17200. Id. at 5. The

13 defendant argued that there is obstacle preemption because the state causes of actions,

14 which provide for a shorter statute of limitations and more stringent remedies, frustrate

15 the purpose and enforcement of TILA. Id. at 6. In addressing obstacle preemption, the

16 district court looked at the federal statute as a whole and identified its purpose and

17 intended effects. Id. at 6 (quoting Crosby v. Nat'l Foreign Trade Council, 530 U.S.

18 363, 372-73 (2000)). According to Crosby, if "the purpose of the act cannot otherwise

19 be accomplished - if its operation within its chosen field else (sic) must be frustrated

20 and its provisions be refused their natural effect - the state law must yield to the

21 regulation of Congress." Crosby, 530 U.S. at 373.

22 The Crosby court determined that TILA's purpose is to protect consumers'

23 choices through full disclosure of credit terms and concluded that state law does not

24 conflict with TILA merely because it provides greater protection to consumers. Id. at

25 7. The court explained that if "absent a clear indication that these limitations

26 constituted an essential 'purpose of the act [which] cannot otherwise be accomplished"

27 were state law to expand lender liability . . . the express limitations on TILA's

28 preemption provision must be respected. Id. at 8. In conclusion, the court noted that

[11CV1842-GPC(KSC)]

1  "[i]f states are not prohibited from enacting more expansive disclosure requirements,

2  it is difficult to see why they are barred from enacting a longer limitations period." Id.

3  at 8.  The Court finds the reasoning on Sonoda well reasoned and persuasive.

4        Similarly, in this case, the purpose of the ILSA is to protect land purchasers from

5  fraud that was prevalent in the land sales industry.  H.R. Rep. 96-154 at 2346; see also

6  Olsen v. Lake Country, Inc., 955 F.2d 203, 205 (4th Cir. 1991).  The ILSA was geared

7  toward purchasers living in the same state where the land was located or purchasers

8  living out of state who were persuaded to buy land they had never seen by sophisticated

9  sales people promising that land was a good investment, suitable for homesites and

10  easily resaleable.  Id. at 2346.  As in Sonoda, the longer UCL statute of limitations, in

11  this case, cannot be said to be in conflict or an obstacle to the accomplishment and

12  execution of the ILSA.  It provides purchasers, the group that the ILSA intended to

13  protect, with additional protections with a longer statute of limitations.

14        Accordingly, the Court concludes that the ILSA does not preempt the UCL.  In

15  this case, Defendants have not provided compelling authority for the Court to apply the

16  shorter federal statute of limitations over the broad statutory requirement of a four year

17  UCL statute of limitations.  There is no legislative authority that vests exclusive

18  jurisdiction to the federal statute; no safe harbor; and no preemption.  See Cel-Tech

19  Comms., 20 Cal. 4th at 183.  While it facially appears that Defendants may be

20  attempting to revive an otherwise time-barred ILSA claim, or to go outside the

21  congressionally enacted limitations period of the ILSA, no bar or authority exists for

22  the Court to disregard the statute of limitations applicable to the state law cause of

23  action under the UCL.

24        Accordingly, after a more detailed review and analysis of this issue, the Court

25  GRANTS Plaintiffs' motion for reconsideration of the Court's order granting Tarsadia

26  Defendants' motion for summary judgment on the "unlawful" prong of the UCL based

27  on the statute of limitations due to "clear error."  The unlawful prong of the UCL is

28  timely.  Therefore, the Court DENIES Tarsadia Defendants' motion for summary

[11CV1842-GPC(KSC)]

judgment on the "unlawful" prong of the UCL.[7]  The Court now looks at whether the UCL four year statute of limitations applies to the unfair and fraudulent prongs of the UCL.

### 2.    Unfair and Fraudulent Prongs of the UCL

Plaintiffs assert that even if the unlawful prong is barred by the underlying ILSA statute of limitations, the fraudulent and unfair business practices proscribed by the UCL is not time barred as it does not borrow from other statutes and are based on practices that are likely to deceive.  Tarsadia Defendants and Playground oppose arguing that the underlying basis for the fraudulent and unfair is derived from the ILSA so the unfair and fraudulent prongs should also be time barred.  Here, the unfair and fraudulent prongs of the UCL are not dependent on any time barred underlying statute. In line with the reasoning above, the four year statute of limitations for the UCL applies to these prongs even though they are based on the ILSA.  Accordingly, the Court DENIES Tarsadia Defendants and Playground's motions for summary judgment on the unfair and fraudulent prongs of the UCL based on the statute of limitations as timely.

Since the Court reconsidered the statute of limitations issue on the UCL claim and concludes that the claim is timely, the Court now looks at the merits of the UCL claim on Plaintiffs' motion for partial summary judgment and Playground's motion for summary judgment.

### D.    Merits of UCL Cause of Action

### 1.    Plaintiffs' Motion for Partial Summary Judgment on Unlawful Prong of UCL

Plaintiffs' motion for partial summary judgment seeks judgment solely on the

---

[7]Defendants do not move for summary judgment on the merits of the UCL claim. In their motion, they only argue that the UCL claims fails because there was no violation of the ILSA and the UCL claims are time barred by the underlying ILSA three year statute of limitations.  Therefore those claims remain.

