1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

DEAN BEAVER, et al.,

CASE NO. 11CV1842-GPC(KSC)

11

Plaintiffs,

12

vs.

**ORDER RE RETROACTIVITY OF RECENT 2014 AMENDMENT TO THE INTERSTATE LAND SALES ACT;** *SUA SPONTE* **CERTIFYING ORDERS FOR INTERLOCUTORY APPEAL**

13
14
15

TARSADIA HOTELS, et als.,

16

Defendants,

17
18

On September 26, 2014, a bill that amended the Interstate Land Sales Disclosure Act ("ILSA") to exclude condominiums from the registration and disclosure requirements was enacted.  As a result, the liability of Tarsadia Defendants[1] depends on whether the amendment applies to the pending case. Therefore, on October 1, 2014, the Court directed the parties to brief whether the recent legislation enacted on September 26, 2014 applies retroactively to this case. (Dkt. No. 170.) On October 17, 2014, both parties filed a supplemental brief regarding retroactivity of the ILSA legislation. (Dkt. Nos. 171, 172.) On October 24, 2014, the parties filed a response to the supplemental briefs. (Dkt. Nos. 173, 174.)  Based on the reasoning below, the

19
20
21
22
23
24
25
26
27
28

[1]Tarsadia Defendants consist of 5th Rock, Gregory Casserly, Gaslamp Holdings, LLC, MKP One, LLC, B.U. Patel, Tushar Patel, and Tarsadia Hotels.

[11CV1842-GPC(KSC)]

Court concludes that the 2014 amendment to the ILSA does not apply retroactively to the instant case.

**Background**

On October 16, 2013, the Court, *inter alia*, denied Plaintiffs'[2] motion for summary judgment on the "unlawful prong" of California's Unfair Competition Law ("UCL") for violations of the registration and disclosure requirements under 15 U.S.C. § 1703(a)(1) as time barred. (Dkt. No. 128.) On July 2, 2014, Court, *inter alia*, granted Plaintiffs' motion for reconsideration of the Court's ruling on the "unlawful prong" of the UCL as timely, and as such, the Court granted Plaintiffs' motion for summary judgment on the "unlawful prong" of the UCL claim for violations of the registration and disclosure requirements under 15 U.S.C. § 1703(a)(1). (Dkt. No. 153.)

Subsequently, on July 30, 2014, Tarsadia Defendants filed a motion for reconsideration of the Court's prior order granting in part and denying in part Plaintiff's motion for reconsideration, (Dkt. No. 155), and on August 1, 2014, they filed a motion for certification of the Court's orders for interlocutory appeal and a stay of the action pending appeal. (Dkt. No. 158.) The motions were fully briefed.

Then, on September 23, 2014, Tarsadia Defendants filed a supplement to their motion for reconsideration along with a request for judicial notice. (Dkt. No. 167.) On September 26, 2014, Plaintiff filed a response to Tarsadia Defendants' supplemental brief. (Dkt. No. 169.)

In the request for judicial notice, Tarsadia Defendants informed the Court that the United States House of Representatives,[3] on September 26, 2013, and the United States Senate,[4] on September 18, 2014, unanimously passed an amendment to the Interstate Land Sales Full Disclosure Act ("ILSA") whereby the sale or lease of

---

[2]Plaintiffs are Dean Beaver, Laurie Beaver, Steven Adelman, Abram Aghachi, Dinesh Gauba, Kevin Kenna and Veronica Kenna.

[3]H.R. 2600.

[4]S. 2101.

condominium units are exempt from certain registration and disclosure requirements under the ILSA. (Dkt. No. 167-1, Ds' RJN, Exs.)  On September 26, 2014, the bill was signed by the President.

The bill is entitled, "To amend the Interstate Land Sales Full Disclosure Act to clarify how the Act applies to condominiums." (Id.)  If the recent amendment applies to the instant case, it would affect the Court's recent decision granting Plaintiffs' motion for summary judgment on the UCL cause of action for violations of the registration and disclosure requirements.  Plaintiffs support the position that the presumption against retroactivity applies in this case while Tarsadia Defendants assert that the amendment is a clarification of prior law which should be applied retrospectively[5] to this case.  Accordingly, the Court must determine whether the amendment should be applied retroactively to the instant case.

**Discussion**

The United States Supreme Court in Landgraf v. USI Film Prods., 511 U.S. 244 (1994), held that there is a presumption against retroactive legislation. Id. at 265.  The presumption is deeply rooted in our jurisprudence which is based on considerations of fairness that individuals should know what the law is in order to conform their conduct accordingly.  Landgraf, 511 U.S. at 265.  If retroactivity is an issue, it raises constitutional concerns that courts need to address by conducting a three inquiry analysis. Id. at 266-67, 280.  Despite the presumption, the United States Supreme Court recognized that retroactive legislation can serve benign and legitimate purposes

