UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN BEAVER AND LAURIE BEAVER, HUSBAND AND WIFE; *et al.*,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>TARSADIA HOTELS, A CALIFORNIA CORPORATION; *et al.*,<br><br>　　　　　Defendants. | Case No. 11-cv-01842-GPC-KSC<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVALOF CLASS ACTION SETTLEMENT;**<br>**(2) DIRECTING ISSUEANCE OF NOTICE; AND**<br>**(3) SETTING FINAL APPROVAL HEARING**<br><br>**[ECF No. 273.]** |

The Parties and Playground Destination Properties, Inc. have entered into a Class Settlement Agreement and Release, dated April 24, 2017 ("Settlement")[1] which, if approved, would resolve this putative class action. Plaintiffs have filed a Motion for

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Settlement.

Preliminary Approval of the Settlement. Upon review and consideration of the motion papers, including the Settlement, Notice Program, and Distribution Plan, the Court finds that there is sufficient basis for: (1) granting preliminary approval of the proposed Settlement; (2) preliminarily certifying the proposed Class for settlement purposes only; (3) preliminarily appointing Plaintiffs as Class Representatives and their counsel as Class Counsel; (4) approving the Parties' proposed Notice Program and directing that Notice be disseminated to the Class; (5) appointing the Garden City Group, LLC ("GCG") as the Settlement Administrator to conduct the duties set forth for that position in the Settlement; and (6) setting a hearing (the "Fairness Hearing"), **on September 15, 2017** at which the Court will consider, among other things: (a) whether the proposed Settlement, including the proposed Distribution Plan, should be Finally Approved as fair, reasonable, and adequate to the Class; (b) whether final judgment should be entered dismissing with prejudice this Action; (c) Class Counsel's application for attorneys' fees, costs, and expenses; and (d) Class Representatives' application for service awards;

The Court now GRANTS the Motion for Preliminary Approval and makes the following findings and orders:

Certification of Settlement Class

1. The Ninth Circuit adheres to a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The initial decision to approve or reject the settlement under Fed. R. Civ. P. 23(e) is committed to the sound discretion of the trial judge." *Id.* at 1291.

2. Rule 23(a) of the Federal Rules of Civil Procedure establishes four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). The Court finds that all of these requirements of Rule 23(a) are met here for settlement purposes only. Joinder of the more than 360 members of the Class in a single proceeding would be impractical. Because all Class members' claims stem from the same factual circumstances—the failure to provide

rescission rights when Class members purchased condominium-hotel units—and raise the same legal claim, common issues exist among Class members and predominate over questions affecting only individual Class members. Plaintiffs' claims are typical of those of the Class in that they possess the same interest and suffered the same injury as putative Class members. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class; Plaintiffs have no interests antagonistic to those of the Class, and have retained counsel experienced and competent to prosecute this matter on behalf of the Class. Finally, for settlement purposes only, a class settlement is superior to other available methods for a fair resolution of the controversy because the class mechanism will reduce litigation costs and promote greater efficiency.

3. Because some of these factors—including the Class Members' reactions and governmental participation—cannot be fully assessed until the Court conducts a final fairness hearing, "a full fairness analysis is unnecessary at this stage." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal citation and quotation marks omitted). Rather, "[t]he Court's task at the preliminary approval stage is to determine whether the settlement falls 'within the range of possible approval.'" *Hart v. Colvin*, No. 15-CV-00623-JST, 2016 WL 6611002, at *4 (N.D. Cal. Nov. 9, 2016) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). In examining "overall fairness," the Court must review the proposed settlement "as a whole, rather than the individual component parts." Id. (quoting Hanlon, 150 F.3d at 1026). A court lacks "the ability to delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal citations and quotation marks omitted).

4. For the foregoing reasons, the Court preliminarily certifies the following settlement Class for purposes of the proposed Settlement only:

> All individuals and businesses who agreed to purchase condominium-
> hotel units at the Hard Rock Hotel & Condominiums in San Diego,
> California at any time between May 2006 and December 2007 and

ultimately closed escrow on units in the project, with the exception of (a) the Tarsadia Defendants and their officers, affiliates, directors, employees and the immediate family members of its officers, directors and employees (the Tarsadia Defendants have determined this exception excludes only Units 602, 639 and 1150), (b) those named plaintiffs in the action entitled *Bell et al. v. Tarsadia Hotels et al.* (San Diego Superior Court Case No. 37-2010-00096618) who signed the Settlement Agreement And Mutual Release in that case, (c) the named plaintiffs in the action entitled *Salameh et al. v. Tarsadia Hotels et al*. (Case No. 09-CV-2739), and (d) Persons who file timely Opt-Outs. The Settlement Class shall be construed to include purchasers "Subject to the 2008 Close Defense" and "Subject to the Assignment Defense," as those phrases are used in Exhibit A to the Class Member Stipulation (Dkt. No. 70), provided that they otherwise fall within the definition of the Settlement Class. Without in anyway limiting the foregoing, a list of known Settlement Class members is attached hereto as **Exhibit A** (the "Class Member List").