1    "unlawful" prong of the UCL based on violations of 15 U.S.C. § 1703(a)(1).[8]  In

2    opposition, Tarsadia Defendants allege that Plaintiffs lack standing to assert a UCL

3    claim because Plaintiffs do not allege that they lost money or property as a result of the

4    alleged unlawful act.

5         California Business & Professions Code section 17204 provides that "a person

6    who has suffered injury in fact and has lost money or property as a result of the unfair

7    competition" can bring a cause of action under this provision.  Cal. Bus. & Prof. Code

8    § 17204.  "A plaintiff suffers an injury in fact for purposes of standing under the UCL

9    when he or she has: (1) expended money due to the defendant's acts of unfair

10   competition. . . .(2) lost money or property . . . or (3) been denied money to which he

11   or she has a cognizable claim."  Hall v. Time, Inc., 158 Cal. App. 4th 847, 854-55

12   (2008).  Economic injury may include a "diminishment in the value of some asset a

13   plaintiff possesses."  Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 336 (2011)

14   (citing Overstock.com, Inc. v. Gradient Analytics, Inc., 151 Cal. App. 4th 688, 716, 61

15   (2007) (a plaintiff who alleged that a defendant's defamatory statements diminished its

16   assets and reduced its market capitalization adequately alleged UCL standing).  In

17   addition, the phrase "as a result of" requires that the "alleged unfair competition must

18   have caused the plaintiff to lose money or property."  Hall, 158 Cal. App. 4th at 849.

19   Plaintiff's economic injury requires a showing of a "causal connection or reliance."

20   Kwikset Corp., 51 Cal. App. 4th at 326.

21        The parties dispute the causation element to support standing.  Plaintiffs argue

22   that if they had known their right to rescind, they would have rescinded in the fall of

23   2007.  Moreover, Plaintiffs and Defendants' experts agree that the Units have lost more

24   than half their value.  (Dkt. No. 81-64, Meade Decl., Ex. 54 (Pls' Expert Appraisal

25

26        [8] Plaintiffs allege four violations of the ILSA.  They include Defendants' failure
     to (i) file a Statement of Record with HUD, (ii) give each buyer an ILSA-compliant
27   disclosure document called a Property Report before they signed their Purchase
     Contracts, (iii) include in the standardized Purchase Contract a 20-day cure provision,
     and (iv) disclose the two-year right to rescind under the ILSA that results from the first
28   three items mentioned.  It is undisputed that Tarsadia Defendants did not comply with
     these provisions.

Report at 2) ("As of March 22, 2013 the prices of condo-hotel units at the Hard Rock San Diego have declined by not less than 57% . . . ."); Dkt. No. 81-55, Meade Decl., Ex. 65 (Tarsadia Ds' Expert Appraisal Report at 2).)   In opposition, Tarsadia Defendants contend that Plaintiffs sought to rescind was due to the downturn in the economy and the tightening lending market and not because of the failure to disclosure the right to rescind.  Defendants also note that the experts conclusion that the Units lost more than half their value was not caused by the alleged ILSA violations.

According to the Beavers and the Kennas, they stated that if they had known they had the option to cancel the contract prior to August 2007, they would have canceled it. (Dkt. No. 81-23, Meade Decl., Ex. 13, D. Beaver Depo. at 127: 2-10; Dkt. No. 81-24, Ex. 14, L. Beaver Depo. at 46:10-15; Dkt. No. 81-26, Ex. 16, K. Kenna Depo. at 208:3-25; Dkt. No. 81-27, Ex. 17, V. Kenna Depo. at 63:19-66:3.)  Veronica Kenna testified that she and her husband were told they could not get their deposit back and the only choice was to get a balloon loan and deal with it later. (Dkt No. 81-27, Meade Decl., Ex. 17, V. Kenna Depo at 64:5-66:3.)

Steven Adelman and Abraham Aghachi testified that they requested a return of the purchase money deposit but were told around July/August 2007 that they would forfeit their deposit.  (Dkt. No. 81-23, Meade Decl., Ex. 11, Adelman Depo. at 78:3-80:3; Dkt. No. 81-22, Meade Decl., Ex. 12, Aghachi Depo. at 33:6-36:18; 40:2-10; 41:14-42:24.)  Dinesh Gauba testified that in the summer of 2007, due to the loan situation when it was difficult to obtain a loan, she was not happy and her choice was to either close or lose her deposit.  (Dkt. No. 81-25, Meade Decl., Ex. 15, Gauba Depo. at 121:3-122:1.)  She also wanted to get out of the contract about a year after closing when she was losing money and not happy with the rental management program.  (Id. at 66:22-67:18.)

In opposition, Defendants argue that Plaintiffs wanted to rescind because they had trouble getting financing in 2007 because of the changing economy.  They also cite to the testimony of Plaintiffs.  Agachi testified that the economy went down in 2007.