---

[5]The Ninth Circuit has "clarified the terminology Landgraf employs by using the term 'retrospective' to describe application of a new statute to events that occurred before its enactment, and reserving the term 'retroactive' to describe a statute that, if applied, would attach new legal consequences to conduct or transactions already completed." U.S. ex. rel Lindenthal v. General Dynamics Corp., 61 F.3d 1402, 1407 (9th Cir. 1995) (citation omitted).  "[C]ourts should not apply 'retroactive' statutes 'retrospectively' absent clear congressional intent." Id. (citing Landgraf, 511 U.S. at 280); Dept. of Toxic Substances Control v. Interstate Non-Ferrous Corp., 99 F. Supp. 2d 1123, 1127 (E.D. Cal. 2000).  "Laws that have no 'retroactive effect' when applied to pending cases are deemed, in our circuit, 'retrospective' laws." Dept. of Toxic Substances Control v. Interstate Non-Ferrous Corp., 99 F. Supp. 2d 1123, 1127 (E.D. Cal. 2000).  A clarification in the law that is applied to existing cases establishes a retrospective effect of a statutory amendment. Id. at 1133.

[11CV1842-GPC(KSC)]

1   such as "respond to emergencies, to correct mistakes, . . . or simply to give

2   comprehensive effect to a new law Congress considers salutary." Id. at 268.

3       "Congress may amend a statute to establish new law, but it also may enact an

4   amendment 'to clarify existing law, to correct a misinterpretation, or to overrule

5   wrongly decided cases.'" Brown v. Thompson, 374 F.3d 253, 259 (4th Cir. 2004)

6   (quoting United States v. Sepulveda, 115 F.3d 882, 885 n. 5 (11th Cir. 1997) (internal

7   quotation marks and citation omitted)).  "Statutes may be passed purely to make what

8   was intended all along even more unmistakably clear." United States v. Montgomery

9   County, 761 F.2d 998, 1003 (4th Cir. 1985).

10      The Ninth Circuit has held that if an amendment clarifies preexisting legislation

11   rather than effect a change in the law, a Landgraf analysis is not needed.  ABKCO

12   Music, Inc. v. LaVere, 217 F.3d 684, 689 (9th Cir. 2000); Beverly Comm. Hosp. Ass'n

13   v. Belshe, 132 F.3d 1259, 1266 (9th Cir. 1997).  Therefore, the Court must first

14   determine whether the 2014 ILSA amendment is a clarification of a prior statute or a

15   substantive change in the law.

16   **A.     Clarification or Substantive Change in the Law**

17      Plaintiffs contend that there is no legislative intent that the amendment should

18   be applied retroactively.  They argue that the history of HUD regulations and court

19   decisions treating condominiums as lots under ILSA for over thirty years strongly

20   suggest that the amendment is a change in the law, and not a clarification.  Second,

21   they contend that the amendment provides for an effective date of 180 days after

22   enactment which strongly indicates an intent to have the law apply prospectively only.

23   Tarsadia Defendants argue that the amendment should apply retroactively because it

24   is merely clarifying ILSA as demonstrated by the title of the amendment and comments

25   made by sponsors of the bill.

26      Whether an amendment is a clarification of a prior statute or a substantial change

27   in the law is key to determining whether the amendment has a retroactive effect that

28   raises constitutional issues. See Beverly Comm. Hosp. Ass'n v. Belshe, 132 F.3d 1259,

1265 (9th Cir. 1997).  If an amendment is determined to be a "clarification" then it has no retroactive effect and not subject to any presumption against retroactivity but if an amendment constitutes a substantial change in the law, then it raises issues as to retroactivity.  Id.; ABKCO Music, Inc. v. LaVere, 217 F.3d 684, 689 (9th Cir. 2000).  "'When an amendment is deemed clarifying rather than substantive, it is applied retroactively.'" ABKCO Music, Inc., 217 F.3d at 689 (citation omitted) ("[C]larifying legislation is not subject to any presumption against retroactivity and is applied to all cases pending as of the date of its enactment").

"Several factors are relevant when determining if an amendment clarifies, rather than effects a substantive change to prior law." Dept. of Toxic Substances Control v. Interstate Non-Ferrous Corp., 99 F. Supp. 2d 1123, 1129-30 (E.D. Cal. 2000).  "A significant factor is whether a conflict or ambiguity existed with respect to the interpretation of the relevant provision when the amendment was enacted. If such an ambiguity existed, courts view this as an indication that a subsequent amendment is intended to clarify, rather than change, the existing law." Id. at 1129 (quoting Piamba Cortes v. American Airlines, Inc., 177 F.3d 1272, 1283-84 (11th Cir. 1999)).  In addition, courts "may rely on upon a declaration by the enacting body that its intent is to clarify the prior enactment." Id. at 1284; see also Brown, 374 F.3d at 259.