5. The Settlement provides for the creation of a common settlement fund in the amount of $51,150,000 ("Settlement Fund"). Settlement ¶ 8.1. Of the $51,150,000, the Tarsadia Defendants will contribute $10,000,000, and GT will contribute the remaining $41,150,000. *Id.* There will be no reversion of any funds to the Tarsadia Defendants, GT, GT's insurers, or any other contributing party. *Id.* at ¶ 8.7.

6. The Net Settlement Fund, which consists of the money remaining after attorneys' fees and costs, Settlement Administration Costs, and service awards are deducted, will be distributed to Class members pursuant to the "Distribution Plan." *See* Schrag Decl. Ex. 1 at Ex. E. The basic methodology is to first calculate the pro rata share of the Net Settlement Fund for each unit owned by one or more members of the Class, and then, if there is more than one owner, determine how that amount should be allocated

among the owners. Generally, the pro rata shares are determined based on the original purchase price and either the current value of the unit if still owned, or what the Class member(s) received when the unit was sold or lost in foreclosure.

7. The Court preliminarily appoints Plaintiffs Dean Beaver, Laurie Beaver, Steven Adelman, Abraham Aghachi, Dinesh Gauba, Kevin Kenna, and Veronica Kenna as Class Representatives.

8. The Court preliminarily appoints the following five firms to serve as Class Counsel: Reiser Law, P.C.; Gibbs Law Group LLP; The Meade Firm p.c.; Talisman Law PC; and the Fostvedt Legal Group LLC.

Preliminary Approval

9. Rule 23(e) requires the Court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal quotations omitted). In making this determination, a court may consider: (1) the strength of the plaintiff's case; (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed and the stage of the proceedings;" (6) "the experience and views of counsel;" (7) "the presence of a governmental participant;" and (8) "the reaction of the class members to the proposed settlement." *Id.* (internal quotations omitted). Moreover, the settlement may not be the product of collusion among the negotiating parties. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir.2000); *see also Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at *4 (S.D. Cal. Apr. 9, 2014).

In considering whether to preliminarily approve a class settlement, the Court should consider whether the deal is both procedurally and substantively fair. *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d at 1080 ("preliminary approval of a settlement has both a procedural and a substantive component"). Specifically, the Court should confirm that "(1) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential

treatment to class representatives or segments of the class, and (4) falls with[in] the range of possible approval." *Dilts v. Penske Logistics, LLC*, No. 08cv318-CAB(BLM), 2014 WL 12515159, *2 (S.D. Cal. July 11, 2014) (citations omitted).

### A. The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations

10. A settlement agreement is presumed to be fair if it is reached in arm's length negotiations after relevant discovery has taken place. *Cohorst v. BRE Prop., Inc.*, 2011 WL 7061923, *12 (S.D. Cal. Nov. 14, 2011) (stating that voluntary mediation before a retired judge in which the parties reached an agreement-in-principle are factors "highly indicative of fairness") (citations omitted).

11. In this case, the proposed Settlement is the product of over five and one half years of litigation, two failed court-assisted settlement conferences, a failed mediation in 2013, the recent second mediation and follow-up negotiations. Both mediations were before Judge West, a highly respected retired judge at JAMS who formerly presided in the complex department in Los Angeles County Superior Court. *See* Schrag Decl. at ¶ 26. The Parties reached a settlement after completion of fact and expert discovery, the Ninth Circuit's affirmance of this Court's granting partial summary judgment in Plaintiffs' favor on their UCL claim, full briefing and argument on the motion for class certification, and when the only remaining major task in the case was a remedies bench trial. *Id.* ¶¶ 23-25. Thus, the posture of the litigation and the process of negotiating the Settlement indicate that the deal is informed and non-collusive. Further, the Settlement's terms demonstrate procedural fairness and lack of collusion. Aspects of a settlement that may potentially lend themselves to self-interested action are attorneys' fees and incentive awards for class representatives. *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, *8 (S.D. Cal. Apr. 9, 2014). Here, however, both of these terms are fair to the Class.