(Dkt. No. 104-10, Vaz Decl., Ex. 1, Agachi Depo. at 123:6-125:10.) L. Beaver testified that she was aware that the economy and housing market changed in 2007 and 2008. (Dkt. No. 104-11, Vaz Decl., Ex. 8, L. Beaver Depo. at 28:6-19.) She also stated that her husband said if he knew they had the right to rescind, he would have rescinded because the market was not doing well. (Id. at 46:10-20.) D. Beaver testified that San Diego was affected by the housing crash in 2007 and he wanted to cancel the contract due to the market. (Dkt. No. 104-11, Ex. 9, D. Beaver Depo. at 82:18-83:8; 131: 9-23.) Adelman stated that around the time of [the collapse of] Bear Stearns, everything was crashing and he felt that the Hard Rock Unit was a bad investment and he tried to get out of the contract. (Dkt. No. 104-10, Ex. 2, Adelman Depo. at 224:4-225:10.) He stated that he realized the economy was crashing when the lenders decided they would not lend money. (Id.)

Veronica Kenna testified that had she obtained conventional financing, and not a balloon loan, she would have been okay with the purchase. (Dkt. No. 104-12, Hughes Decl., Ex. 14, V. Kenna Depo. at 108:16-109:9.) The balloon loan was a "dark cloud over our head." (Id. at 109:1-2.) She and her husband felt trapped into signing something they were not ready for. (Id. at 116:12-23.) Kevin Kenna also testified that he was not happy with the possibility of losing hundred thousand dollars that was leveraged on his home. (Id., Ex. 15, K. Kenna Depo. at 58:4-59:11.) He was given the option to take the loan, and then refinance in the next five years. (Id. at 59 at 6-11.)

Dinesh Gauba stated that in 2007 a lot changed in financing that year. (Id., Ex. 21, Gauba Depo. at 90:9-92:16.) By the time she was to obtain financing, in the summer of 2007, the requirements had all changed. (Id. at 90:21-21:3.) She was told that if she didn't close, she would lose her deposit. (Id. at 92:1-6.) By the time of closing, it was much harder to get financing and she could not get out of the contract. (Id. at 147:25-148:1.) Then when she closed, the rental split was not working because she was losing money every month. (Id. at 148:1-5.) She said that she would have gotten out of the rental agreement and the mortgage because she had to put up more

[11CV1842-GPC(KSC)]

money since loan guidelines had changed. (Id. at 149:1-14.) She stated that the change in rates was not specifically Tarsadia's fault but due to the condo hotel business in general, the mortgage terms and the rental management agreement terms. (Id. at 149:7-18.)

While many factors affected the loss of value in property, including the economy and the housing market, Tarsadia Defendants' failure to disclose and the alleged misrepresentation as to their rescission rights prevented Plaintiffs from rescinding the contract, a right they had under the ILSA. As a result, they were forced to close on the Units with increased payments and/or with a balloon payment loan due to changes in the loan guidelines and as a result, owned a Unit that lost significant value. The Court concludes that Plaintiffs have sufficiently alleged standing to bring an action under the unlawful prong of the UCL. Since Plaintiffs have demonstrated an absence of a genuine issue of material fact as to the elements of the "unlawful" prong of the UCL as to Tarsadia Defendants, the Court GRANTS Plaintiffs' motion for partial summary judgment on the unlawful prong of the UCL.

## 2. Defendant Playground's Motion for Summary Judgment on the Unfair and Fraudulent Prongs

### i. Unfair

Playground argues that the UCL claim for unfair practices fails because it requires a violation of a duty which Plaintiffs have failed to demonstrate. (Dkt. No. 98.) Plaintiffs assert that Playground, as the seller's real estate agent, had a duty to disclose to buyers information related to rescission rights which was wrongfully concealed and Playground was aware no later than June 2007 that the purchase contracts potentially violated the ILSA.

The California appellate court opinions differ as to what constitutes an "unfair" business practice under the UCL ever since Cel-Tech was decided. Bardin v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255, 1264-75 (2006) (noting the split in authority). In Cel-Tech, the California Supreme Court narrowed the term "unfair"

concluding that the prior court of appeal's definition was "too amorphous" and provided "too little guidance to courts and businesses." Cel-Tech, 20 Cal. 4th at 184-85.  In Cel-Tech, the California Supreme Court adopted the following test, "[w]hen a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Id. at 186-87.  Cel-Tech explicitly stated that its "unfair" test is limited to anti-competitive practices and not actions by consumers. Id. at 187 n. 12.

As a result, California appellate courts have been divided as to which test of "unfair" applies to consumer cases. Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 736 (9th Cir. 2007).  Some courts define 'unfair' as "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and requires the court to "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." South Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861, 887 (1999); see also Smith v. State Farm Mut. Auto. Ins. Co., 93 Cal. App. 4th 700, 719 (2001).  Another line of cases holds that the public policy which is a predicate to a consumer unfair competition action under the "unfair" prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions. Gregory v. Albertson's, Inc., 104 Cal. App. 4th 845, 853 (2002).  A third line of cases adopted the three factor test set forth in section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(n) where "(1) [t]he consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." Camacho v. Automobile Club of Southern California, 142 Cal. App. 4th 1394, 1403 (2006).