In ABKCO Music, Inc., the Ninth Circuit held that a 1997 amendment to the Copyright Act providing that distribution of phonorecords before January 1, 1978 did not constitute publication of the musical work embodied clarified prior law.  ABKCO Music, Inc., 217 F.3d at 691-92.  In its analysis, the court looked at the congressional record and the ambiguity of the prior statute noting there was a circuit split as to the term "publication" as it was not defined under the Copyright Act. Id. at 690-91.  As to the circuit split, the Court noted that in 1976, prior to the amendment, the Second Circuit held that the sale of phonorecord in the 1950s did not constitute a publication. See Rosette v. Rainbo Record Mfg. Corp., 546 F.2d 461 (2d Cir. 1976).  Rosette was the leading case until the Ninth Circuit decision in  La Cienega Music Co. v. ZZ Top,

[11CV1842-GPC(KSC)]

53, F.3d 950 (9th Cir. 1995), where it held the contrary that selling a recording constitutes a "publication" under the Copyright Act of 1909. Id. at 689. In 1997, Congress amended the Copyright Act and provided that the distribution of a phonorecord before January 1, 1978 did not constitute a publication of the musical work. See 17 U.S.C. § 303(b).

Moreover, the Ninth Circuit looked at the House Report stating that the amendment "intended to restore the law to what it was before the decision of the Ninth Circuit Court of Appeals in La Cienega Music Co. v. Z.Z. Top." Id. at 690. Moreover, sponsors and non sponsors of the bill commented on the bill using words such as "clarify", "restore national uniformity on this important issue", "La Cienega decision took settled law and cast it on its head, threatening to thrust into the public domain hundreds of thousands of musical works which presently enjoy copyright protection." Id. at 690.

In another case Beverly Comm. Hosp. Ass'n v. Belshe, the Ninth Circuit held that the amendment to the Medicare program concerning payments to the elderly poor was a clarification and not a substantive change in the law. Beverly, 132 F.3d 1267. The amendment prescribed a retroactive effective date. Id. at 1264. In making its determination that the amendment was a clarification and not a substantial change in the law, the Court noted Congress's formal declaration that the amendment is a clarification as stated in the title of the Act and as stated in the Committee Reports and the split of authority on this issue. Id. at 1266.

In Fitzgerald v. Century Park, Inc., the Court also looked at the delayed effective date of the amendment. 642 F.2d 356, 359 (9th Cir. 1981). This case dealt with the retroactivity of the 1979 amendment of the ILSA which was a comprehensive revision of the ILSA. Id. The Ninth Circuit held that the 1979 amendment to ILSA did not apply retroactively to the case because it allowed a more liberal damages provision. Id. at 358. The court noted that not only did the amendment liberalize the damages provision, it also changed the liability by exempting some developers who were subject

1  to the disclosure provision.  Id. at 358-59.  The conference reports also noted that the

2  exemption provisions should be applied prospectively.  Id. at 359.  Therefore, the court

3  concluded that it would lead to an odd  result if the exemption provision was applied

4  prospectively while the damages provision applied retroactively.  Id.  The court also

5  took into consideration the future effective date of the amendment commenting that

6  "[i]t is unlikely that Congress would delay the effective date of amendments which are

7  to be applied retroactively."  Id.  Although not a key factor, the future effective date of

8  a statute was taken into consideration.

9      Based on Ninth Circuit authority, the Court looks at the title of the amendment,

10  ambiguity in the pre-existing statute, legislative history, and the effective date of

11  enactment to determine whether the amendment is a clarification or substantive change

12  in the law.

13      **1.      Title of the Amendment**

14      Plaintiffs contend that despite the clarification language in the title, the

15  amendment constitutes a substantial change in the law.  Tarsadia Defendants argue that

16  the title of the amendment states the amendment is a clarification, and not a substantive

17  change in the law.

18      "While titles of acts are not part of the law, they can be used to resolve ambiguity

19  in a statute, so long as they do not contradict the actual text . . . ."  Beverly Comm.

20  Hosp. Ass'n v. Belshe, 132 F.3d 1259, 1266 n. 6 (9th Cir. 1997).   In Beverly,

21  "clarification" was in title of the Act and the text of the statute also provided for

22  retroactive application.  Id. at 1264.  Therefore the clarification title paralleled the

23  provisions of the amendment act that specifically made the statute applicable to pre-Act

24  services involving in pending litigation.  Id. at 1266 n. 6.

25      Here, the title of the amendment is "To amend the Interstate Land Sales Full

26  Disclosure Act to clarify how the Act applies to condominiums."  But the amendment

27  also includes an effective date provision which states, "The amendments made by this

28  Act shall take effect 180 days after the date of the enactment of this Act."  While not

dispositive, a future effective date can be an indication that Congress intended the amendment to apply prospectively.  See Koch v. S.E.C., 177 F.3d 784, 786 (9th Cir. 1999); Fitzgerald v. Century Park, Inc., 642 F.2d 356, 359 (9th Cir. 1981) ("It is unlikely that Congress would delay the effective date of Amendments which are to be applied retroactively.").   The Court concludes that "clarify" in the title of the amendment conflicts with the effective date provided in the text of the amendment. Therefore, "clarify" in the title cannot be used to resolve an ambiguity as to whether the amendment is a clarification of prior law or not.