### B. The Settlement Treats All Class Members Fairly

12. Next, the Court should consider whether the proposed Settlement improperly

grants preferential treatment to the Class Representatives or any segment of the Class. *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d at 1079. Here, the proposed Settlement affords all Class members the same relief: a *pro rata* share of the Settlement Fund, based on the price they paid for their units and either the current value if they still own, the sales price if they sold, or the amount of their loan discharged in foreclosure. *See* Schrag Decl. at ¶ 27. Class members will receive different amounts under the Settlement, but those differences are only to take into account the purchase price of each unit and the other inputs used to calculate Class members' GPRs. Thus, the Settlement is appropriately calibrated to compensate each Class member in proportion to the harm she suffered.

### C. The Settlement Has No Obvious Deficiencies and Falls Well Within the Range of Possible Approval

13. In determining whether a proposed settlement is "fair, adequate, and reasonable," a court may consider the following factors: (a) the strength of the plaintiff's case; (b) the risk, expense, complexity, and likely duration of further litigation; (c) the risk of maintaining class action status throughout the trial; (d) the amount offered in settlement; (e) the extent of discovery completed and the stage of the proceedings; (f) the experience and views of counsel; (g) the presence of a governmental participant; and (h) the reaction of the class members to the proposed settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 576 (9th Cir. 2004); *see also Barani*, 2014 WL 1389329 at *4-8.

Since some of these factors cannot be fully evaluated until notice has been disseminated, "a full fairness analysis is unnecessary at this stage." *Id*. at *4 (citation omitted). Even so, the other factors establish that the proposed Settlement is an excellent result for the Class and worthy of this Court's approval.

#### a. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

14. Given that almost all class actions involve risk, expense, and complexity, the

Ninth Circuit has a particularly strong judicial policy in favor of settlements in class action litigation. *Johnson v. General Mills, Inc*., 2013 WL 3213832, *2 (C.D. Cal. June 17, 2013) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)).

While Plaintiffs' case is strong in that they obtained summary judgment on liability that was affirmed on appeal, there are major risks in further litigation of this action. First, whether the Court would certify a class and, if so, whether certification would extend to both liability and remedies remains uncertain. "The value of a class action 'depends largely on the certification of the class,' and… class certification undeniably represents a serious risk for plaintiffs in any class action lawsuit." *Acosta v. Trans Union*, *LLC*, 243 F.R.D. 377, 392 (C.D. Cal. 2007).

While Plaintiffs strongly believe, based on the Court's comments at the hearing on Plaintiffs' motion for class certification, that the Court will likely certify at least a liability-only class, *see* Schrag Decl. Ex. 8 at 4:9-15, it is still possible that the Court denies class certification altogether. In that event, this case would dwindle from an action involving a class of approximately 360 unit purchasers (or groups of unit purchasers) to merely purchasers of four units (the named plaintiffs). Moreover, certification of a liability-only class would create a complex, uncertain and expensive process for obtaining individualized restitution for absent class members.

15. Even if the Court certifies a class, the Parties would be forced to spend considerable time and resources on a remedies trial, including engaging expert witnesses for updated reports on the fluid values of Plaintiffs' and Class members' units. A trial (which, depending on the Court's calendar, might not be held for some time) and any post-trial motions and appeals would also further delay the resolution of this case, which was initiated in May 2011.

Most significantly, Plaintiffs faced great risk as to what remedies model this Court would ultimately adopt. Moreover, while Plaintiffs sought prejudgment interest, the Tarsadia Defendants and GT claimed that the UCL did not allow any and further argued

that the Court should apply equitable offsets far greater than what Plaintiffs would have proposed at a restitution trial.

Lastly, in evaluating preliminary approval, it is appropriate to consider the additional risk that the Tarsadia Defendants would seek attorneys' fees and costs from the Class Representatives, and that Class Representatives and Class Counsel would be named in a malicious prosecution lawsuit. Schrag Decl. ¶ 21.

In sum, while Plaintiffs have a strong case, in this equitable action there is no tried and true remedies model—meaning that the Class faced serious risk in continuing to litigate this action against defendants who had a track record of success and aggression; these factors weigh in favor of preliminary approval.

### b. The Amount Offered in Settlement

16. While continued litigation poses the risks of the Court denying class certification or rejecting Plaintiffs' restitution model, the proposed Settlement of $51,150,000 offers the Class a significant and certain cash award without further delay. Each Class member will, on average, receive approximately $95,000 in settlement funds (after fees and expenses). The Settlement Fund will be distributed to three types of Class members: those who still own their units, those who sold their units, and those who lost their units in foreclosure. *See* Schrag Decl. Ex. 1 at Ex. E.