[11CV1842-GPC(KSC)]

The Ninth Circuit concluded that two tests, the Cel-Tech test where the unfairness is tied to a "legislatively declared" policy, or the former balancing test under South Bay, would apply to consumer cases. Lozano, 504 F.3d at 736 (rejecting FTC test as applied in Camacho v. Automobile Club of S. California, 142 Cal. App. 4th 1394 (2006) to consumer cases). In Lozano, the court concluded that the district court did not apply the wrong standard by relying on the balancing test from South Bay. Id.

In another Ninth Circuit case, the court conducted an analysis of the unfair prong. Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1169-70 (9th Cir. 2012). The Ninth Circuit noted that the appellate courts are divided on the definition of "unfair" and whether the Cel-Tech standard should apply to UCL actions brought by consumers. Id. at 1170. The Ninth Circuit did not need to resolve that question because the plaintiff failed to state a claim under both definitions: the new definition in Cel-Tech and the former balancing test under South Bay. Id. at 1170. In analyzing the new definition, the court noted that the plaintiff did not advance any claim that the complained action threatened to violate the letter, policy, or spirit of the antitrust laws, or that it harms competition. Id. at 1170. As to the balancing test, Plaintiff did not allege that the acts were against public policy, immoral, unethical, oppressive, or unscrupulous. Id.

The Court applies the Ninth Circuit's analysis in Davis and Lozano to this case. Plaintiffs seeks to apply the tethering test.[9] (Dkt. No. 69, TAC ¶ 140; see also Dkt. No. 43-1, Ps' Mot. For Leave to File TAC at 7 ("TAC also strengthens the existing UCL 'unfair prong' claim against Playground by clarifying that this claim is not based on negligence but is tethered to Playground's violation of its statutory duty as a real estate agent to 'disclose all facts known to the [it] materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation

---

[9]In Plaintiffs' opposition to Playground's motion, in a footnote they raise an alternative test for a UCL "unfair" claim laid out in Camacho v. Automobile Club of S. California, 142 Cal. App. 4th 1394, 1403 (2006). However, Plaintiffs do not provide any analysis of this standard to this case. Moreover, the Ninth Circuit rejected that approach to consumer cases. Lozano, 504 F.3d at 736.

[11CV1842-GPC(KSC)]

of, the parties.' Cal. Civ. Code § 2079.16.")  Plaintiffs allege that Playground had a duty to disclose to buyers all facts affecting the value or desirability of the Units as well as duties of honesty, fair dealing and good faith to all purchasers.  They do not allege or show that the failure to disclose or affirmative misrepresentation is predicated on a public policy and that the conduct threatened to violate the letter, policy, or spirit of the antitrust laws or that it harms competition.  See Gregory, 104 Cal. App. 4th at 854. Plaintiffs only argue that the unfair practices are tethered to the disclosure policies, not public policy.  (See Dkt. No. 107 at 20.)  Moreover, Plaintiffs have not alleged or demonstrated that such acts are against public policy, immoral, unethical, oppressive, or unscrupulous.  See South Bay Chevrolet, 72 Cal. App. 4th at 887.

Accordingly, Plaintiffs have failed to demonstrate an issue of material disputed fact and the Court GRANTS Playground's motion for summary judgment on the "unfair" prong of the UCL.

### ii.   Fraudulent

Playground argues that since there was no duty, or even if there was a duty, there was no violation of any duty, the fraudulent prong fails.  Plaintiffs oppose contending Playground had a common law duty to disclose all facts known to it materially affecting the value or desirability of the property that were not known to, or within the diligent attention and observation of the buyers.

Distinct from common law fraud, fraudulent violation under the unfair competition statute requires only a showing that "members of the public are likely to be deceived."  Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1556 (2007).  There can be a violation without "actual deception, reasonable reliance and damage."  Daugherty v. American Honda Motor Co., Inc., 144 Cal. App. 4th 824, 838 (2006).  In alleging a failure to disclose material facts, plaintiff must show that the defendant had a duty to disclose those facts.  Berryman, 152 Cal. App. 4th at 1557 ("Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL."); see also Buller v. Sutter Health, 160 Cal. App. 4th 981,

[11CV1842-GPC(KSC)]

986 (2008).   Additionally, the UCL "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." In re Tobacco II Case, 46 Cal.4th 298, 326 (2009).  In other words, the plaintiff "must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the fact it was made." Kwikset Corp., 51 Cal.4th at 327 n. 10.

Playground asserts there was no duty to disclose obligations under the ILSA as it was not involved in any issues related to the ILSA and those issues and the drafting of the contract were left to Tarsadia Defendants and their counsel, Greenberg Traurig. Moreover, even if there were a duty, Playground did not know or was not aware about any ILSA violation.  Plaintiffs oppose arguing there was a duty to disclose information about their rescission rights and Playground knew at the earliest in June 2007.

If a seller's real estate agent is aware of facts materially affecting the value or desirability of the property which are known or accessible only to him, he or she has a duty to disclose them to the buyer.  Holmes v. Summer, 188 Cal. App. 4th 1510, 1518-19 (2010); Cal. Civ. Code § 2079.16.  A real estate agent may also be liable for nondisclosure since the conduct in the transaction "amounts to a representation of the nonexistence of the facts which he has failed to disclose." Id. at 1519.  A seller's real estate agent owes no duty to verify seller's representations but only to "act in good faith and not convey the seller's representations without a reasonable basis for believing them to be true." Robinson v. Grossman, 57 Cal. App. 4th 634, 644 (1997).