### 2.   Ambiguity

Plaintiffs contend that the application of the ILSA to condominiums was never disputed and has been applied to condominiums during the past 30 years.  Therefore, there has been no ambiguity as to the application of the pre-existing statute and therefore, the amendment is a change in the law.  Tarsadia Defendants assert that Congress clarified the ILSA since it was never intended to apply to condominiums when it was originally enacted.  They argue that the ambiguity was created by HUD's interpretation of "lot" to include condominiums.

"An amendment in the face of an ambiguous statute or a dispute among the courts as to its meaning indicates that Congress is clarifying, rather than changing, the law." ABKCO Music, Inc., 217 F.3d at 691.  In determining whether a statute is ambiguous, courts look to see whether there is a circuit split or dispute among the courts.  See id. (circuit split); Beverly Comm. Hosp. Ass'n, 132 F.3d at 1266-67 (split of authority construing statute and the complicated and "impenetrable" texts of the Medicaid and Medicare statutes indicate that the amendment was a clarification).

The ILSA's registration and disclosure requirements apply to the "sale or lease of any *lot* not exempt under section 1702 of this title . . ." 15 U.S.C. § 1703(a)(1) (emphasis added).  While the term "lot" is not defined in the ILSA, the Consumer Financial Protection Bureau, formerly HUD, the agency charged with administering the

1    ILSA has consistently maintained that "lot" applies to condominium units.[6]  Courts

2    have followed this interpretation of "lots".  See Winter v.Hollingsworth Props., Inc.,

3    777 F.2d 1444 (11th Cir. 1985).  Since Winters, federal courts have held that, unless

4    a statutory exemption applies, the registration and disclosure requirements apply to

5    condominiums since the term "lot" applies to units in a condominium unit.  See Smith

6    v. Myrtle Owner, LLC, 09cv1655-KAM(VVP), 2011 WL 2635717, at *2 (E.D.N.Y.

7    Feb. 9, 2011) (the court "is not aware of any contrary authority holding the statute

8    inapplicable to condominiums."); but see Becherer v. Merrill Lynch, Pierce, Fenner &

9    Smith, Inc., 127 F.3d 478, 481 (6th Cir. 1997) (while ILSA applies to condominiums,

10   it did not apply to a non-residential hotel condominiums subject to use restrictions as

11   they are not "lots" within the meaning of ILSA).

12        Tarsadia Defendants summarily argue that the ILSA was never intended to apply

13   to condominiums when it was originally enacted.  However, Congress added the word

14   "condominium" to the improved lot exemption, 15 U.S.C. § 1703(a)(2)[7] in the

15   amendment to the ILSA in 1978.  See Winter, 777 F.2d at 1448-49 & n. 7 ("if the

16   ILSFDA did not include the sale of condominiums within its scope, it would be

17   senseless to provide for the exclusion of such sales under certain prescribed conditions.

18   We therefore conclude that Congress was aware of, and approved, of, HUD's

19   construction of the Act and hold that the ILSFDA is applicable to the sale of

20   condominiums.").  Therefore, condominiums were subject to the provisions of the

21   ILSA in 1978.  Moreover, Tarsadia Defendants assert that HUD's interpretation of

22   "lot" created the ambiguity regarding condominiums.  If this were accurate, it would

23   be logical that Congress would have clarified the term "lot" in its amendment.  In fact,

---

25        [6]The CFPB defined "lot" to be "any portion, piece, division, unit, or undivided interest in land located in any state or foreign country, if the interest includes the right to the exclusive use of a specific portion of the land."  12 C.F.R. § 1010.1(b).

27        [7]15 U.S.C. § 1702(a)(2) provides that the provisions of ILSA shall not apply to "the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years. . . ."  15 U.S.C. § 1702(a)(2) (emphasis added).

the amendment does not alter or overturn HUD's definition of "lots" to include condominiums.  This definition of "lot" still applies to the ILSA since condominiums are still subject to the anti-fraud provisions which involve "the sale or lease, or offer to sell or lease, any *lot* not exempt under section 1702(a) . . . ." 15 U.S.C. § 1703(a)(2).  Therefore, HUD's definition of "lot" did not create ambiguity in the statute.

A careful look at the recent amendment reveals that it added condominiums as an exemption under the registration and disclosure requirements under the ILSA.  In essence, the amendment changes the liability provisions of the ILSA where condominiums that were previously not exempted are now exempt from the registration and disclosure requirements.  See 15 U.S.C. § 1702(b).  The amendment increased the number of exemptions for purposes of the registration and disclosure requirements to include all condominiums.  The parties do not provide any analysis as to how the added exemption to exclude condominiums from the registration and disclosure requirements under the ILSA clarifies the prior law.  It is clear that the prior statute did not exclude condominiums from the registration and disclosure requirement.  Moreover, there is no split in authority on whether the disclosure and registration requirements of the pre-amendment ILSA applied to condominiums.  The Court concludes that there is no ambiguity in the prior law as to whether an exemption existed for condominiums that were exempt only for the registration and disclosure requirements.  Accordingly, this factor weighs in favor of the amendment being a substantive change in the law.