### c. The Extent of Discovery Completed and the State of Proceedings

17. Where a case is near trial, the Parties have conducted extensive discovery, and the issues have been thoroughly litigated, the stage of the proceedings weigh in favor of the proposed settlement. *Low v. Trump University, LLC*, 2016 WL 7387292, at *3 (S.D. Cal. Dec. 20, 2016). Here, the Parties have completed fact and expert discovery, there is a judgment in Plaintiffs' favor on liability that has been affirmed by the Ninth Circuit (with cert denied), the Parties have briefed and argued a motion for class certification, and, as noted above, the only major task left in the case beyond class certification is a remedies trial. This factor weighs heavily in favor of the proposed Settlement.

### d. The Experience and Views of Class Counsel

18. Plaintiffs' counsel are well-versed in class action litigation, and believe the proposed Settlement is in the best interests of the Class. Michael Schrag of Gibbs Law Group LLP has over 20 years of experience handling complex class action litigation and prosecuting class actions. Schrag Decl. at ¶ 12. Similarly, Tyler Meade has litigated and tried cases for more than 23 years and has more than 16 years of class action and mass action experience. *Id*. Michael Reiser has nearly 30 years of experience litigating complex actions. Reiser and Don Chomiak, a former national firm business litigator with 16 years of experience handling complex litigation matters, pioneered the first successful prosecution of ILSA actions on the West Coast. *Id.* Wendy Fostvedt also brought deep ILSA knowledge and experience to the team. Thus, this team of attorneys has significant experience litigating cases arising under ILSA and involving real estate development projects throughout the country.

Each of these attorneys strongly believes that the Settlement provides a fair and advantageous benefit to the Class; this factor weighs in favor of preliminary approval.

### e. The Reaction of Class Members

19. The Class has yet to be notified of the Settlement and given an opportunity to object; thus it is premature to assess this factor.

20. After consideration of these factors, the Court preliminarily approves the proposed all cash, non-reversionary $51,150,000 Settlement, finding that its terms appear sufficiently fair, reasonable, and adequate to warrant dissemination of Notice of the proposed Settlement to the Class. The Court finds the Settlement was entered into in good faith, is free of collusion, and is within the range of possible judicial approval.

21. All proceedings in this Action are stayed, except as ordered herein and as may be necessary to implement the Settlement or comply with the terms of the Settlement.

22. The Appraiser proposed by Class Counsel shall conduct the proposed appraisals. The cost of the appraisals shall be considered a Settlement Administration Cost and paid in accordance with the Settlement Agreement.

Notice

23. The Court hereby approves the Notice Program, including the Notice, and procedure for disseminating it to the Class. The Court finds that the Notice Program and Notice constitute the best notice practicable under the circumstances, and constitutes valid and sufficient notice to the Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rule 23 of the Federal Rules of Civil Procedure.

24. The Court appoints GCG to serve as the Settlement Administrator and orders GCG to carry out the Notice Program in accordance with this Order and the Settlement.

25. Among other duties, within forty-five (45) days of the entry of this Order, GCG shall mail each individual identified on the Class Member List a Notice substantially in the form attached to the Settlement as **Exhibit D**. Before the Fairness Hearing, GCG shall file with the Court a declaration confirming that the Notice Program has been implemented.

26. All costs of the Notice Program and other Settlement Administrative Costs incurred prior to Final Approval shall be paid as specified in the Settlement.

27. GCG shall maintain a settlement website where Class members can view additional information about the litigation and Settlement. The website shall include the operative complaint, the Settlement, the Notice Program and Class Notice, the Distribution Plan and all appraisals conducted pursuant to it, a list of all deadlines relevant to the Settlement and a copy of this order.

Requests for Exclusion

28. Any Class member shall have the right to Opt Out of the Class and the Settlement by mailing or delivering a written "Request for Exclusion" to GCG at the address set forth in the Class Notice. Any Request for Exclusion must be postmarked or delivered not later than forty-five (45) days after the initial mailing of the Class Notice.

29. Request for Exclusion shall: (a) state the case name and number of this Action; (b) state the Class member's full name, address and telephone number;

(c) provide the unit number(s) purchased; (d) disclose whether there were any other purchasers of such unit(s), and if known each purchaser's percentage of ownership; (e) specifically and clearly state his, her, or its desire to be excluded from the Settlement and from the Class; and (f) be personally signed by the Person requesting exclusion. If a married couple purchased the unit, both spouses must personally sign the Request for Exclusion and request exclusion. Failure to comply with these requirements and to timely submit the Request for Exclusion will result in the Class member being bound by the terms of the Settlement.