Based on caselaw, Playground, as the seller's real estate agent, had a duty to disclose all facts  known to it that materially affected the value or desirability of the property that were not known to the buyer.  The issue is whether Playground knew about the ILSA violations.

Plaintiffs direct the Court to a June 20, 2007 letter from a purchaser, David McCain, to Ed Coss, Tarsadia's counsel, seeking to rescind the contract based on violations of the ILSA.  (Dkt. No. 81-54, Meade Decl., Ex. 44.)  In response, on June

[11CV1842-GPC(KSC)]

25, 2007, Brent McLean, a Tarsadia and Playground employee, downloaded a Florida Bar Journal article entitled "The Interstate Land Sales Full Disclosure Act's two-year completion exemption." (Dkt. No. 81-44, Meade Decl., Ex. 34.)   According to Plaintiffs, the article explained ILSA's applicability, ILSA's basic requirements, and why Defendants' reliance on the exemption was misplaced. On June 25, 2007, McLean drafted memoranda discussing the McCain issue and concluded that the purchase contract was exempt under the ILSA, and therefore, the ILSA was not violated. (Dkt. No. 81-58, Meade Decl, Ex. 48; Dkt. No. 81-59, Meade Decl., Ex. 49.) Playground's outside attorney, Mike Smith, and Playground's representatives Brian Bruce, Jason Dolker, Trisha Peebles, Jana Martin, and Neil Vinet were all consulted before the memorandum was prepared. (Dkt. No. 81-58, Meade Decl., Ex. 48 at 2; Dkt. No. 81-59, Meade Decl., Ex. 49 at 2.)  Subsequently, on July 6, 2007, General Counsel Coss wrote a letter to McCain's attorney concerning the alleged ILSA violations indicating that she failed to state the basis of the alleged violation and that the ILSA would not apply to McCain's contract. (Dkt. No. 81-55, Meade Decl., Ex. 45 at 2-3.) Plaintiffs argue that these facts demonstrate that Mike Smith, Playground's attorney and Playground executives were involved in the determination on whether the ILSA applied.  While Plaintiffs' facts, in opposition, demonstrate that Playground was aware of the ILSA issue; they do not show that Playground knew that there was a violation of the ILSA.  The Florida Bar Journal article concerned Florida law and discussed the requirements and prohibitions under the ILSA along with exemptions, exclusion and penalties.  (See Dkt. No. 84-44.)  It does not follow that the article would have informed Playground that Tarsadia Defendants' reliance on the exemption was misplaced.  Accordingly, the Court GRANTS Playground's motion for summary judgment on the fraudulent prong of the UCL.

/ / / /

/ / / /

/ / / /

**E.   Whether Scienter is Required to Establish a Violation of ILSA's Anti-Fraud Provisions**

Plaintiffs argue that new authority, the Pre-Hearing Brief filed by the Consumer Financial Protection Bureau in In re 3D Resorts-Bluegrass, LLC, Administrative Proceeding File No. 2013-CFPB-0002 (Dkt. No. 138-1, Ex. A), filed on August 7, 2013, which was not available to Plaintiffs at the time of briefing demonstrates that scienter is not an element of an ILSA fraud claim and the Court should deny Defendants' motion for summary judgment as to Plaintiffs' ILSA fraud cause of action. Tarsadia Defendants argue that the Pre-Hearing Brief does not constitute new or controlling law to justify reconsideration of the Court's prior order.

In the prior order, the Court held that Plaintiffs did not demonstrate the elements of fraud as to knowledge of falsity and intent to defraud. (Dkt. No. 128.) The Court concluded that the facts "do not show that Defendants knew the representations or affirmative representations were false when made. Further, the facts do not show Defendants' intent to deceive Plaintiffs. Therefore, the facts do not create a genuine issue of fact that Defendants knew or recklessly disregarded the probability that the ILSA applied to the Hard Rock Units and whether they intended that the purchasers would rely on those false statements and omissions." (Dkt. No. 128 at 31.)

In the Pre-Hearing Brief, the CFPB wrote, "[s]imilarly, proof of scienter is not required to establish an ILSA violation" and drops a foot note explaining its position. (Dkt. No. 138-2 at 9 and n. 7.) The footnote cites to published and unpublished district court cases from 1980 to 1993.

"An agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires." U.S. v. Mead Corp., 533 U.S. 218, 234 (2001) (quoting Skidmore v. Swift, 323 U.S. 134, 139–40 (1944)). The Supreme Court announced in Skidmore, that "[w]e consider that the rulings, interpretations and

[11CV1842-GPC(KSC)]

opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." Skidmore, 323 U.S. at 140.

In Price, the Ninth Circuit stated that reasonable agency interpretation can carry "at least some added persuasive force." Price v. Stevedoring Servs. of America, 697 F.3d 820, 830-832 (9th Cir. 2012). In the case, the Court held that the Director's interpretation of the Longshore Act may merit Skidmore respect but only to the extent that they exhibit certain characteristics as described in Skidmore. Id. at 830-833 and n. 6. Interpretations contained in opinion letters are entitled to respect under Skidmore but only to the extent that those "interpretations have the 'power to persuade.'" San Luis & Delta–Mendota Water Auth. v. United States, 672 F.3d 676, 708 (9th Cir. 2012). "Special Skidmore deference to agency litigating positions is more likely to turn on factors such as the consistency of its position and its application of that position through administrative practice than on the quality of its court advocacy." Price, 697 F.3d at 832 n. 8.