**3.    Legislative History**

Plaintiffs assert that the legislative history reveals no "clear" and "unambiguous directive" as to retroactivity required by Landgraf.  Tarsadia Defendants maintain that the legislative history reinforces the clarifying purpose of the amendment.

Based on the Court's review, the legislative history is limited to the introductory remarks from a sponsor, Carolyn Maloney and three statements prior to a vote in the House of Representatives.  No statements were made by the Senators.  It does not appear that there are any committee reports, conference reports, or floor debates.

[11CV1842-GPC(KSC)]

Carolyn Maloney, one of the sponsors of the bill, made introductory remarks on the measure on June 28, 2013. Congressional Record E1004-1005 (June 28, 2013). In those remarks, she stated that ILSA was intended to protect out-of-state buyers who were sold land that was not what was advertised and provides a right of action to rescind the contract but courts have ruled over the years that ILSA applies to condominiums which required developers to file redundant paperwork that was unnecessary and not relevant. Id. at 1004. She noted that the law needed a "technical fix" to distinguish condominium sales from other types of land sales. Id. at 1005. The Court notes that there are no statements as to "clarification" in these introductory remarks.

On September 25, 2013, the House moved to suspend the rules and pass the bill, H.R. 2600. The House proceeded with comments by the sponsors on September 25, 2013 prior to voting. Representative Patrick T. McHenry, from North Carolina stated,

> I want to begin by commending my colleague Congresswoman Carolyn Maloney of New York for introducing H.R. 2600 in an effort to *clarify* the intent and purpose of the Interstate Land Sales Full Disclosure Act, or ILSA.
>
> ILSA was signed into law almost a half century ago to regulate fast-buck operators, who were bilking investors, especially the elderly, through blatantly fraudulent sales of raw land often located in swamps and deserts.
>
> It was land sales, not condo units, which were the intended target of the ILSA disclosures, which is quite evident in the fact that the required disclosures relate to land issues, such as access to roads and water supply, and make no sense in the context of more urban vertical developments. Nevertheless, in the 1980s, the Federal courts started to apply ILSA to vertical condominiums based on HUD's broad interpretation and Congress' failure to expressly exempt condominiums.
>
> The fact is that purchasers of vertical condominium units do not need the additional disclosures of that act. To the extent that any of the act's disclosures relate to condo developments, they are generally duplicative of more extensive information already contained in State-mandated disclosures to purchasers.
>
> The private use of ILSA was practically nonexistent for 40 years, until 2008, when the real estate market crashed and purchasers' lawyers started looking for ways to escape pre-crash contracts. As the recession continued, plaintiffs' lawyers began seeking out purchaser clients to file lawsuits under that act, demanding the full rescission of contracts

with such Web sites as "No-Condo.com."

Courts generally acknowledge that ILSA has become "an increasingly popular means of channeling buyer's remorse"; but while courts have expressed sympathy for the developers' position, many courts have felt compelled to apply the language of the statute literally, allowing buyers to escape valid contracts.

Therefore, I stand in strong support of H.R. 2600, which puts an end to the exploitation of ILSA and allows residential condominium sales to make a return to the marketplace. I want to urge my colleagues to support this bill. . . .

Representative Carolyn B. Maloney stated,

The Interstate Land Sales Full Disclosure Act, known as ILSA, was enacted in 1969 to protect consumers from being cheated in land deals. It was originally intended to protect out-of-State buyers who were sold land that was not what it was advertised to be and to provide a right of action to rescind the contract and walk away from the deal. However, due to *ambiguities* in the original law, courts have ruled over the years that ILSA applies to condominiums and that developers are required to file redundant paperwork and make disclosures that are completely nonsensical when applied to condo units.

This has led to absurd results. For example, ILSA requires condo developers to file a report that discloses, among other things, information about the condo unit's topography, how much of the condo is covered by water, whether there is any soil erosion, and whether the condominium has any oil and gas rights.

I, for one, don't know of any high-rise condo units that are covered by water. Requiring condo developers to file these types of nonsensical disclosures provides no consumer protection whatsoever and simply generates unnecessary paperwork.

Unfortunately, during the economic down turn in 2008, some buyers used the recording requirements of ILSA to rescind otherwise valid contracts for economic reasons, an unintended consequence of the act and its intent. The law now needs a technical fix to distinguish condominium sales from other types of land sales and to recognize the unique conditions under which these units are sold in today's market. . . .

Representative Jerrold Nadler stated,

Mr. Speaker, I rise in support of H.R. 2600, a commonsense *clarification* to the Interstate Land Sales Full Disclosure Act, ILSA, to preserve consumer protections while keeping our economic recovery on track.

More than 40 years ago, Congress passed ILSA to prevent real estate developers from bilking unsuspecting buyers out of their life savings by selling them parcels of land in the middle of a swamp or of a desert.

ILSA requires sellers to disclose critical information about the land being sold, including automobile access to the property, the availability of water on a lot, and access for emergency personnel. These disclosure requirements are clearly necessary and appropriate for individuals who are buying land sight unseen.