30. Any Class member who submits a valid and timely Request for Exclusion may not file an objection to the Settlement and shall be deemed to have waived any rights or benefits under the Settlement. GCG shall promptly forward all Requests for Exclusion that it receives to counsel for all Parties. Prior to the final Fairness Hearing, Class Counsel and/or GCG shall provide copies of all Requests for Exclusion to the Court, and summarize the number of valid Requests for Exclusion.

Objections and Comments

31. Any Class member who wishes to object to or otherwise be heard on the proposed the Settlement must file a written objection or comments in writing with the Court at United States District Court, Southern District of California, Office of the Clerk, 333 West Broadway, Suite 420, San Diego, CA 92101 not later than forty-five (45) days after the initial mailing of the Class Notice. Further, any such Class member must, within the same period, provide a copy of the written submission to Class Counsel, Tarsadia Defendants' Counsel, and GT's Counsel, whose addresses shall be set forth in the website's Notice advising the Class Members about objections.

32. In addition, to state a valid objection or have their comments considered, a Class member must personally sign the writing and provide the following information in it: (a) the case name and number of this Action; (b) the Class member's full name, address and telephone number; (c) the unit number(s) the Class member purchased; (d) whether there were any other purchasers of such unit(s), and if known each purchaser's percentage

of ownership; (e) a statement of the Class member's comments or reasons for objecting, including the factual and legal grounds for the objection; (f) copies of any other documents the Class member wishes to submit in support of his/her/its position; and (g) state whether the Class member intends to appear at the final Fairness Hearing on his/her/its own behalf or through counsel. A Class member will not be heard at the final Fairness Hearing without announcing his/her/its intention to appear in a valid and timely objection or written submission.

33. Additionally, any objecting Class member shall provide a detailed list of any other objections submitted by the objector, or by the objector's counsel, to any class action settlement submitted in any court in the previous five (5) years. If the Class member or his or her counsel has not objected to any other class action settlement in any court in the previous five (5) years, he, she, or it shall affirmatively so state in the written materials provided in connection with the objection.

34. Any of the Parties may depose any objector, and seek any documentary evidence or other tangible things that are relevant to the objection. Failure by an objector to make himself, herself, or itself available for a deposition or comply with expedited discovery requests may result in the Court striking the objection and otherwise denying that person the opportunity to be heard. The Court may tax the costs of any such discovery to the objector or the objector's counsel should the Court determine that the objection is frivolous or made for an improper purpose.

35. Any Class member who does not file a valid and timely objection to the Settlement will be deemed to have waived any objections to the Settlement, will be barred from speaking or otherwise presenting any views at the Fairness Hearing, and shall be barred from seeking review of the Settlement by appeal or otherwise.

36. These procedures and requirements for objecting are intended to ensure the efficient administration of justice and the orderly presentation of any Class member's objection to the Settlement, in accordance with the due process rights of all Class members.

Final Approval Briefing

37. Class Counsel shall file a Motion for Final Approval of Class Settlement no later than **August 9, 2017.**

38. Class Counsel shall file an application for attorneys' fees and costs, and for service awards no later than **August 9, 2017.**

39. Any of the Parties may file a response to objections by **September 8, 2017.**

Fairness Hearing

40. The Court directs that the final Fairness Hearing shall be held on **September 15, 2017** at **1:30 p.m.** in Courtroom 2D of the United States District Court for the Southern District of California, 221 West Broadway, San Diego, California 92101. At the Fairness Hearing, the Court will: (a) determine whether the proposed Settlement, including the proposed Distribution Plan, should be Finally Approved as fair, reasonable, and adequate to the Class; (b) determine whether final judgment should be entered dismissing with prejudice this Action; (c) rule on Class Counsel's application for attorneys' fees and costs; and (d) rule on Class Representatives' application for service awards.

41. The Court reserves the right to adjust the date of the Fairness Hearing and related deadlines. In that event, the revised hearing date or deadlines shall be posted on the Settlement website(s) referred to in the Class Notice, and the Parties shall not be required to re-send or publish Class Notice. However, Class Counsel shall provide notice of such change to any objector who properly provides notice of his, her, or its intent to appear at the Fairness Hearing.

IT IS SO ORDERED.

Dated: May 24, 2017

Hon. Gonzalo P. Curiel
United States District Judge