In Price, the Court concluded that the Director was entitled to Skidmore respect "as to the proper rate of interest, first because some of his arguments are persuasive and second because the agency's manual and practice have for some time consistently advanced a reasonable position as to that rate. But the Director was not entitled to Skidmore respect as to whether the interest should be simple or compound, because his position on that issue is simply unpersuasive, notwithstanding its inclusion in the agency's manual and the Director's consistent application of simple interest for some time." Id.

With respect to the inquiry whether the interpretation does not reflect the

[11CV1842-GPC(KSC)]

agency's fair and considered judgment on the matter in question, "[i]ndicia of inadequate consideration include conflicts between the agency's current and previous interpretations; signs that the agency's interpretation amounts to no more than a convenient litigating position; or an appearance that the agency's interpretation is no more than a post hoc rationalization advanced by an agency seeking to defend past agency action against attack." Price, 697 F.3d at 830 n. 4.

In this case, Plaintiffs merely argue that the Pre-Hearing Brief is sufficient to demonstrate that the CFPB changed its position on whether scienter is required under the anti-fraud provisions of the ILSA. However, Plaintiffs do not satisfy the standard articulated in Skidmore to demonstrate that such deference should be accorded in this case. They do not provide any facts or arguments that the Director's judgment on this issue reveals "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." Skidmore, 323 U.S. at 140. Therefore, the Court will not accord Skidmore deference to the Pre-Hearing Brief. The Court also notes while Plaintiffs argue that Skidmore deference should be accorded the Pre-Hearing Brief, such deference does not demonstrate "an intervening change in the **controlling** law" sufficient to justify reconsideration of this issue. The Pre-Hearing Brief may have the power to persuade, but is not controlling law.

Furthermore, Tarsadia Defendants argue and the Court agrees that Plaintiffs cannot seek reconsideration of an issue when the issue could reasonably have been raised earlier in the litigation. While Plaintiffs' counsel asserts he did not obtain the brief until around October 16, 2013 after the Court issued its Order, the cases cited in support of the CFBP's position was available to Plaintiffs at the time of their briefing.[10]

---

[10]Defendants note that courts are split on whether or not reliance is a required element of an ILSA anti-fraud claim citing Ivar v. Elk River Partners, LLC, 705 F. Supp. 2d 1220, 1236-38 (D. Colo. 2010); Garcia v. Santa Maria Resort, Inc., 528 F. Supp. 2d 1283, 1296 (S.D. Fla. 2007). (Dkt. No. 146, Ds' Opp. at 29 n. 5.) Therefore, the argument that scienter is not a requirement for the anti-fraud claim could have been argued on summary judgment.

1   Moreover, Defendants argue and the Court agrees that Plaintiffs conceded that
2   scienter was a requirement of the anti-fraud provision under the ILSA in its opposition
3   to Tarsadia Defendants' motion for summary judgment.[11]  (Dkt. No. 103 at 23:27-28;
4   24:15-22.)   Lastly, even if scienter is not a required element, Plaintiffs did not
5   demonstrate a material issue of fact as to knowledge of falsity; therefore, the causes of
6   action for fraud would still fail.  Accordingly, the Court DENIES Plaintiffs' motion for
7   reconsideration of the fraud causes of action.

8   **F.    Plaintiffs' Request for Judicial Notice**

9   Plaintiffs filed a request for judicial notice of the Pre-Hearing Brief filed by the
10  Consumer Financial Protection Bureau in In re 3D Resorts-Bluegrass, LLC,
11  Administrative Proceeding File No. 2013-CFPB-0002.   (Dkt. No. 138-1, Ex. A.)
12  Tarsadia Defendants object arguing that a Pre-Hearing Brief is a non-final, unapproved,
13  and un-adopted agency recommendation and is not subject to judicial notice.

14  Tarsadia Defendants also filed a request for judicial notice of the docket In re 3D
15  Resorts-Bluegrass, LLC, Administrative Proceeding File No. 2013-CFPB-0002; the
16  Order Cancelling Hearing in the case filed on October 8, 2013; and the Consent Order
17  in that case filed on December 3, 2013.  (Dkt. No. 146-1.)

18  Federal Rule of Evidence 201(b)(2) allows judicial notice of a fact that is "not
19  subject to reasonable dispute in that it is . . . . (2) capable of accurate and ready
20  determination by resort to sources whose accuracy cannot reasonably be questioned."
21  Fed. R. Evid. 201(b)(2).  Courts can take judicial notice of records and reports of
22  administrative bodies." Interstate Natural Gas Co. v. Southern California Gas Co., 209
23  F.2d 380, 385 (9th Cir. 1953).  Courts can also take judicial notice of state court
24  opinions and briefs filed in those proceedings.  Holder v. Holder, 305 F.3d 854, 866
25  (9th Cir. 2002).  Accordingly, the Court GRANTS both parties' requests for judicial
26  notice.