They do not make sense, however, when you try to apply them to purchases of condominiums in urban high-rise developments. Clearly, a condo in downtown Manhattan or in downtown Dallas will have access to water and emergency services, and purchasers do not need to know about the risk of soil erosion or about the presence of mobile homes within their units on the 15th floor.

Although common sense would dictate otherwise, courts have interpreted the vague statutory and regulatory language of ILSA to apply to condo purchases. While that interpretation has been disputed and discussed over the years, ILSA was rarely an issue in private condo sales until the economy collapsed in 2008; and as mentioned by Mrs. Maloney, in facing tough financial times and underwater mortgages, many condo and co-op buyers began to use a developer's failure to comply with ILSA to void otherwise valid contracts for condo purchases and receive full refunds of their pre-cash down payments. These suits slowed the housing recovery and left many large developments in New York, Florida, and in other States unfinished or unoccupied.

We can all agree that ILSA provides vital consumer protections for land purchasers, but the law should not be used to void valid contracts because of buyer's remorse. The bill before us today provides a simple *clarification* to explicitly exempt condominium sales from the law's disclosure requirements. To ensure that ILSA continues to provide the highest level of consumer protection, condominium developers will still be required to comply with the law's antifraud provisions. Developers will also be required to continue complying with all State and local disclosure requirements for condominiums. . . .

Congressional Record H5821-5823 (Sept. 25, 2013) (emphasis added). On September 18, 2014, the Senate passed the bill unanimously. Congressional Record 5862 (Sept. 18, 2013).

In determining legislative intent, the United States Supreme Court held that Committee Reports are the authoritative source for determining legislative intent because they "represen[t] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation." Garcia v. United States, 469 U.S. 70, 76 (1984) (quoting Zuber v. Allen, 396 U.S. 168, 186 (1969)). The Court noted that passing comments from one congressman and casual statements from the floor debates are to be eschewed. Id. at 76. Committee reports are

[11CV1842-GPC(KSC)]

"more authoritative" than comments from the floor. . . ." Id.

The United States Supreme Court has also held that the language of the act, the legislative reports and debates in both houses of Congress can be looked at to ascertain congressional intent. Humphrey's Ex'r v. United States, 295 U.S. 602, 624-626 (1935). The Congressional Record and the statutory language provide an indication of legislative intent. See DeHart v. Horn, 390 F.3d 262, 275 (3d Cir. 2004). In Brock v. Pierce County, 476 U.S. 253, 263 (1986), the Court held that "statements by individual legislators should not be given controlling effect, but when they are consistent with the statutory language and other legislative history, they provide evidence of Congress' intent." Brock, 476 U.S. at 263. And where the legislative history is sparse and no legislator opposed the bill, more weight can be given to comments by individual legislators. See Mount Graham Red Squirrel v. Madigan, 954 F.2d 1441, 1453–54 (9th Cir. 1992).

In this case, the representatives used words such as "clarification" and "ambiguities" as to the reasons why the amendment should be passed.   There are no committee reports and the legislative history is limited to the comments made by the sponsors prior to voting. While Plaintiffs argue comments by a few sponsors of the bill do not reflect the collective views of both houses of Congress, it is to be noted that the bill was passed in both houses with a unanimous vote.  The bill was not controversial and no legislator opposed it. Therefore, it would appear that the Court can give weight to the statements by these representatives.  However, statements by legislators should not be given controlling weight when they are not consistent with the statutory language or other legislative history. See Brock, 476 U.S. at 263. As discussed above, the amendment did not clarify pre-existing law because it was not ambiguous. Nothing in the legislative history of the ILSA reveals any ambiguity or confusion as to this issue.  Therefore, the Court concludes that the comments by these representatives cannot be given controlling weight.

/ / / /

[11CV1842-GPC(KSC)]

### 4.    Effective Date 180 Days after Enactment

Plaintiffs argue that Congress's insertion of the effective date to be 180 days after enactment indicates that Congress most likely sought to have the amendment take place prospectively.   Tarsadia Defendants assert that Plaintiffs' overstate the importance of the effective date and that the authority they cite are distinguishable. However, Tarsadia Defendants do not address the relevance of the future effective date to their analysis.

"A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date." Landgraf, 511 U.S. at 257.  A future effective date, while not conclusive, is relevant. Gay v. Sullivan, 966 F.2d 1124, 1128 (11th Cir. 1992).  "It is unlikely that Congress would delay the effective date of Amendments which are to be applied retroactively" Fitzgerald, 642 F.2d at 359.  A delayed effective date can suggest that Congress did not intend for the amendment to be retroactive.   Koch v. S.E.C., 177 F.3d 784, 786 (9th Cir. 1999) (citing  Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 839 (1990) ("Congress delayed the effective date on the amended version [of the statute] by six months to permit courts and attorneys to prepare for the change in the law. Thus, at the very least, the amended version cannot be applied before the effective date . . . .").  A future effective date raises questions whether Congress sought to have the amendment apply prospectively and does not support Tarsadia Defendants' argument that the amendment is a clarification.