27

28  [11] Plaintiffs argue that they did not concede that scienter is a required element;
however, they cite to their brief in their motion for class certification which was not
before the Court on the motions for summary judgment.

- 31 -                    [11CV1842-GPC(KSC)]

**G.    Evidentiary Objections**

Tarsadia Defendants filed evidentiary objections to the declaration of Michael Shrag.  (Dkt. No. 146-3.)  Shrag filed a declaration pursuant to Local Rule 7.1(i)(1) requiring a movant to provide the facts and circumstances surround its application for reconsideration.  The declaration merely states Plaintiffs' arguments in support of the motion for reconsideration and is not used as evidence.  Accordingly, the Court overrules Tarsadia Defendant's evidentiary objections.

**Conclusion**

Based on the above, the Court GRANTS in part and DENIES in part Plaintiffs' motion for reconsideration.  Specifically, the Court GRANTS Plaintiffs' motion for reconsideration on the claims under the UCL and concludes that the UCL cause of action is governed by a four year statute of limitations and DENIES Plaintiffs' motion for reconsideration that scienter is required to establish a violation of the ILSA's anti-fraud provisions.  As such, the Court also GRANTS Plaintiffs' motion for summary judgment on the "unlawful prong" of the UCL; and GRANTS Playground's motion for summary judgment on the "unfair" and "fraudulent" prongs of the UCL.

**II.**

**NEGLIGENCE CAUSE OF ACTION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Before the Court is also Tarsadia Defendants and Playground's motion for summary judgment on the remaining negligence cause of action in the Third Amended Complaint.   On October 16, 2013, the Court denied Plaintiffs' motion for summary judgment and granted in part and denied in part Tarsadia Defendants and Defendant Playground's motions for summary judgment. (Dkt. No. 128.) The Court granted all Defendants' motions for summary judgment but denied Defendants' motions for summary judgment on the negligence cause of action because no party addressed the existence of a duty and breach of that duty based on the underlying ILSA disclosure provision that was not only time barred but dismissed with prejudice.  The Court

1    directed the parties to provide supplemental briefing on this issue.

2        On November 5, 2013, Playground and Tarsadia Defendants filed their

3    supplemental briefs. (Dkt. Nos. 134, 135.) On November 7, 2013, Plaintiffs filed their

4    supplemental brief.  (Dkt. No. 136.)  Based on the briefs, supporting documentation

5    and the applicable law, the Court GRANTS Tarsadia Defendants and Playground's

6    motions for summary judgment on the claim for negligence.

7                                    **Discussion**

8        In the supplemental briefing, Tarsadia Defendants argue that the negligence

9    claim is time barred for three reasons.  First, the alleged "duty" arose from Defendants

10   failure to disclose a two year rescission right under 15 U.S.C. § 1703(d)(2) and as a

11   matter of law, a plaintiff cannot prevail on a state law cause of action based solely on

12   an alleged violation of the already dismissed federal statute.  Second, they contend that

13   similar to the Court's analysis on the section 17200 claim, the state statute of

14   limitations cannot be used to revive an otherwise time-barred ILSA claim.  Third, they

15   assert that the ILSA preempts the state law negligence claim because the state law

16   conflicts with the Congressional to impose a three year time bar from the date of

17   signing the contract.  Playground argues that a state law cause of action premised on

18   a violation of federal law is subject to the federal statute of limitations which in this

19   case would be three years from the signing of the contract.  In opposition, Plaintiffs

20   contends that the only way that the federal statute of limitations would apply is if the

21   claim is preempted by federal law.  Since the ILSA does not preempt state law, the

22   Court may consider the negligence cause of action even if based on a time barred

23   federal claim.

24       As to preemption, as decided herein above, the Court finds that the ILSA does

25   not preempt state negligence law.  Before addressing the remaining contentions, the

26   Court looks at the substantive elements of negligence.

27       The elements of a negligence cause of action are: (a) a legal duty to use due care;

28   (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the

resulting injury.  Ladd v. County of San Mateo, 12 Cal. 4th 913, 917 (1996).  The existence of a duty is a question of law for the court.  Ky. Fried Chicken of Cal. v. Superior Court, 14 Cal. 4th 814, 819 (1997).  A federal statute or regulation may be adopted as a standard of care in a negligence action.  Di Rosa v. Showa Denko K.K., 44 Cal. App. 4th 799, 808 (1996).

In this case, Plaintiffs have propounded a per se negligence theory based on the claim Defendants violated the ILSA.  Plaintiffs identify three duties that were violated: (1) a duty to disclose Plaintiffs' two-year right to rescind in the Public Report; (2) a duty to replace the language in the Contract concerning the three-day right to rescind with language disclosing this two-year right, and (3) a duty to otherwise disclose to Plaintiffs their two-year right to rescind.  (Dkt. No. 69, TAC ¶ 130.)