The conclusion that the pre-existing statute was not ambiguous, which is a significant factor in the analysis, see Dept. of Toxic Substances Control, 99 F. Supp. at 1129-30, compels the Court to conclude that the amendment is a change in the law, and not a clarification of pre-existing law.  Accordingly, the Court looks to whether the amendment should be applied retroactively pursuant to Landgraf.

/ / / /

/ / / /

[11CV1842-GPC(KSC)]

**B.     Landgraf Analysis**

A Landgraf[8] analysis is based on "[e]lementary considerations of fairness dictat[ing] that individuals should have an opportunity to know what the law is and to conform their conduct accordingly."  Landgraf, 511 U.S. at 265.  This takes into account "familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance." Id. at 270.

The first step in the analysis is to determine whether Congress has *expressly* prescribed the statute's proper reach.   Id. at 280 (emphasis added). "If Congress has done so, of course, there is no need to resort to judicial default rules." Id.  If there is no express command, "the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transaction already completed."  Id.  "If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result."  Id.

**1.     Temporal Reach of Statute**

Plaintiffs argue that the text of the statute does not unambiguously state that it is to be applied retrospectively to pending cases.  In fact, the effective date provision expresses Congress' intent that the amendment apply prospectively. Tarsadia Defendants contend that Congress clearly prescribed the statute's proper reach by using of the word "clarify" in the title of the amendment which provides an "express command" and "unambiguous directive" to apply the amendment retroactively.

The first step in the Landgraf analysis is to determine whether Congress has "expressly provided that the statute in question should apply retroactively or

---

[8]In Landgraf, the question was whether the provision of the Civil Rights Act of 1991, which created a right to recover compensatory and punitive damages for certain violations of Title VII of the Civil Rights Act of 1964 and a right to a jury trial if such damages are sought, "apply to a Title VII case that was pending on appeal when the statute was enacted" when such damages were not recoverable prior to the amendment. Landgraf v. USI Film Prods., 511 U.S. 244, 247 (1994).

[11CV1842-GPC(KSC)]

prospectively." <u>Scott v. Boos</u>, 215 F.3d 940, 943 (9th Cir. 2000).  In determining the temporal reach of the statute as prescribed by Congress, courts should examine the statute's language to determine whether Congress has given an "express command" or an "unambiguous directive" that the amendment apply retrospectively.  <u>Dept. of Toxic Substances Control</u>, 99 F. Supp. 2d at 1128.

The statute's effective date provision may be considered in determining whether Congress expressly prescribed the statute's reach.  <u>Koch v. S.E.C.</u>, 177 F.3d 784, 786 (9th Cir. 1999).  In <u>Koch</u>, the effective date provision stated that the statute shall be "effective 12 months after the date of enactment of this Act [October 15, 1990] or upon the issuance of final regulations initially implementing such [subparagraph], whichever is earlier." <u>Id.</u>  The court concluded that since the Act did not *expressly* prescribe its own temporal reach, it must address the second step of <u>Landgraf</u>, which is to determine whether the Act would have retroactive effect on the plaintiff. <u>Id.</u>  The court concluded that a future effective date does not provide an indication that Congress meant the provision to be retroactive.  <u>Id.</u>  However, it noted that a delayed effective date is a suggestion that Congress did not intend for the amendment to be retroactive. <u>Id.</u> (citing <u>Kaiser Aluminum & Chem. Corp. v. Bonjorno</u>, 494 U.S. 827, 839 (1990) ("Congress delayed the effective date on the amended version [of the statute] by six months to permit courts and attorneys to prepare for the change in the law. Thus, at the very least, the amended version cannot be applied before the effective date . . . .").

In this case, as in <u>Koch</u>, the six month effective date does not provide an "express command" and "unambiguous directive" that the amendment should be applied retroactively.  <u>See Koch</u>, 177 F.3d at 786.  Accordingly, the Court must proceed to the next step.

### 2.    Retroactive Effect

Plaintiffs maintain that the statute has retroactive effect because it would deprive Plaintiffs of their cause of action under the UCL, a cause of action they had prevailed on prior to the amendment.  Tarsadia Defendants assert that there is no retroactive

[11CV1842-GPC(KSC)]

effect because unlike the 1979 amendment when ILSA expanded the liability of developers for past conduct by liberalizing the damages remedies, in this case, no such increase to a party's liability results requiring retroactive application. They also argue that there can be no rights impaired because Congress explained that no such rights ever existed under the original enactment of ILSA in 1969.

A statute has retroactive effect if "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." <u>Landgraf</u>, 511 U.S. at 280. Impairing the rights of a plaintiff can involve depriving a plaintiff of a cause of action. <u>See</u> <u>Mathews v. Kidder, Peabody & Co., Inc.,</u> 161 F.3d 156, 165 (3d Cir. 1998) (" That amendment, creating a right to compensatory and punitive damages (where only back pay had been previously available), 'can be seen as creating a new cause of action, and its impact on parties' rights is especially pronounced.' <u>Landgraf</u>, 511 U.S. at 283, 114 S.Ct. 1483. If a change in the law from back pay to compensatory and punitive damages is seen as creating a new cause of action and impairing a party's rights, certainly a change from treble damages (under RICO) to compensatory damages alone (under the securities laws) may be seen as destroying a cause of action and impairing a party's rights.")