Under California's negligence per se doctrine codified in California Evidence Code section 669, "violation of a statute gives rise to a presumption of negligence in the absence of justification or excuse, provided that the 'person suffering . . . the injury. . . was one of the class of persons for whose protection the statute . . . was adopted.'" Walters v. Sloan  20 Cal. 3d 199, 206-207 (1977).  Under section 669, a plaintiff is required to prove the following four elements to establish negligence per se: a plaintiff must show that "(1) defendant violated a statute, ordinance or regulation of a public entity, (2) the violation proximately caused his injury, (3) the injury resulted from an occurrence of the nature which the statute was designed to prevent; (4) he was one of the class of persons for whose protection the statute was adopted." Sierra-Bay Fed. Land Bank Assn. v. Superior Court, 227 Cal. App. 3d 318, 336 (1991) (citing Capolungo v. Bondi, 179 Cal. App. 3d 346, 349-50 (1986)).  The first two elements are generally considered questions for the trier of fact; however the last two elements are determined by the trial court as a matter of law, as they involve statutory interpretation. Id.

Application of the doctrine of negligence per se means that the court has adopted the conduct prescribed by the statute as the standard of care for a reasonable person in

[11CV1842-GPC(KSC)]

the circumstances, and a violation of the statute is presumed to be negligence. Alcala v. Vazmar Corp. 167 Cal. App. 4th 747, 755 (2008). Negligence *per se* is simply a codified evidentiary doctrine, and thus the doctrine of negligence *per se* does not establish tort liability. People of California v. Kinder Morgan Energy Partners, L.P., 569 F. Supp. 2d 1073, 1087 (S.D. Cal. 2008). To apply negligence *per se* is not to state an independent cause of action under California law because the doctrine does not provide a private right of action for violation of a statute. Id.; Coppola v. Smith, 935 F. Supp. 2d 993 (E.D. Cal. 2013). Under California law, an underlying claim of ordinary negligence must be viable before the presumption of negligence *per se* based on the violation of a statute, regulation, or ordinance may be employed. Rosales v. City of Los Angeles, 82 Cal. App. 4th 419, 430 (2000); Spencer v. DHI Mortg. Co., Ltd., 642 F. Supp. 2d 1153, 1162 (E.D. Cal. 2009).

The presumption arising from the doctrine of negligence *per se* is dependent and requires an analysis of the underlying causes of action pursuant to 15 U.S.C. § 1703(a)(1)(c) and 15 U.S.C. § 1703(d)(2). In the instant case, Plaintiffs acknowledged these causes of action are time barred and the Court has dismissed with prejudice the causes of action under 15 U.S.C. § 1703(a)(1)(c) and § 1703(d)(2). (Dkt. No. 20.)

Neither party has presented a case, by a California court or the Ninth Circuit, where the standard of care is premised on a time barred federal statute such as the ILSA. Plaintiffs acknowledge that the California legislature has not addressed whether it intended a shorter limitations period to apply to negligence claims that rely on other sources of law to establish a standard of care.

The Court concludes that the reasoning of the California Supreme Court in Cortez in the context of the section 17200 statute of limitations does not fully apply to negligence based claims. Contrary to the broad reach of the UCL statute of limitations, which the Court concludes can be based on an underlying time barred federal statute, Plaintiffs have not demonstrated that the negligence cause of action also has such a broad reach. The statute of limitations for the negligence cause of action provides a

[11CV1842-GPC(KSC)]

three year statute of limitations for "[a]n action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." <u>See</u> Cal. Civ. Proc. § 338(d).  In this statute, there is no language, as in the UCL, that a negligence cause of action applies to "[a]ny action to enforce any cause of action." <u>See</u> Cal. Bus & Prof. Code § 17208.  Moreover, no California court has issued rulings such as <u>Cel-Tech</u> or <u>Cortez</u> that defines the broadness of the application of a negligence cause of action.  While the parties analyze the negligence cause of action similar to the UCL cause of action, the Court concludes that the negligence and UCL causes of action are distinct.

As such, Plaintiffs are unable to prove a violation of the federal statutes as they are time barred.  <u>See</u> Cal. Evid. Code § 669.  Therefore, Plaintiffs cannot prove the violation of any standard of care for a reasonable person, and the negligence cause of action fails.  Accordingly, the Court GRANTS Tarsadia Defendants and Playground's motions for summary judgment on the negligence cause of action.

## III.

## CONCLUSION

Based on the above, the Court GRANTS in part and DENIES in part Plaintiffs' motion for reconsideration.  Specifically, the Court GRANTS Plaintiffs' motion for reconsideration that California's Unfair Competition Law, California Business & Professions Code section 17200 *et seq*. cause of action is governed by a four year statute of limitations and DENIES Plaintiffs' motion for reconsideration that scienter is required to establish a violation of the ILSA's anti-fraud provisions.  The Court also GRANTS Plaintiffs' motion for summary judgment on the "unlawful prong" of the UCL, and GRANTS Playground's motion for summary judgment on the "unfair" and

/ / / /

/ / / /

/ / / /

[11CV1842-GPC(KSC)]

1   "fraudulent" prongs of the UCL. The Court further GRANTS Tarsadia Defendants' and

2   Playground's motion for summary judgment on the negligence cause of action.

3       IT IS SO ORDERED.

4   DATED:  July 1, 2014

5

6                         HON. GONZALO P. CURIEL
                      United States District Judge

[11CV1842-GPC(KSC)]