Tarsadia Defendants' argument involves a very narrow and limited reading of the application of retroactive effect to only apply when it expands liability, which the Court does not adopt. Here, prior to the amendment, Plaintiff had a valid UCL claim based on the registration and disclosure requirements under the ILSA. If the amendment applied to this case, Plaintiffs would not have a UCL claim under the ILSA and lose its rescission rights. This consequence impairs the rights Plaintiff possessed when they filed their complaint. Therefore, the amendment has retroactive effect.

### 3.     Clear Congressional Intent

Since Congress has not expressly provided for the amendment's temporal reach and it has retroactive effect, the presumption against retroactivity governs "absent clear congressional intent favoring such a result." <u>Landgraf</u>, 511 U.S. at 280.

[11CV1842-GPC(KSC)]

As described above, there is no clear congressional intent to apply the amendment retroactively; therefore the presumption against retroactive application applies. Thus, the Court concludes that the amendment does not apply to the pending case.

**C.    Certification Order for Interlocutory Appeal and Staying Action Pending Appeal**

A district court, *sua sponte*, may certify an order for interlocutory appellate review where the order involves 1) a controlling question of law; 2) as to which there is substantial ground for difference of opinion; and 3) where an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); see e.g. U.S. v. Stanley, 483 U.S. 669, 673 (1987); Al–Haramain Islamic Found., Inc. v. Bush, 507 F.3d 1190, 1196 (9th Cir. 2007) (noting that district court *sua sponte* certified its order for interlocutory appeal). A district court's decision whether to certify an order for interlocutory appeal should be used "in extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation." United States Rubber Co. v. Wright, 359 F.2d 784, 785 (9th Cir. 1966).

The Court concludes that the following issues ruled upon by the Court should be certified on appeal. First, the issue of whether the 2014 ILSA amendment applies retroactively to the pending case as determined by the Court in this Order. Second, whether the Hard Rock Project is subject to the ILSA based on the fact that it is a "lot" and that the improved lot exemption did not apply to the Hard Rock Project in the Court's order filed on October 16, 2013. Third, whether Plaintiffs' "unlawful" prong claim under the UCL is governed by the three-year statute of limitations set forth under ILSA or the four year statute of limitations set forth under the UCL which is analyzed in the Court's orders filed on October 16, 2013 and July 2, 2014.

The Court concludes that the resolution of these issue involve controlling questions of law where there are substantial grounds for difference of opinion. If the appellate court reverses the Court's decision on any of these issues, it would materially

[11CV1842-GPC(KSC)]

1  affect the outcome of the case and possibly advance the ultimate termination of the

2  litigation.  Thus, the Court concludes that these issues are appropriate for interlocutory

3  appeal.

4       Prior to the 2014 amendment, Tarsadia Defendants filed a motion for certificate

5  of appealability on August 1, 2014 as to several issues.  Consistent with the Court's

6  certification order, the Court grants Tarsadia Defendants' motion for certificate of

7  appealability only as to whether the Hard Rock Project is subject to the ILSA based on

8  the fact that it is a "lot" and that the improved lot exemption did not apply to the Hard

9  Rock Project, and whether Plaintiffs' "unlawful" prong claim under the UCL is

10  governed by the three-year statute of limitations set forth under ILSA or the four year

11  statute of limitations.[9]

12       In addition, 28 U.S.C. §1292(b) provides for a stay pending appeal if it will

13  promote economy of time and effort.  A stay of the action is appropriate because

14  resolution of the issue will likely alter the direction of the current proceedings and a

15  stay would promote efficiency and economy of time for the Court and for the parties.

16  Accordingly, if the Court of Appeals grants the permission to appeal, the Court STAYS

17  the action pending resolution of the proceeding in the Ninth Circuit.

18  **Conclusion**

19       Based on the above, the Court concludes that the 2014 amendment to the ILSA

20  does not apply to the instant case.  The hearing set for October 31, 2014 shall be

21  **vacated**.  The Court, *sua sponte*, certifies this Order and the Court's Orders filed on

22  October 16, 2013 and July 2, 2014 for interlocutory appeal.  In line with the Court's *sua*

23  ////

24  ////

25  ////

26

27      [9]Tarsadia Defendants also seek to certify on appeal the issue of whether the UCL

28  claim may be predicated upon a violation of ILSA.  (Dkt. No. 158.)  As stated by
Tarsadia Defendants, the Court did not address this issue.  Therefore, the Court
DENIES Tarsadia Defendant's motion for certificate of appealability on this issue.

[11CV1842-GPC(KSC)]

*sponte* certification order, the Court also GRANTS in part Tarsadia Defendants' motion for certificate of appealability on these same issues.  (Dkt. No. 158.)

IT IS SO ORDERED.

DATED:  October 29, 2014

HON. GONZALO P. CURIEL
United States District Judge

- 21 -

[11CV1842-GPC(KSC)]