'

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN BEAVER AND LAURIE BEAVER, HUSBAND AND WIFE; *et al.*,<br><br>            Plaintiffs,<br><br>v.<br><br>TARSADIA HOTELS, A CALIFORNIA CORPORATION; *et al.*,<br><br>            Defendants. | Case No.  11-cv-01842-GPC-KSC<br><br>**ORDER:**<br><br>**1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND JUDGMENT;**<br>**2) GRANTING PLAINTIFFS' APPLICATION FOR ATTORNEY'S FEES AND COSTS; AND**<br>**3) GRANTING PLAINTIFFS' REQUEST FOR SERVICE AWARDS**<br>**4) GRANTING JOINT MOTION REGARDING LIEN**<br><br>**[Dkt. Nos. 286, 287, 309.]** |

On August 9, 2017, Plaintiffs Dean Beaver, Laurie Beaver, Steven Adelman, Abraham Aghachi, Dinesh Gauba, Kevin Kenna, and Veronica Kenna (collectively

"Plaintiffs") filed a Motion for Final Approval of Class Settlement and Application for Attorneys' Fees and Costs, and Service Awards. (Dkt. Nos. 286, 287.) Tarsadia Defendants[1] and Third Party Defendant Greenberg Traurig LLP ("GT") do not oppose the motions. On September 1, 2017, Garden City Group, LLC ("GCG"), the Settlement Administrator, filed a declaration regarding exclusions and objections; Plaintiffs filed a status report regarding the response to the Notice Program; and GT filed a non-opposition to the motion for final approval of class action settlement, application for attorneys' fees and costs, and service awards for class representatives. (Dkt. Nos. 304, 305, 306.) The Court held a final approval hearing on September 15, 2017 at 1:30 p.m., pursuant to the Preliminary Approval Order dated May 24, 2017. (Dkt. No. 307.) Tyler Meade, Esq., Michael Schrag, Esq., and Michael Reiser, Esq. appeared on behalf of Plaintiffs, Lynn Galuppo, Esq. appeared on behalf of Tarsadia Defendants, and Michael McNamara, Esq., Kirsten Spira, Esq. and Wesley Griffith, Esq. appeared on behalf of Third Party Defendant Greenberg Traurig, LLP.

Based on the reasoning below, the Court GRANTS Plaintiffs' motion for final approval of class action settlement and judgment and GRANTS Plaintiffs' application for attorneys' fees and costs, and service awards.

### Procedural Background

In May 2011, Plaintiffs filed a putative class action alleging that the Tarsadia Defendants violated various federal and state laws, including the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701, *et seq.* ("ILSA") and the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), in connection with the sale of condominium units at the Hard Rock. (Dkt. No. 1.) Specifically, in the operative Third Amended Complaint ("TAC"), Plaintiffs alleged, in part, that the Tarsadia Defendants violated ILSA by failing to do three things that the statute required: (1) register the Hard Rock with the U.S. Department of Housing and Urban Development ("HUD");

---

[1] The remaining Tarsadia Defendants are Tarsadia Hotels, Gregory Casserly, 5th Rock LLC, and Gaslamp Holdings, LLC.

(2) obtain and distribute to Class members a HUD property report; and (3) include ILSA-specified cure language in the purchase contracts. (Dkt. No. 69, TAC at ¶¶ 8-10.) As a result, Plaintiffs and Class members had an absolute two-year right under ILSA to rescind their purchase contracts. (Id. at ¶ 10.) The Tarsadia Defendants were required but failed to disclose this rescission right to Plaintiffs. (Id. at ¶¶ 11-12.) This constituted the fourth ILSA violation and these ILSA violations were the unlawful acts central to Plaintiffs' UCL claim.

Tarsadia Defendants failed to disclose this rescission right and told all Class members that they would lose their substantial deposits if they failed to close escrow on their respective condominium units. (Id. at ¶¶ 68-70.) Plaintiffs and most Class members closed escrow in the latter half of 2007, when the real estate market in San Diego was beginning a steep decline and the lending market was constricting. (Id. at ¶¶ 86-88.) Plaintiffs testified that they would have cancelled their purchase contracts prior to closing escrow had the Tarsadia Defendants disclosed their rescission rights under ILSA. (Dkt. No. 81-1 at 32-33.)

Tarsadia Defendants disputed liability and class certification through six years of vigorous litigation that included extensive fact and expert discovery and motion practice. The litigation began with defendants filing four motions to dismiss plus a motion for judgment on the pleadings. Defendants did not answer until a year after the case was first filed. A year of intensive discovery followed, with defendants producing more than 400,000 pages that Class Counsel had to review and analyze. (Dkt. No. 273-1, Schrag Decl. ¶ 24.) The Parties took more than 20 depositions in 2013. (Id. ¶ 25.)

In 2013, Plaintiffs moved to certify a class, and Plaintiffs, the Tarsadia Defendants, and Playground Destination Properties, Inc. ("Playground"), which is no longer in the case, also filed cross-motions for summary judgment. In October 2013, this Court accepted Plaintiffs' arguments that uncontroverted evidence demonstrated that ILSA applied and that the Tarsadia Defendants violated it such that an unlawful prong UCL violation was established as a matter of law, but nevertheless granted the Tarsadia

Defendants' motion for summary judgment on the ground that the UCL claim was barred by ILSA's three-year statute of limitations. (Dkt. No. 128.) The Court further granted summary judgment as to Playground. (Id.) This ruling represented a complete loss on the merits of the case after two and a half years of intensive litigation.

This Court's initial ruling on the statute of limitations followed several district court decisions interpreting Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1007 n. 3 (9th Cir. 2008), to mean that where a plaintiff's UCL unlawful prong claim is based on a violation of a federal law, the federal and not the UCL statute of limitations applies if the time to file under the federal statute is shorter. (Dkt. No. 128 at 40-41.) Believing that these decisions misinterpreted Silvas, Plaintiffs added appellate counsel Michael Rubin to their team and moved for reconsideration based on preemption principles. (Dkt. No. 138.)

Eight months later, in July 2014, Plaintiffs prevailed on this motion, obtaining partial summary judgment on their UCL claim. The Court held that the Tarsadia Defendants violated the unlawful prong of the UCL by failing to comply with ILSA's disclosure requirements and that the UCL's four-year statute of limitations applied to this claim. (Dkt. No. 153.)

In August 2014, Tarsadia Defendants moved for reconsideration or, in the alternative, for certification of an interlocutory appeal. (Dkt. Nos. 155, 158.) While this motion was pending, Congress amended ILSA to expressly exempt condominiums from ILSA's registration and disclosure requirements. The Tarsadia Defendants argued this amendment should be applied retroactively to bar this action. (Dkt. No. 163.) In October 2014, after extensive briefing on these issues, the Court ruled that the amendment to ILSA should not be applied retroactively, but simultaneously certified three issues for interlocutory appeal: (1) whether the Hard Rock project is subject to ILSA because its condominium units are "lots" to which the Improved Lot Exemption does not apply; (2) whether Plaintiffs' UCL claim is governed by the UCL's four-year statute of limitations or ILSA's shorter limitations period; and (3) whether Congress intended its 2014 amendment to ILSA to apply retroactively to this action. (Dkt. No. 177.) The case was on appeal for

nearly a year and a half, and on March 10, 2016, the Ninth Circuit affirmed the partial summary judgment ruling in Plaintiffs' favor on all three issues.  See Beaver v. Tarsadia Hotels, 816 F.3d 1170 (9th Cir. 2016).  This ruling firmly established that the UCL statute of limitations applies to all UCL actions, including those that "borrow" a federal predicate violation with a shorter limitations period.  Id. at 1179-1181.

Meanwhile, while the main litigation was proceeding, Tarsadia Defendants claimed in a third-party complaint that GT negligently advised them that ILSA did not apply to the Hard Rock, and that any restitution the Tarsadia Defendants may owe Plaintiffs and Class members is a result of this malpractice.  (Dkt. No. 106-2, Third Party Compl.)  In its answer, GT denied any wrongdoing whatsoever and raised numerous affirmative defenses.  (Dkt. No. 140.)  This third-party action had been stayed since June 30, 2014, (Dkt. No. 152), but following remand from the Ninth Circuit, GT moved for permission to join the litigation on Tarsadia Defendants' defense on the two remaining and related issues in the case: class certification and remedies.  (Dkt. No. 211.)  On June 27, 2016, the Court granted GT permission to participate in the defense of this main action.  (Dkt. No. 218.)

Earlier, the Court had deferred its ruling on whether to certify a class.  (Dkt. No. 108.)  Plaintiffs filed a renewed motion for class certification on July 1, 2016.  (Dkt. No. 219.)  The Tarsadia Defendants and GT opposed, focusing primarily on the contention that Plaintiffs' proposed method for calculating UCL restitution was prohibited under Ninth Circuit authority.  (Dkt. Nos. 229, 230.)

The Court stated that it was likely to certify a class on the issue of liability, but expressed its view that certifying the issue of remedies for class treatment "was a much more complicated question."  (Id. at 4.)  The Court explained that it was not yet convinced that Plaintiffs had proffered a viable remedies model that "matche[d] the theory of liability."  Id.  The Court allowed the Tarsadia Defendants and GT to file supplemental briefs on Plaintiffs' proposed restitution model.  (Dkt. No. 240.)  The Court also encouraged the Parties to attempt to settle the case.  (Dkt. No. 273-15 at 7) ("Given that and given the uncertainty that remains with respect to any number of these issues, I would

expect and I would hope that the parties would look at all of this uncertainty as a means to try to resolve this case amongst yourselves"). In order to pursue mediation and potential settlement, the Parties agreed to stay the action to delay the Court's ruling on class certification and the Court granted the requested stay. (Dkt. Nos. 248, 251.)

The Parties participated in an Early Neutral Evaluation in 2012, an all-day mediation in 2013, and a settlement conference with Magistrate Judge Karen Crawford in 2014, none of which resulted in a settlement. Pursuant to the Court's suggestion at the August 2016 hearing, the Parties engaged in a day-long mediation before Honorable Carl J. West (Ret.) of JAMS on December 15, 2016. Although the Parties did not reach agreement on that day, they made substantial progress and continued negotiations with Judge West's assistance during the following days. (Dkt. No. 273-1, Schrag Decl. ¶ 26.) Upon the Parties' joint motion, the Court continued the stay through December 22, 2016. (Dkt. No. 255.) The Parties ultimately settled the entire case, including the third-party claims against GT, on December 21, 2016. Over the next four months, the Parties, with assistance from Judge West, then negotiated the detailed terms of the Settlement. (Dkt. Nos. 258, 259, 260, 263, 265, 266.) On April 24, 2017, Plaintiffs filed their motion for order granting preliminary approval of class action settlement. (Dkt. No. 274.) On May 24, 2017, the Court granted Plaintiff's unopposed motion for preliminary approval of class action settlement, directing issuance of notice, and setting final approval hearing. (Dkt. No. 278.) In compliance with the preliminary approval order, on August 9, 2017, Plaintiffs filed the instant motion for final approval of class settlement and application for attorneys' fees and costs and for service awards. (Dkt. Nos. 286, 287.)

### Legal Standard

The Ninth Circuit adheres to a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); see also Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]"). "[T]he decision to approve or reject a

settlement is committed to the sound discretion of the trial judge[.]" <u>Hanlon v. Chrysler</u> <u>Corp.</u>, 150 F.3d 1011, 1026 (9th Cir. 1998).

Federal Rule of Civil Procedure 23(e) provides that a court may approve a proposed settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); <u>see also</u> <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 959 (9th Cir. 2003). In making this determination, a district court must consider a number of factors, including, but not limited to:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

<u>Staton</u>, 327 F.3d at 959 (internal citation and quotation marks omitted).

In examining the settlement for "overall fairness," a court must review the settlement "as a whole, rather than the individual component parts." <u>Hanlon</u>, 150 F.3d at 1026. A court cannot "delete, modify or substitute certain provisions." <u>Officers for</u> <u>Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco</u>, 688 F.2d 615, 630 (9th Cir. 1982). Rather, "[t]he settlement must stand or fall in its entirety." <u>Hanlon</u>, 150 F.3d at 1026.

**A. The Settlement is Fair, Adequate and Reasonable**

    **1. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation[2]**

---

[2]Plaintiffs do not specifically address the risk of maintaining class action status throughout the trial factor. However, under the analysis in this section, the issue is raised as to whether the Court would have certified a class based on remedies which would result in individualized trials on restitution. Thus, the Court concludes that there is risk that Plaintiffs would not be able to maintain a class action on both liability and remedies if they proceeded to trial.

"The value of a class action 'depends largely on the certification of the class,' and... class certification undeniably represents a serious risk for plaintiffs in any class action lawsuit." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 392 (C.D. Cal. 2007).

While Plaintiffs' case is strong in that they overcame substantial hurdles, including motions to dismiss, an adverse summary judgment ruling, an interlocutory appeal, and they eventually prevailed on liability on the UCL claim, major risks in further litigation of this action remain. First, whether the Court would certify a class and, if so, whether certification would extend to both liability and remedies remains uncertain.

Certification of a liability-only class would create a complex, uncertain and expensive process for obtaining individualized restitution for absent class members. It would force the parties to spend considerable time and resources on a remedies trial, including engaging expert witnesses for updated reports on the fluid values of Plaintiffs' and Class members' units. In addition, a trial and any post-trial motions and appeals would also further delay the resolution of this case, which was initiated in May 2011. Moreover, there is still the possible risk that the Court could deny class certification altogether and the case would dwindle from an action involving a class of approximately 360 unit purchasers, or groups of unit purchasers, to merely purchasers of four units.

Most significantly, Plaintiffs faced great risk as to what remedies model the Court would ultimately adopt. Plaintiffs believe their core restitution model, calculated by restoring Plaintiffs' purchase amounts and then, to avoid a windfall, applying appropriate setoffs such as the current value of the units, is both permissible under the UCL and best fits the facts of this unique case. See Spann v. J.C. Penney Corp., No. SA CV 12-215 FMO(RNBx), 2015 WL 1526559 (C.D. Cal. 2015); People v. Superior Court (Jayhill), 9 Cal. 3d 283 (1973). The Tarsadia Defendants and GT, however, have strenuously argued that this methodology would not be appropriate under Pulaski & Middleman, LLC v. Google, 802 F.3d 979 (9th Cir. 2015) and In re Tobacco Cases II, 240 Cal. App. 4th 779 (2015). Specifically, they argue that under the UCL, Plaintiffs and Class members are only

entitled to the difference between the purchase prices they paid and the market value of the units at the time of purchase. (Dkt. No. 229 at 15-20; Dkt. No. 230 at 11-12.) Since the Tarsadia Defendants further contend that the market value at the time of purchase was equivalent to the purchase prices paid, they contend that restitution would amount to zero. (Dkt. No. 230 at 11-12.) It is not clear which method the Court would apply.

Moreover, there is a question as to whether Plaintiffs are entitled to prejudgment interest. While Plaintiffs sought prejudgment interest, the Tarsadia Defendants and GT claimed that the UCL did not allow any and further argued that the Court should apply equitable offsets far greater than what Plaintiffs would have proposed at a restitution trial.

Lastly, there is the additional risk that the Tarsadia Defendants would seek attorneys' fees and costs from the Class Representatives, and that Class Representatives and Class Counsel would be named in a malicious prosecution lawsuit. (Dkt. No. 273-1, Schrag Decl. ¶ 21.) In fact, the named plaintiffs in other cases have suffered significant financial consequences from litigation arising out of the Hard Rock. See Salameh v. Tarsadia Hotel, No. 09cv2739-GPC(BLM), 2014 WL 3797276 (S.D. Cal. Mar. 25, 2014) ($405,371.25 in attorneys' fees awarded); Royalty Alliance, Inc. v. Tarsadia Hotels, 2014 WL 2212492 (Cal. App. 2014) (nearly $1.2 million in attorneys' fees awarded); Salameh v. 5th and K Master Assoc., 2016 WL 4529438 (Cal. App. 2016) (over $3.6 million in attorneys' fees awarded); Tarsadia Hotels v. Aguirre & Severson, San Diego Superior Court Case No. 37-2016-00044390, (action for malicious prosecution). In yet another case, Bell v. Tarsadia Hotels, San Diego Superior Court No. 37-2010-00096618, Tarsadia Hotels and 5th Rock LLC unsuccessfully sought attorneys' fees and costs from the Plaintiffs here after they dismissed that case, which was filed by other counsel, in order to bring the present case. (Dkt. No. 273-1 Schrag Decl. ¶ 22; see also Dkt. No. 273-14 (February 13, 2013 letter from counsel for the Tarsadia Defendants threatening to sue Class Counsel for malicious prosecution.)

In sum, while Plaintiffs have a strong case, in this equitable action, there is no clear cut remedies model. Therefore, the Class faced serious risk in continuing to litigate this action against defendants who had a track record of success and aggression. These factors weigh in favor of final approval.

## 2. The Amount Offered in Settlement

The amount in Settlement "is generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class." Bayat v. Bank of the West, No. C–13–2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citation omitted). A settlement is not judged against only the amount that might have been recovered had the plaintiff prevailed at trial; nor must the settlement provide full recovery of the damages sought to be fair and reasonable. See Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998). "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982) (quoting United States v. Armour & Co., 402 U.S. 673, 681 (1971)). Because "the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class counsel may urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." In re HP Inkjet Printer Litig., 716 F.3d 1173, 1178 (9th Cir. 2013) (internal quotation marks, citation, and footnote omitted).

Here, the proposed Settlement of $51,150,000 offers the Class a significant and certain cash award without further delay. Plaintiffs' proposed restitution model involved restoring the aggregate purchase price paid less the current value of the unit, if still owned, the resale price, if sold by the Class member, or the loan amount, if the Class member lost the unit to foreclosure. Excluding prejudgment interest, the total amount of the core restitution sought is approximately $69 million. (Dkt. No. 273-1, Schrag Decl. ¶ 10.) The gross Settlement Fund represents approximately 74% of this sum. Id. The Settlement will

provide, on average, approximately $95,000 for each condominium unit purchased by Class members, after fees and expenses.

The parties dispute whether prejudgment interest should be awarded in this case, and Plaintiffs acknowledge that there are UCL cases that support both sides on this issue. See Wallace v. Countrywide Home Loans Inc., No. SACV 08-1463-JST(MLGx), 2013 WL 1944458, at *7-8 (C.D. Cal. Apr. 29, 2013) (prejudgment interest is a form of restitution and is necessary to fully compensate plaintiffs); but see Rodriguez v. RWA Trucking Co. Inc., 219 Cal. App. 4th 692 (2013) (prejudgment interest not required under the UCL, but is discretionary). The Parties also disagree as to whether, if prejudgment interest was awarded, it should be calculated on the net restitution amount, after setoffs, or on the sum of the purchase prices paid, before setoffs.

Based on the risks concerning the restitution the Court would have awarded and the results of any appeal of that award, the $51.15 million offered in Settlement is an excellent result. See, e.g., Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 257 (N.D. Cal. 2015) (finding that the amount offered in settlement weighed in favor of preliminary approval where the common fund amounted to between 11 and 27 percent of the total potential recovery); Greko v. Diesel U.S.A., Inc., No. 10-CV-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. 2013) (approving settlement in which average settlement payment amounted to under 3% of gross settlement value). This factor favors final approval of the settlement.

### 3.     The Extent of Discovery Completed and the Stage of the Proceeding

When trial is near, extensive discovery has been completed, and issues have been thoroughly litigated, the extent of discovery and the stage of the proceedings weigh in favor of the proposed settlement. Low v. Trump Univ., LLC, --F. Supp. 3d --, 2017 WL 1275191, at * (S.D. Cal. Mar. 31, 2017) (citation omitted). In this case, (1) the Parties have completed fact and expert discovery, including a review of over 400,000 pages and taking or defending 20 depositions, (2) there is a judgment in Plaintiffs' favor on liability that has been affirmed by the Ninth Circuit and with certiorari denied, (3) the Parties have

briefed and argued a motion for class certification, and, (4) as noted above, the only major task left in the case beyond class certification is a remedies trial. This factor weighs strongly in favor of the proposed Settlement.

### 4. The Experience and Views of Class Counsel

Where "[b]oth Parties are represented by experienced counsel," the recommendation of experienced counsel to adopt the terms of the proposed settlement "is entitled to great deal of weight." In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007). In particular, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (internal citation and quotation marks omitted).

As noted in the preliminary approval order, the Court recognized significant knowledge and experience in handling class action litigation, including in-depth knowledge in cases arising under ILSA. (Dkt. No. 278 at 10.) Each Class Counsel strongly believes that the Settlement provides a fair and advantageous benefit to the Class. Thus, this factor weighs in favor of final approval.

### 5. The Presence of a Governmental Participant

No governmental agency participated in this litigation or Settlement. After the Court preliminarily approved the Settlement, the Tarsadia Defendants sent CAFA notices to the California Attorney General, Consumer Law Section, and the United States Attorney General. See 28 U.S.C. § 1715; (Dkt. No. 275.) To the Parties' knowledge, no governmental agency has objected to the Settlement which weighs in favor of the settlement. Schuchardt v. Law Office of Rory W. Clark, 314 F.R.D. 673, 685 (N.D. Cal. 2016).

### 6. The Reaction of Class Members

No objections have been filed to the Settlement and one class member has elected to opt-out. (Dkt. No. 304, Brasefield Decl. ¶¶ 4, 5.) To date, seventeen Class members have submitted letters to the Court stating they support the Settlement and hope the Court approves it. (Dkt. Nos. 282-83; 288-92; 294-303.) According to Class Counsel, class

members' reaction to the Settlement has been overwhelmingly positive based on his conversations with approximately a dozen Class members who have all expressed support for the Settlement. (Dkt. No. 287-1, Meade Decl. ¶¶ 16-17.) This factor supports final approval.

In sum, based on a review of the factors, the Court concludes that the Settlement is fair, adequate, and reasonable.

## B. Request for Class Representative Incentive Awards

Plaintiffs seek four service awards of $50,000, paid from the common fund to Class Representatives on a per-unit basis and include (1) Mr. Gauba, (2) Kevin and Veronica Kenna, (3) Dean and Laurie Beaver, and (4) Messrs. Adelman and Aghachi Brown.

Incentive awards are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009). "Incentive awards are fairly typical in class action cases," but are ultimately "discretionary." Id. at 958. In deciding whether to approve an incentive award, courts consider factors including:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995). While most class action service awards are lower, district courts in this circuit and elsewhere have awarded $50,000 or more. Id. at 300 ("Court finds that an incentive award of $50,000 is just and reasonable under the circumstances"); Kifafi v. Hilton Hotels Ret. Plan, 999 F. Supp. 2d 88, 106 (D.D.C. 2013) (approving $50,000 incentive award); McCoy v. Health Net, Inc., 569 F. Supp. 2d 448, 479-80 (D.N.J. 2008) (approving incentive awards of

$60,000 per plaintiff); <u>Brotherton v. Cleveland</u>, 141 F. Supp. 2d 907, 914 (S.D. Ohio 2001) ($50,000 to lead plaintiff); <u>In re Revco Sec. Litig.</u>, Nos. 851, 89cv593, 1992 WL 118800, *7 (N.D. Ohio 1992) ($200,000 incentive award to named plaintiff); <u>Enterprise Energy Corp. v. Columbia Gas Transmission Corp.</u>, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) ($50,000 incentive awards to each of the six named plaintiffs); <u>In re Dun & Bradstreet Credit Servs. Customer Litig.</u>, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (two incentive awards of $55,000 and three incentive awards of $35,000).

      In this case, each of the Class Representatives spent over six years assisting the litigation of this case by reviewing the complaint, responding to written discovery and producing documents, being deposed by defense counsel, and reviewing and approving the settlement. (Dkt. No. 287-1, Meade Decl. ¶¶ 3-8, 12.) Plaintiffs also stayed in touch with Class Counsel throughout the litigation. (<u>Id.</u> ¶ 12.) Mr. Kenna attended the settlement conference with the Magistrate Judge Crawford. (<u>Id.</u>) Mssrs. Kenna, Aghachi and Gauba also attended the 2016 mediation before Judge West. (<u>Id.</u>)

      Most importantly, all Class Representatives brought this action in the face of a very real risk that the Tarsadia Defendants would seek attorneys' fees from them, as they have successfully done in other actions arising out of the Hard Rock. The Class Representatives here were among the many plaintiffs in <u>Bell v. Tarsadia Hotels</u>, (San Diego Superior Court No. 37-2010-00096618). After the <u>Bell</u> court granted defendants' demurrer, counsel for plaintiffs in <u>Bell</u> encouraged their clients to sign releases in exchange for a waiver of attorneys' fees and costs because the defendants in the <u>Salameh</u> case that the <u>Bell</u> case was modeled after had just filed a motion seeking $800,000 in attorneys' fees. Most of the plaintiffs in <u>Bell</u> signed a settlement agreement dismissing their claims with prejudice in exchange for Tarsadia waiving costs and attorneys' fees. (Dkt. No. 287-1, Meade Decl. ¶ 3, Ex. 1.) Despite the obvious risk of a fee motion, the Class Representatives chose not to sign the settlement agreement in <u>Bell</u> so that they could bring this class action. (<u>Id.</u> ¶ 4.) They believed in the ILSA-based claims and stepped forward for the Class at great financial peril to themselves. After this action was filed, Tarsadia filed a motion in <u>Bell</u>

seeking $63,000 in attorneys' fees from the Class Representatives.  Class Counsel, appearing specially in <u>Bell</u>, defeated this fee motion on September 2, 2011. (<u>Id.</u> ¶ 5.)

Then, in three later cases Tarsadia successfully obtained attorneys' fees from plaintiffs. In <u>Salameh v. Tarsadia Hotels</u>, (S.D. Cal. Case No. No. 09-cv-2739) ("Salameh I"), upon which <u>Bell</u> was modeled, the plaintiffs filed a securities fraud class action against Tarsadia, arising out of the development of the Hard Rock. The district court dismissed the claims before a class was certified and the Ninth Circuit affirmed.  <u>Salameh v. Tarsadia Hotel,</u> 726 F.3d 1124 (9th Cir. 2013). The district court then ordered plaintiffs to pay Tarsadia $405,371 in attorneys' fees.  <u>Salameh v. Tarsadia Hotel</u>, No. 09cv2739-GPC(BLM), 2014 WL 3797283, at *1 (S.D. Cal. July 31, 2014).

Similarly, the plaintiffs in <u>Royalty Alliance, Inc. v. Tarsadia Hotels</u>, 2014 WL 2212492 (Cal. App. 2014), were ordered to pay the Tarsadia over $1.1 million in attorneys' fees after they lost summary judgment on securities, fraud, and UCL claims stemming from the Hard Rock.  In <u>Salameh v. 5th and K Master Assoc., Inc.</u>, 2016 WL 4529438 (Cal. App. 2016) ("Salameh II"), the California state court ordered the plaintiffs to pay Tarsadia $3.5 million in attorneys' fees and this award was affirmed on appeal.

Under these circumstances, the service awards of $50,000 to the Class Representatives are fair and reasonable in light of the extraordinary risks they accepted and the time and effort they expended for the benefit of the Class.  The Court grants Plaintiffs' request for class representative incentive awards.

## C.    Application for Attorneys' Fees and Costs

Class counsel seek attorneys' fees in the amount of $17,050,000 representing one-third of the Settlement Fund and reimbursement of their out-of-pocket costs of $195,089.

This court has an "independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." <u>In re Bluetooth Headset Prods. Liab. Litig.</u>, 654 F.3d 935, 941 (9th Cir. 2011).  At the fee-setting stage, the interests of the plaintiffs and their attorneys diverge and described as

1  "adversarial"; therefore, the district court assumes a fiduciary role for the class plaintiffs.

2  In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988. 994 (9th Cir. 2010).

3  ### 1.      California Law

4  California law governs this fee application because where state law claims

5  predominate, state law applies to determine the right to fees and the method of calculating

6  them.  See Mangold v. Cal. Pub. Utilities Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995).

7  The California Supreme Court recently held that in common fund cases, a trial court may

8  award class counsel a fee out of that fund by choosing an appropriate percentage of the

9  fund. Laffitte v. Robert Half Int'l Inc., 1 Cal. 5th 480, 503-06 (2016).  A court "may

10 determine the amount of a reasonable fee by choosing an appropriate percentage of the

11 fund created."  Id. at 503.  The trial court has discretion to conduct a lodestar cross-check

12 on a percentage fee or to forgo a lodestar cross-check and use other means to assess the

13 reasonableness of the requested fees.  Id. at 506.

14 Here, Class Counsel requests a fee of one-third of the common fund.  California

15 courts routinely award attorneys' fees of one-third of the common fund.  See Laffitte, 1

16 Cal. 5th at 506 (affirming a fee award of one-third of the gross settlement amount); Chavez

17 v. Netflix, Inc., 162 Cal. App. 4th 43, 66 n.11 (2008) ("Empirical studies show that,

18 regardless whether the percentage method or the lodestar method is used, fee awards in

19 class actions average around one-third of the recovery").  "Under the percentage method,

20 California has recognized that most fee awards based on either a lodestar or percentage

21 calculation are 33 percent . . . ."  Smith v. CRST Van Expedited, Inc., NO. 10cv1116-

22 IEG(WMC), 2013 WL 163293, at *5 (S.D. Cal. 2013).

23 In Laffitte, the California Supreme Court affirmed a one-third fee award in a related

24 wage and hour class actions that, like this case, involved extensive discovery, contentious

25 law and motion practice, motions for summary judgment, a class certification motion, a

26 subsequent motion for reconsideration, numerous experts, and two full-day mediations.

27 See Laffitte v. Robert Half Int'l Inc., 180 Cal. Rptr. 3d 136, 140 (2014) (discussion of

28 complexity of case), aff'd 1 Cal. 5th at 506. The court considered that class counsel

litigated the case on a contingency basis, which involved inherent risk and that uncertainties introduced by recent case law injected "significant doubt" that plaintiffs would be able to maintain class certification through trial. Id. at 142-43. The Laffitte court concluded that the $19 million settlement achieved in the face of the numerous risks—both those overcome and those still looming at the time of settlement—supported the 33 1/3% fee. Id. at 140-43, 154.

In this case, Class Counsel litigated this action against tenacious and aggressive defense counsel who prevailed in several other actions brought by Hard Rock purchasers. The action involved novel issues under the UCL's statute of limitations and issues concerning interpretation of ILSA and a recent Congressional amendment to ILSA that could apply retroactively to bar the Class's claims. Had Class Counsel lost any one of these three issues they would not have been paid for 9,104 hours of work--and would likely have had to defend a malicious prosecution action. (Dkt. No. 287-1, Meade Decl. ¶¶ 9, 11, 24.) Even after the appellate victory, risks remained as to whether this Court would certify the Class and how to calculate UCL restitution. Achieving a $51.15 million cash settlement which will pay significant amounts to all Class Members in the face of these risks merits the requested one-third fee. In further support, Richard M. Pearl, an expert on attorneys' fee issues and disputes, opines in his expert declaration that "a fee of 33.3% of the fund for this long, heavily contested but highly successful litigation is certainly reasonable." (Dkt. No. 287-12, Pearl Decl. ¶ 43.) Considering the results achieved, the requested fees are reasonable.

## 2. Ninth Circuit Law

Class Counsel also argue that the fee request is reasonable under Ninth Circuit precedent. In common fund cases, a district court has discretion to apply either the percentage of the fund method or the lodestar method. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002); In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1295-96 (9th Cir. 1994). The Ninth Circuit has adopted a benchmark of 25% of the total settlement; however, that amount may be "adjusted upward or downward to account

for any unusual circumstances involved in [the] case." Campbell v, Best Buy Stores, No. LA CV12-7794 JAK (JEMx), 2016 WL 6662719, at *7 (citing Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 273 (9th Cir. 1989)).  A court that applies the percentage method may cross-check the reasonableness of the fee by calculating the lodestar.  Id. (citing Vizcaino, 290 F.3d at 1050).  "The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases."  Vizcaino, 290 F.3d at 1048.  Any percentage-of-the-fund award "must be supported by findings that take into account all of the circumstances of the case."  Id.  In determining whether an adjustment from the benchmark is appropriate, courts in the Ninth Circuit consider the following factors: "(1) the results achieved; (2) the risk undertaken by class counsel in pursuing the case; (3) whether the settlement generated benefits beyond a cash payment; (4) the market rate for similar representations; and (5) the nature of the representation, including whether it was executed on a contingency basis."  Taylor v. Shippers Transport Express, Inc., 2015 WL 12658458, at *14 (C.D. Cal. 2015) (citing Vizcaino, 290 F.3d at 1048-50).

District courts in this circuit have routinely awarded fees of one-third of the common fund or higher after considering the particular facts and circumstances of each case.  "[I]n most common fund cases, the award exceeds [the] benchmark."  In reOmnivision Tech., Inc., 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (citations omitted); Taylor, 2015 WL 12658458, at *17 (holding that 33% was reasonable given the result, the risk, and counsel's time investment); Campbell, 2016 WL 6662719, at *10 (approving a fee of one-third of the common fund); Millan v. Cascade Water Services, 2016 WL 3077710, at *11-12 (E.D. Cal. 2016) (approving an award of 33% of the common fund); Barbosa v. Cargill Meat Solutions Corp., 297 F.R.D. 431, 449 (E.D. Cal. 2013) (awarding one-third of the settlement fund).  The Ninth Circuit has also upheld awards of one-third of a common fund. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 460 (9th Cir. 2000) (affirming an award of one-third of total recovery); In re Pacific Enters. Sec. Litig., 47 F.3d 373, 379 (9th Cir. 1995) (affirming an award of one-third of a $12 million common fund).

### a.  The Result Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." In re Omnivision Techs., 559 F. Supp. 2d at 1046. As discussed above, against a rigorous defense, Class Counsel obtained $51,150,000 for the Class, without reversion of any funds to the Tarsadia Defendants, GT, GT's insurers, or any other contributing party. (Dkt. No. 273-2 at ¶ 8.7.) Class members will receive, on average, approximately $95,000 in settlement funds on a per-unit basis (after fees and expenses). (Dkt. No. 273-1, Schrag Decl. Decl. ¶ 15.) This represents an excellent result. This factor thus favors an upward adjustment from the 25% benchmark to a fee of 33 and 1/3%.

### b.  The Risks of Litigation

From the outset, Class Counsel litigated this case in the face of extraordinary risk of non-payment by taking the case on a pure contingency basis and risked receiving zero compensation for their years of work and out-of-pocket costs. That risk of zero compensation was almost realized when the Court granted summary judgment to defendants on statute of limitations grounds. However, Class Counsel persevered, arguing on reconsideration that the predominant interpretation of Silvas was incorrect. Class Counsel's steadfastness paid off when the Court not only reversed the grant of summary judgment to defendants, but also granted partial summary judgment on the issue of liability to Plaintiffs. But the risks of litigation remained and new risks emerged. The Tarsadia Defendants filed a motion to reconsider, and then Congress unanimously passed and the President signed legislation that removed condominiums from ILSA's registration and disclosure requirements. The Tarsadia Defendants argued Congress' intent was to "clarify" existing law such that the amendment applied retroactively. Though this Court rejected the Tarsadia Defendants' various arguments, it certified an interlocutory appeal which the Ninth Circuit accepted. Class Counsel then briefed and argued several complex issues before the Ninth Circuit such as the statute of limitations issue, retroactivity, whether to uphold 12 C.F.R. § 1010.5, and whether Plaintiffs had exclusive use of the hotel-

condominium units at the Hard Rock notwithstanding restrictions on occupancy and the Sixth Circuit's decision in <u>Becherer</u>, 127 F.3d 478. <u>Beaver</u>, 816 F.3d 1170.

After remand, at the August 2016 hearing on Plaintiffs' renewed motion to certify, the Court observed that the Court and the Parties "have made some law along the way;" and also warned that "[t]here's been no shortage of novel issues," suggesting that significant issues and risks remained. (Dkt. No. 273-15 (8/18/16 Trans.) at 5.) Indeed, Class Counsel achieved this settlement even after the Court noted that another issue of first impression -- the question of a proper remedy -- "isn't as simple as presented by the plaintiffs," that it was likely to consider the recent Congressional amendment removing the underlying illegality in fashioning an equitable remedy, and more ominously that it had not yet decided that Plaintiffs had a viable remedies model that matches the theory of liability. (Id. at 4-5.) Both the Tarsadia Defendants and GT capitalized on the Court's invitation for further briefing to file sur-replies arguing that Plaintiffs lacked a viable remedies model. (Dkt. Nos. 245-46.)

Even if the court rejected Defendants' analysis, Plaintiffs remained at risk as the Court noted that Plaintiff had the burden to identify a viable alternative remedies model. (Dkt. No. 273-15 at 5.) If the Court denied class certification, Class Counsel would have received, at most, de minimis fees on the claims relating to the four units owned by the named Plaintiffs. <u>See</u> <u>Acosta v. Trans Union, LLC</u>, 243 F.R.D. 377, 392 (C.D. Cal. 2007) ("The value of a class action 'depends largely on the certification of the class,' and … class certification undeniably represents a serious risk for plaintiffs in any class action lawsuit."). Even if the Court certified a class, there was no guarantee that certification would extend beyond the question of liability; if it did, that Plaintiffs would prevail at the remedies trial; or if they did, that the Court's broad equitable powers to fashion an appropriate remedy would yield significant relief to the Class.

Class Counsel also faced the added risk that if the Tarsadia Defendants had prevailed, they would have sued Class Counsel for malicious prosecution, just as they sued other plaintiffs' attorneys after prevailing in a related case. <u>See</u> <u>Tarsadia Hotels v. Aguirre</u>

& Severson, 2016 WL 7488351, at *1 (Ct. App. 2016) (affirming dismissal of malicious prosecution complaint in Tarsadia Hotels v. Aguirre & Severson, San Diego Superior Court Case No. 37-2016-00044390). In fact, Tarsadi Defendants specifically threatened to file such a lawsuit. (Dkt. No. 273-1, Schrag Decl. ¶ 9 & Ex. 2 (February 13, 2013 letter from counsel for the Tarsadia Defendants threatening to sue Class Counsel for malicious prosecution).)

Class Counsel undertook extraordinary risk in litigating the case for six years against Defendants who have a track record of aggression; thus, this factor supports and upward adjustment.

### c. Benefits Beyond a Cash Payment

Where class counsel's performance generates benefits beyond a cash settlement fund, an upward adjustment may be warranted. See Vizcaino, 290 F.3d at 1049 (fact that the litigation benefitted employers and workers nationwide by clarifying the law on worker classification supported upward adjustment). Here, Class Counsel benefitted consumers nationwide by clarifying that where a UCL claim is premised on a violation of federal law, the UCL's statute of limitations applies. Beaver, 816 F.3d at 1180-81. The UCL's four-year statute of limitations provides consumers with a viable cause of action even if they are suing based on violations of a federal predicate law with a shorter limitations period that has expired. Id. The Ninth Circuit's decision in this case also resolved other significant issues, such as whether 12 C.F.R. § 1010.5 imposes a valid limitation on presale contingency clauses, and, therefore, the scope of the Improved Lot Exemption. This issue was particularly important because it was the foundation for GT's liability and, presumably, the motivating factor behind the firm's decision to contribute most of the Settlement Fund. According to the Third Party Complaint, GT advised the Tarsadia Defendants that the Improved Lot Exemption to ILSA applied to the Hard Rock. (Dkt. No. 106-2 at 12.) In fact, because the purchase contract included a presale contingency clause that exceeded the duration permitted by 12 C.F.R. § 1010.5, the Improved Lot Exemption was not available to the Tarsadia Defendants. Beaver, 816 F.3d at 1184.

These clarifications in the law will serve a great benefit to the general public, and supports an upward adjustment to a 33 1/3% fee.

### d. The Skill Required and the Quality of Work

Class Counsel overcame several hurdles that reflect their skill and experience. For instance, Class Counsel not only won a motion for reconsideration of a summary judgment motion that represented a total loss on the merits, but also obtained summary judgment on the issue of liability for their UCL claim. This win came despite at least six federal district courts interpreting Silvas to hold that in a UCL claim based on federal law, the federal statute of limitations of the controls. (See Dkt. Nos. 128, 146.) Only one district court case had ruled the other way—that absent preemption, the UCL statute of limitations controlled even where the UCL claim was based on federal law. Sonoda v. Amerisave Mortg. Corp., No. C-11-1803 EMC, 2011 WL 2690451, at *9 (N.D. Cal. 2011). Yet, Class Counsel persuasively argued to this Court and the Ninth Circuit that the UCL's statute of limitations should apply.

Class Counsel also prevailed on the issue of whether a 2014 Congressional amendment to ILSA which exempted condominiums from ILSA's disclosure provisions would apply retroactively to this case even though the title of the amendment indicated that it was meant "to clarify how [ILSA] applies to condominiums." Beaver, 816 F.3d at 1186-87. This Court and the Ninth Circuit agreed with Class Counsel that despite the word "clarify" in the amendment's title, the amendment was a substantive change in the law that should not be applied to this case. Id. In briefing this issue, Class Counsel exhaustively reviewed HUD's agency regulations to ILSA and argued that under Chevron deference principles, ILSA applied to condominiums like those at the Hard Rock. (Dkt. No. 287-1, Meade Decl. ¶ 24.)

Even after a complete victory on the merits, Class Counsel faced defendants' challenges to their novel remedies model. Although the parties settled before the Court could decide whether Plaintiffs' remedies model was appropriate, Class Counsel's briefing and arguments on the matter provided enough leverage to settle the case for over $51

million. This settlement could not have been achieved without the skill and experience that Class Counsel applied in the face of legal hurdles at every turn. This factor thus supports an upward adjustment from the benchmark.

### e.    Market Rate for Similar Representation

Class Counsel's fee request of one-third of the common fund is in line with the market rate for similar representation. See In re Consumer Privacy Cases, 175 Cal. App. 4th 545, 557 (2009) (a fee award should be "within the range of fees freely negotiated in the legal marketplace in comparable litigation"). Attorneys with comparable skill and experience, and who litigate class actions on a contingency basis routinely charge one-third of the recovery, or 40% or more if the case goes to trial. Fernandez v. Victoria Secret Stores, LLC, No. CV 06-4149-MMM(SHx), 2008 WL 8150856, at *16 n.59 (C.D. Cal. 2008) (fees representing one-third of the recovery are justified based on study showing that standard contingency fee rates are 33% if the case settles before trial, 40% if a trial commences, and 50% if trial is completed). In his declaration, Pearl highlights prevailing market rates for attorneys across the state, and opines that Class Counsels' rates are well within the norm. (Dkt. No. 287-12, Pearl Decl. ¶¶ 8-10, 66-73, Dkt. No. 273-18, Pearl Decl., Ex. F.) Thus, here, where the action was litigated for six years, through a total loss, reconsideration, an interlocutory appeal and to the brink of trial, a one-third fee is reasonable as it is in line with the legal marketplace for contingent fees.

### f.    Contingent Nature of the Representation and the Financial Burden Carried by Class Counsel

Class Counsel took this case on an entirely contingent fee basis against well-represented defendants who have a track record of aggression. "A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services." Graham v. DaimlerChrysler Corp., 34 Cal. 4th 553, 580 (2004); see also Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 457 (E.D. Cal. 2013) ("Courts have long recognized that the attorneys' contingent risk is an important factor in determining

the fee award and may justify awarding a premium over an attorneys' normal hourly rates."). Class Counsel assumed all the financial risk of the case, since the fee arrangement required Class Counsel to bear all of the costs of litigation. Even with the Court's finding in favor of Plaintiffs on liability, there was still a risk that the Court would agree with defendants' restitution methodology and award zero in restitution – thus leaving Class Counsel with no remuneration for six years and 9,104 hours of work and the nearly $200,000 they spent over the course of this case. That substantial risk warrants an appropriate fee. Barbosa, 297 F.R.D. at 449 ("Like this case, where recovery is uncertain, an award of one-third of the common fund as attorneys' fees has been found to be appropriate"). This factor further supports the 33 and 1/3 % fee.

### 3.    Lodestar Cross-Check

In applying the percentage-of-the-fund method, a district court has discretion to "double check the reasonableness of the percentage fee through a lodestar calculation." Spann v. J.C. Penney Corp., 211 F. Supp. 3d 1244, 1264 (C.D. Cal. 2016) (quoting Laffitte, 1 Cal. 5th at 504).  Because the lodestar measures counsel's time investment in the litigation, it provides a check on the reasonableness of the percentage award. Vizcaino, 290 F.3d at 1050 (". . . the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted. Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.").

In conducting a lodestar cross-check, a court need not exhaustively catalogue and review counsel's hours, but can instead focus on "the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." Spann, 211 F. Supp. 3d at 1265 (quoting Laffitte, 1 Cal. 5th at 505).  To calculate the lodestar, courts multiply the number of hours reasonably expended litigating the case by a reasonable hourly rate, and adjusting the lodestar up or down by an appropriate multiplier reflecting "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."  Jasper v. C.R. England,

1  Inc., 2014 WL 12577426 (C.D. Cal. 2014) (citing In re Bluetooth Headset Products Liab.
2  Litig., 654 F.3d 935, 941-942 (9th Cir. 2011)).

3       Here, as summarized in a declaration, Class Counsel expended 9,104 hours litigating
4  this action over more than six years, after the exercise of billing discretion.  (Dkt. No. 287-
5  2, Meade Decl. ¶¶ 26, 27).

6       The lodestar for each of the law firms total $5,908,280.50.  (Dkt. No. 287-1, Meade
7  Decl. ¶¶ 21, 29, 31, 34, 35; see also Dkt. No. 287-19, Schrag Decl.; Dkt. No. 287-21;
8  Rubin Decl.; Dkt. No. 287-22, Chomiak Decl.; Dkt. No. 287-23, Fostvedt Decl.; Dkt. No.
9  287-24, Reiser Decl.)  After a review of Class Counsel's declarations, the Court concludes
10 that the lodestar amount is reasonable in light of the work performed and the prevailing
11 rates in the community for attorneys of comparable skill, experience and reputation.

12      The one-third fee Class Counsel seeks reflects a multiplier of 2.89 on the lodestar
13 which is reasonable for a complex class action case.  See Hopkins v. Stryker Sales Corp.,
14 11CV2786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4
15 are commonly found to be appropriate in complex class action cases.").  In the recent $50
16 million settlement in Spann, Judge Olguin held that a multiplier of 3.07 was "well within
17 the range of reasonable multipliers."  Spann v. J.C. Penney Corp., 211 F. Supp. 3d 1244,
18 1265 (C.D. Cal. 2016); see also Vizcaino, 290 F.3d at 1052–1054 (surveying multipliers in
19 23 class action suits and recognizing that courts applied multipliers of 1.0 to 4.0 in 83% of
20 surveyed cases); Parkinson v. Hyundai Motor Am., 796 F. Supp. 2d 1160, 1170 (C.D. Cal.
21 2010) (observing that "multipliers may range from 1.2 to 4 or even higher").

22      A cross-check with the lodestar confirms the reasonableness of awarding the 33 and
23 1/3% fee award.  See Laffitte, 1 Cal.5th at 496 ("If the implied multiplier is reasonable,
24 then the cross-check confirms the reasonableness of the percentage-based fee").

25 **C.  Application for Costs**

26      Class Counsel seek reimbursement of $195,089.00 in out-of-pocket costs incurred
27 during this litigation.  "There is no doubt that an attorney who has created a common fund
28 for the benefit of the class is entitled to reimbursement of reasonable litigation expenses

from that fund." Ontiveros v. Zamora, 303 F.R.D. 356, 375 (C.D. Cal. 2014) (citation omitted). Class counsel assert that all the expenditures were necessary to Class Counsel's prosecution of the action and are reasonable considering the action spanned over six years, required expert opinions and survived a Ninth Circuit appeal. After a review of the costs sought by seven firms[3], the Court concludes the costs are reasonable and awards Class Counsel $195,089.00 in costs.

### Conclusion

Based on the above, IT IS HEREBY ORDERED that:

1. Based on Plaintiffs' Motion for Final Approval of Class Settlement, the argument and comments at the final Fairness Hearing, and its further consideration of the factors identified in the Court's Preliminary Approval Order, the Court certifies the following Class for Settlement purposes only:

> All individuals and businesses who agreed to purchase condominium-hotel units at the Hard Rock Hotel & Condominiums in San Diego, California at any time between May 2006 and December 2007 and ultimately closed escrow on units in the project, with the exception of (a) the Tarsadia Defendants and their officers, affiliates, directors, employees and the immediate family members of its officers, directors and employees (the Tarsadia Defendants have determined this exception excludes only Units 602, 639 and 1150), (b) those named plaintiffs in the action entitled Bell et al. v. Tarsadia Hotels et al. (San Diego Superior Court Case No. 37-2010-00096618) who signed the Settlement Agreement And Mutual Release in that case, (c) the named plaintiffs in the action entitled Salameh et al. v. Tarsadia Hotels et al. (Case No. 09-CV-2739), and (d) Persons who file timely Opt-Outs. The Settlement Class shall be construed to include purchasers "Subject to the 2008 Close Defense" and "Subject to the Assignment Defense," as those phrases are used in Exhibit A to the Class Member Stipulation (Dkt. No. 70), provided that they otherwise fall within the definition of the Settlement Class. Without in any way limiting the foregoing, a list

---

[3] Until early 2015, Tyler Meade and Michael Shrag practiced as Meade & Schrag, LLP, and then both continued to work on the case in their new firms, The Meade Firm and Gibbs Law Group, LLP.

of known Settlement Class members is attached hereto as **Exhibit A** (the "Class Member List").

2.     The Court confirms its appointment of Plaintiffs Dean Beaver, Laurie Beaver, Steven Adelman, Abraham Aghachi, Dinesh Gauba, Kevin Kenna, and Veronica Kenna as Class Representatives. The Court also confirms its appointment of the following five firms to serve as Class Counsel: Reiser Law, P.C.; Gibbs Law Group LLP; The Meade Firm p.c.; Talisman Law PC; and the Fostvedt Legal Group LLC.

3.     The Court has reviewed the Declaration of Jacqueline Brasefield Regarding Notice Dissemination, Dkt. No. 279, and finds that Class Notice has been disseminated to the Class in compliance with the Court's Preliminary Approval Order and that the Notice Program provided the best notice to the Class practicable under the circumstances, fully satisfied due process, met the requirements of Rule 23 of the Federal Rules of Civil Procedure, and complied with all other applicable law. The Court further finds that notice provisions of 28 U.S.C. § 1715 were complied with in this case.

4.     Only one class member, Jason Brooks, who was a co-purchaser of Unit 1042, has excluded himself from the Class by submitting a timely Request for Exclusion to the Settlement Administrator. *See* Dkt. No. 304 (Declaration of Jacqueline Brasefield Regarding Exclusions and Objections). Therefore, Jason Brooks (a) is not a Class member as that term is defined and used herein; (b) shall not be bound by this Final Approval Order or any release provided herein; and (c) shall not be entitled to benefits from the Settlement. No other Class members requested exclusion from the Settlement.

5.     Seventeen members of the Class have written to the Court to express their support for the Settlement.  (Dkt. Nos. 282-283, 288-292, 294-303.)  The Court has not received any objections to the Settlement.  (See also Dkt. No. 304 (Brasefield Decl. re exclusions and objections); (Dkt. No. 305 (Class Counsel's Status Report Regarding Response to Notice Program).)  The absence of any objections bars any appeal.  (Dkt. No. 278 at ¶ 35 ("Any Class member who does not file a valid and timely objection to the Settlement will be deemed to have waived any objections to the Settlement, will be barred

from speaking or otherwise presenting any views at the Fairness Hearing, and shall be barred from seeking review of the Settlement by appeal or otherwise").); see also Newberg on Class Actions § 14:13 (5th ed.) ("[I]t is equally clear that a class member who did not object in the district court cannot pursue an appeal. Indeed, she has nothing to appeal because she waived her rights by not objecting below."); In re UnitedHealth Group Inc. Shareholder Derivative Litigation, 631 F.3d 913, 917 (8th Cir. 2011) (class member *must* file a timely and proper objection with the district court before appealing a settlement agreement); Aichele v. City of Los Angeles, Case No. CV 12-10863-DMF (FFMx), 2015 WL 12732003, at *6 (C.D. Cal. Sept. 9, 2015) ("Since there have been no objections to the Settlement, there can be no appeals taken").[4]

6. No Class member has requested to speak at the Final Fairness Hearing.

7. The Court finds that the Settlement is fair, reasonable, adequate and is in the best interests of the Class, has been entered into in good faith, and should be and hereby is fully and finally approved pursuant to Federal Rule of Civil Procedure 23. The Settlement represents a fair resolution of all claims asserted by the Class Representatives on behalf of the Class, and fully and finally resolves all such claims.

8. The release set forth in the Settlement will become binding and effective on all Class members upon the Effective Date, which under Paragraph 2.8 of the Settlement Agreement will likely be 31 days from the date of this Order given that no Class member filed a timely objection. (Dkt. No. 273-2 at ¶ 2.8.) To avoid ambiguity, these releases,

---

[4] The Court orders that any party who attempts to file an appeal shall, within 10 days of filing a notice of appeal, post a bond pursuant to Rule 7 of the Federal Rules of Appellate Procedure in the amount of $500.00.

which must be read in light of the broad definitions of "Claims"[5] and "Released Parties,"[6]

read as follows:

11.1   Mutual Releases: Upon the Effective Date, this Settlement fully, finally and forever extinguishes and releases all Claims held by, between, and among Plaintiffs, the Settlement Class, Playground Destination Properties, Inc., the Tarsadia Defendants, and GT against all Released Parties that arise out of the facts alleged in the First, Second, and Third Amended Complaints, and/or the Third Party Complaint (collectively, "Complaint") filed in the Action, including known and Unknown Claims which could have been brought in the Action based on the same set of facts pleaded in the Complaint. The Settlement further extinguishes any and all Claims, including future and Unknown Claims, between the Tarsadia Defendants, Playground Destination Properties,

---

[5] "Claims" means any and all actual or potential claims, actions, causes of action, suits, counterclaims, cross-claims, third party claims, contentions, allegations, and assertions of wrongdoing, and any demands for any and all debts, obligations, liabilities, damages (whether actual, compensatory, treble, punitive, exemplary, statutory, or otherwise), attorneys' fees, costs, expenses, restitution, disgorgement, injunctive relief, any other type of equitable, legal or statutory relief, any other benefits, or any penalties of any type whatsoever (whether sought by a Party directly or on behalf of a Party by another person), regardless of when such claims accrue, whether known or unknown, suspected or unsuspected, contingent or non-contingent, discovered or undiscovered, whether asserted in federal court, state court, arbitration or otherwise, and whether triable before a judge or jury or otherwise.

[6] "Released Parties" (or, individually, "Released Party") means Plaintiffs, members of the Settlement Class, Class Counsel, Playground Destination Properties, Inc., the Tarsadia Defendants, GT, and GT's insurers and underwriters, together with their predecessors, successors (including, without limitation, acquirers of all or substantially all of its assets, stock, or other ownership interests) and assigns; their respective insurers, the past, present, and future, direct and indirect, parents (including, but not limited to holding companies), subsidiaries and affiliates in any capacity of any of the above; and the past, present, and future principals, trustees, partners, claims administrators, officers, directors, employees, agents, attorneys, shareholders (including without limitation, Richard Davis, as applicable to GT), advisors, predecessors, successors (including, without limitation, acquirers of all or substantially all of their assets, stock, or other ownership interests), assigns, representatives, heirs, executors, and administrators in any capacity of any of the above.

Inc., and GT that in any way relate to the Hard Rock Hotel & Condominiums in San Diego, California, including but not limited to claims against or by the Tarsadia Defendants, Playground Destination Properties, Inc., GT, and/or their respective predecessors, successors (including, without limitation, acquirers of all or substantially all of its assets, stock, or other ownership interests) and assigns, insurers, past, present, and future, direct and indirect parents (including, but not limited to holding companies), subsidiaries and affiliates in any capacity of any of the above, and the past, present, and future principals, trustees, partners, claims administrators, officers, directors, employees, agents, attorneys, shareholders (including without limitation, Richard Davis, as applicable to GT), advisors, predecessors, successors (including, without limitation, acquirers of all or substantially all of their assets, stock, or other ownership interests), assigns, representatives, heirs, executors, and administrators in any capacity of the above. Nothing in this Agreement shall release any insurer from any obligations to defend or indemnify any Party or non-party to this Agreement with respect to any claims not encompassed within the Complaint or Third-Party Complaint. Without limitation, and for the sake of clarity, the claims, counter and cross-claims of T-2 Three vs. Turner Construction (Orange County Superior Court Case No. 30-2011-00514568-CU-BC-CJC), specifically are not within scope of the releases granted herein. The District Court's Final Approval Order shall constitute a judgment dismissing the Action with prejudice, but the District Court shall retain jurisdiction to oversee and carryout the Settlement.

   11.2   Unknown Claims: Consistent with and subject to Section 11.1, the mutual releases contemplated by this Settlement and provided for in this Agreement extend to Claims that the Parties and Playground Destination Properties, Inc. do not know or suspect to exist at the time of the release, which if known, might have affected the decision to enter into the release ("Unknown Claims"). In releasing their Unknown Claims, the Parties and Playground Destination Properties, Inc. expressly waive (and each Class member by operation of law shall be deemed to waive) any and all protections, provisions, rights and benefits conferred by any law of the United States or any state or territory of the United States, or principle of common law, which governs or limits a person's release of Unknown Claims, including Section 1542 of the California Civil Code. Section 1542 of the California Civil Code provides:
A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS

OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR. The Parties and Playground Destination Properties, Inc. understand and acknowledge (and each Class member by operation of law shall be deemed to have acknowledged) the significance of these waivers of California Civil Code Section 1542 and/or of any other applicable law relating to limitations on releases of Unknown Claims. In connection with such waivers and relinquishment, the Parties and Playground Destination Properties, Inc. acknowledge (and each Class member by operation of law shall be deemed to acknowledge) that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Settlement, but that they release fully, finally and forever all released Claims, and in furtherance of such intention, the release will remain in effect notwithstanding the discovery or existence of any such additional or different facts. The Parties and Playground Destination Properties, Inc. acknowledge (and all Class members by operation of law shall be deemed to acknowledge) that the release of Unknown Claims as set forth herein was separately bargained for and was a key element of the Settlement.

11.3   Limitation of Release: Consistent with Sections 11.1 and 11.2 above and mentioned here for avoidance of doubt, this Settlement will not in any way impact: (a) the Tarsadia Defendants' rights against putative class members Frank Issa and/or Ray Hammi relating to, in connection with or arising from any and all judgments, demands, and claims for attorneys' fees and costs incurred by the Tarsadia Defendants, and others, in connection with other litigation (excluding this Action) brought against them involving the Hard Rock Hotel guestroom condominium units; and (b) the continuing rights and obligations between GT and its insurers. The Settlement and this Agreement shall not affect any debts owed by any of the Class members to the Tarsadia Defendants, and all Class Representatives and Class members will remain fully obligated on any and all such debts.

11.4   Three parties that were previously dismissed as defendants in this Action (B.U. Patel, Tushar Patel, and MKP One, LLC) are not parties to this Settlement but have agreed to mutual releases with GT and Playground via a separate agreement.

9.   The Settlement Administrator, Garden City Group, LLC, is hereby directed to implement and carry out the Settlement in accordance with the terms and provisions

31

thereof, Dkt. No. 273-2, Schrag Decl., Ex. 1, including the Distribution Plan, Dkt. No. 273-7, Schrag Decl. Ex. E to Settlement Agreement.

10. Class Counsel and the Class Representatives fairly and adequately represented the interests of Class members. The Court finds that Class Counsel's request for $17,050,000.00 in attorney fees which represents 33 and 1/3% of the Settlement Fund is fair and reasonable, given the high level of risk involved, the result achieved, the high quality of the legal representation, the duration of this case, the novelty of their claim, and the complexity of the issues in this Court and the Court of Appeals. In addition, this Court has cross-checked the fee award and finds that Class Counsel's combined lodestar of $5,908,280.50 is reasonable under the circumstances of this case and that the 2.89 multiplier on this lodestar is fair and reasonable for the reasons discussed above. The Court finds Class Counsel reasonably spent over 9,104 hours representing the Class's interests over the course of this litigation, that Class Counsel's hourly rates are reasonable and in line with the prevailing rates in the community for complex class action litigation. The Court further finds that the $195,089 in costs incurred to prosecute the litigation were reasonable. Accordingly, Class Counsel is hereby awarded attorney fees in the amount of $17,050,000.00, and costs in the amount of $195,089.00.

11. The Tarsadia Defendants and GT shall make the payments specified in paragraph 8.1 of the Settlement Agreement within the deadline specified in that paragraph (*i.e.*, 15 days from the date of this Order), and the Settlement Administrator shall distribute the $17,050,000.00 in attorneys' fees and the $195,089.00 in costs to Class Counsel (in the amounts and in the manner specified by them) within five (5) days of the Effective Date.

12. The Court further finds the requested service awards are fair and reasonable, given the time and effort expended by the Class Representatives on behalf of the Class, and the risk they incurred in pursuing relief on behalf of the Class. The Court awards four $50,000.00 service awards to: (1) Mr. Gauba, (2) Kevin and Veronica Kenna, (3) Dean and Laurie Beaver, and (4) Messrs. Adelman and Aghachi. These incentive awards shall

be distributed by the Settlement Administrator at the same time as the attorneys' fees and costs.

13. On August 1, 2017, a Notice of Lien was filed in this case for satisfaction of a money judgment against two Class members (Frank Issa and Ray Hammi) in a separate case, 5th & K Parcel 2 Owners' Association, Inc. v. Tamer Salameh, et al., San Diego Superior Court Case No, 37-2010-00094424-CUOR- CTL (lead case). Dkt. No. 281 (the "Lien"). At the request of GT and with the agreement of the other parties, the Court confirms that the Lien does not impose any duties or obligations on GT, its insurers, their underwriters and related entities. GT should proceed to honor its payment obligations under the terms of the Settlement Agreement, without regard to the Lien. Should Mr. Issa or Hammi seek relief from the Lien, the Court will address the Lien separately after final approval.

14. There being no just reason for delay, the Court, in the interests of justice, expressly directs the Clerk of the Court to enter this Final Order and Judgment, and hereby decrees that, upon entry, it be deemed a Final Judgment.

15. Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over (a) implementation and administration of the Settlement; (b) further proceedings, if necessary, on applications for attorneys' fees and costs in connection with the Action and the Settlement; and (c) the Parties and the Class members for the purpose of construing, enforcing, and administering the Settlement Agreement and all orders and judgments entered in connection therewith.

IT IS SO ORDERED.

Dated: September 28, 2017

Hon. Gonzalo P. Curiel
United States District Judge

11cv1842-GPC(KSC)

# BEAVER v. TARSADIA - CLASS MEMBER LIST

| Unit No. | Buyer No. 1 | | Buyer No. 2 | | Buyer No. 3 | | Buyer No. 4 | | Buyer No. 5 | | Buyer No. 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Last Name | First Name | Last Name | First Name | Last Name | First Name | Last Name | First Name | Last Name | First Name | Last Name | First Name |

**UNITS STILL OWNED BY CLASS MEMBERS**

| Unit No. | Last Name | First Name | Last Name | First Name | Last Name | First Name | Last Name | First Name | Last Name | First Name | Last Name | First Name |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 220 | Smith | Michael | Smith | Rosibel | | | | | | | | |
| 222 | McPeck | Clarissa | Povenmire | Daniel | Olivares | Luis | | | | | | |
| 234 | Doctolero | Rene | Doctolero | Guisela | | | | | | | | |
| 310 | Morgan | Christopher | Morgan | Rachel | Fitzgerald | Kevin | | | | | | |
| 312 | Martinez | Manuel | Diaz | Fernando | | | | | | | | |
| 314 | Miller | Christopher S | | | | | | | | | | |
| 320 | Kushen | Craig | Kushen | Meredith | | | | | | | | |
| 322 | Annett | Cecil | Becker | Elizabeth | | | | | | | | |
| 332 | Tang | Steven Don | Tang | Thomas | | | | | | | | |
| 334 | Kuenster | Jerome | Kuenster | Susan | | | | | | | | |
| 338 | Zwass | Josef | | | | | | | | | | |
| 350 | Feeney | Michael | | | | | | | | | | |
| 352 | Hand | Jason | Hand | Frank | Hand | Kathy | | | | | | |
| 354 | Simpson-Galligan | Nicole V | | | | | | | | | | |
| 356 | Gauba | Dinesh | Sheila | Dobee | | | | | | | | |
| 359 | Beaver | Dean | Beaver | Laurie | | | | | | | | |
| 408 | Kimball | Thomas | Kimball | Lori | Kimball | Casie | Kimball | Kyle | Pensco Trust Co. | | | |
| 420 | Fifth Street Investors L L C | | | | | | | | | | | |
| 426 | NCO Properties LLC | | McCormick | Mark | | | | | | | | |
| 427 | Godinez | Paul | Jolly | Kevin | Zabka | Sven | Mackey | Tom | Gibbons | Brendan | | |
| 429 | Trymax, California GP | | | | | | | | | | | |
| 430 | Marbury-Hammonds | Franchesta | Coates | Jay | | | | | | | | |
| 431 | Schindler | Mark | | | | | | | | | | |
| 432 | Erskine | Joshua | Erskine | Shane | Erskine | Kirt | Erskine | Charlene | Grieco | Jason | | |
| 434 | Wells | Marc | Wells | Margaret | Wells | Christopher | | | | | | |
| 438 | Paniccia | Mario | Paniccia | Rachel | | | | | | | | |
| 440 | Lapsi | Amar | | | | | | | | | | |
| 442 | Mauter | Keith | Mauter | Susan | | | | | | | | |
| 503 | Volore | Brandon | | | | | | | | | | |
| 504 | Kass | Irving | | | | | | | | | | |
| 507 | Schneider | James | Schneider | Candice | | | | | | | | |
| 510 | Dogan | Jarrod | Blaise | Heather | | | | | | | | |
| 511 | Acharya | Bella | Johnstone | Jeffrey | | | | | | | | |
| 518 | Hom | Yau Keung | | | | | | | | | | |
| 520 | Goldstein | Eyal | | | | | | | | | | |
| 522 | Tassiello | Richard | Tassiello | Amy | | | | | | | | |
| 526 | Sunabe | Jack | Sunabe | Marian | | | | | | | | |
| 530 | Sunabe | Jack | Sunabe | Marian | | | | | | | | |
| 532 | Pruski | Timothy | | | | | | | | | | |
| 533 | Hammond | Myle | | | | | | | | | | |
| 535 | Francescon | Lewis | Francescon | Kimberly | Ghorbani | Jason | Ghorbani | Adriana | | | | |
| 536 | Angulo | Victor | Angulo | Laura | | | | | | | | |
| 538 | Baird | Brian | Baird | Meagan | | | | | | | | |
| 541 | Salazar | Laurie | | | | | | | | | | |
| 543 | Salazar | Laurie | | | | | | | | | | |
| 544 | Gay | Stephen | Ritaldato | Dennis | Gay | David | | | | | | |
| 546 | Durfee | Peter | Durfee | Susan | | | | | | | | |
| 550 | Clayton | Kristopher | Cortez | Marcos | Cortez | Andrew | Cortez | Socorro | | | | |
| 556 | Celeste | Leon | Celeste | Lisa | | | | | | | | |
| 559 | Hetherington | Roy | Hetherington | Maria | | | | | | | | |
| 560 | Rabindranauth | Premnauth | Zaky | Mary | | | | | | | | |
| 604 | Oriol | Caesar | Oriol | Julie | | | | | | | | |
| 605 | Moughan | John | Moughan | Nicole | | | | | | | | |
| 606 | Cimo | Joseph | Cimo | Patricia | | | | | | | | |
| 607 | Modiano | Robert | Modiano | Nina | | | | | | | | |
| 608 | Young | Seldon | Young | Heston | Hesel LLC | | | | | | | |

EXHIBIT A

| Unit No. | Buyer No. 1 Last Name | First Name | Buyer No. 2 Last Name | First Name | Buyer No. 3 Last Name | First Name | Buyer No. 4 Last Name | First Name | Buyer No. 5 Last Name | First Name | Buyer No. 6 Last Name | First Name |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 609 | Scolinos | Frank | Scolinos | Maria | | | | | | | | |
| 620 | Bakshi | Uminderjit | Bakshi | Jagjit | Scola | Linda | Rutan | Joshua | | | | |
| 626 | Adelman | Steven | Aghachi | Abraham | | | | | | | | |
| 627 | Schneider | Douglas | Schneider | Anne Marie | | | | | | | | |
| 628 | Chen | Yei-Huang | Tu | Ahn | | | | | | | | |
| 630 | Tayloe | Michael | Johnson | Howard | | | | | | | | |
| 632 | Berman | Joseph | Berman | Leslie | | | | | | | | |
| 636 | Friedman | Gregory | Friedman | Linda | | | | | | | | |
| 638 | Elbling | Ronald | Elbling | Jacqueline | | | | | | | | |
| 640 | Mokharti | Mohsen | | | | | | | | | | |
| 641 | Viesca Las Vegas LLC (David/Margarita McCain) | | | | | | | | | | | |
| 642 | Hand | Jason | Hand | Frank | Hand | Kathy | | | | | | |
| 643 | Schmalle | Joral | Roman-Schmalle | Patricia | | | | | | | | |
| 648 | Kline | Kelly | | | | | | | | | | |
| 650 | Paniccia | Anthony | Paniccia | Mario | Paniccia | Rachel | | | | | | |
| 658 | Wilson | Brian | Wilson | Elizabeth | Mezich | Daniel | | | | | | |
| 659 | Erickson | Michael T. | | | | | | | | | | |
| 701 | Rock Daddy LLC | | | | | | | | | | | |
| 702 | Villasenor | Jose | | | | | | | | | | |
| 704 | Villasenor | Jose | | | | | | | | | | |
| 708 | Dirkson | Mark Steven | Ortiz | Ronald | Sloan-Ortiz | Susan | | | | | | |
| 711 | Nye | Troy | Nye | Cindy | | | | | | | | |
| 718 | Schwartz | Pam | Stewart | Sunny | | | | | | | | |
| 726 | Robertson | Christopher | | | | | | | | | | |
| 727 | Parkos | Robert | Parkos | Donna | | | | | | | | |
| 729 | Terhune | Gentry | Terhune | Bonita | | | | | | | | |
| 730 | Ota | Bowen | Ota | Alexandra | | | | | | | | |
| 731 | Kline | Kelly | | | | | | | | | | |
| 732 | Porcelli | Joseph | Gina | Porcelli | | | | | | | | |
| 738 | Ou | Joy | | | | | | | | | | |
| 740 | Pinkerton | William | Pinkerton | Nicole | | | | | | | | |
| 743 | Cedar Mountain LLC | | | | | | | | | | | |
| 744 | Garnett | John | Garnett | Bonnie M | Milne | Shane | Geske | Jennifer | | | | |
| 754 | Hugo | Jonathon | Bernardo | Rainier | Bernardo | Jennifer | | | | | | |
| 758 | Berman | Joseph | Berman | Leslie | | | | | | | | |
| 802 | Security Fse Ninety-Eight Inc | | | | | | | | | | | |
| 804 | Wells | David | Wells | Donna | King | Gregory | | | | | | |
| 807 | Mohler | Floyd | Freshwater | Ken | Rodriques | Brian J | | | | | | |
| 809 | Amadio | Brian | | | | | | | | | | |
| 812 | Evans | Ronald | | | | | | | | | | |
| 816 | Prime Coordinates, LLC (Sergio Gallego) | | | | | | | | | | | |
| 818 | Sandrian | Reza | Sedigheh | Roya | | | | | | | | |
| 824 | Rowan | Doug | Rowin | Jody | Metroyanis | Frank | Metroyanis | Teresa | Horrigan | Sean | Horrigan | Krista |
| 825 | Usui | Mark | | | | | | | | | | |
| 826 | Strada | Nelson | | | | | | | | | | |
| 827 | Reese | Donald | Reese | Melanie | Tosh | Diane | Jan | Vicek | Cuthbert | Raquel | | |
| 828 | Tkach | Adam | Tkach | Angela | | | | | | | | |
| 829 | Thuy-Truong | Lynn | Hung Truong | Richard | | | | | | | | |
| 833 | Luttrull | Ronald | Luttrull | Kimberly | | | | | | | | |
| 836 | ADD Properties LLC | | Dungan | Richard | | | | | | | | |
| 837 | Valdivieso | Lawrence | | | | | | | | | | |
| 838 | Viola | Alexander | | | | | | | | | | |
| 839 | Gregory Wiener, MD Profit Sharing Plan | | Errol R Korn Ira | | | | | | | | | |
| 840 | Nute | James | Erickson | Terry | | | | | | | | |
| 843 | Kenna | Kevin | Kenna | Veronica | | | | | | | | |
| 846 | Giampaolo | Michael | Giampaolo | Cristine | | | | | | | | |
| 854 | Kouza | Fawaz P. | | | | | | | | | | |
| 856 | Pennington | David | Doherty | Sean M. | Pozzi | Matthew S. | Kanafani | Ghassan L. | | | | |
| 859 | Trymax, California GP | | | | | | | | | | | |
| 902 | Castro | Ernest V | | | | | | | | | | |
| 903 | Baker | Kathryn | Baker | Troy | | | | | | | | |

| Unit No. | Buyer No. 1 | | Buyer No. 2 | | Buyer No. 3 | | Buyer No. 4 | | Buyer No. 5 | | Buyer No. 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Last Name | First Name | Last Name | First Name | Last Name | First Name | Last Name | First Name | Last Name | First Name | Last Name | First Name |
| 904 | Schmalle | Joral | Roman-Schmalle | Denise | | | | | | | | |
| 905 | Erickson | Michael | | | | | | | | | | |
| 911 | Mezich | Daniel | Upchurch | Mark | Upchurch | Kay | | | | | | |
| 912 | Gaertner | Grant | Gaertner | Tiana | Pham-Lukas | Brianne | | | | | | |
| 914 | Casper | Joseph | Casper | Susan | | | | | | | | |
| 916 | Ong-Veloso | Glenn | | | | | | | | | | |
| 920 | Roberts | Kristofer | | | | | | | | | | |
| 925 | Racofsky | Richard | | | | | | | | | | |
| 927 | Guanill | Edward | Guanill | Veronica | Bergstrom | Dennis | Bergstrom | Julia | | | | |
| 929 | 303 Solutions LLC | | | | | | | | | | | |
| 930 | Sherif | Oleg | | | | | | | | | | |
| 931 | Gonzalez | Ruben A. | | | | | | | | | | |
| 933 | Hassen | Sam | | | | | | | | | | |
| 934 | Benaron | Joseph | Blankenship | Lisa | | | | | | | | |
| 936 | ER Trust (Parham Soroudi, Trustee) | | | | | | | | | | | |
| 938 | Barrett | Robyn Lynn | | | | | | | | | | |
| 941 | Frankel Family Trust (Douglas and Mindi Frankel) | | Reed | Timothy | | | | | | | | |
| 942 | Foletta | Mark G. | | | | | | | | | | |
| 946 | JKE Holdings, Inc. (Erskines) | | Darby | Jason | | | | | | | | |
| 948 | Tvorik | Stephen | Tvorik | Kathryn | | | | | | | | |
| 952 | Woods Family Trust (Barry K Woods  & Diane W. Woods-Trustees) | | | | | | | | | | | |
| 956 | Sze | Geordie | | | | | | | | | | |
| 959 | Strauss Family Trust (William  L & Margie A Strauss- Trustees) | | | | | | | | | | | |
| 1001 | Kushen | Craig | Kushen | Meredith | | | | | | | | |
| 1002 | Trymax, a California GP | | | | | | | | | | | |
| 1004 | Pack | Scott M | Wood | Kelly D | | | | | | | | |
| 1008 | Ruiz | Miguel Francisco Abed | Ruiz | Mauricio Jose Vega | | | | | | | | |
| 1009 | Hughes | Gary D | Hughes | Judy Y | Hughes | Shelby K | Hughes | Tracy M | | | | |
| 1010 | Mosley | Coleman | Mosley | Ellen | | | | | | | | |
| 1011 | Porter | Brook F | Porter | Beth A | | | | | | | | |
| 1016 | Lee | Stephen | Lee | Joji Stephanie | | | | | | | | |
| 1018 | Low | Nelman | Low | Karen Kodama | | | | | | | | |
| 1020 | Roberts | John | Roberts | Joanne | | | | | | | | |
| 1022 | Shean | Keith | Shean | Charlotte | Geronime | Lara | Geronime | Mark | | | | |
| 1024 | Scibetti | Charles J | Purdie | Alexander M. | Purdie | Edith | | | | | | |
| 1026 | Miles | Dean | Richards | Kurt | | | | | | | | |
| 1028 | Take 2 LLC | | | | | | | | | | | |
| 1031 | Rosenberger | Catherine M | | | | | | | | | | |
| 1032 | Lindsay | Greg | Lindsay | Olga | Casado | Christopher | Casado | Valerie | | | | |
| 1033 | Estoril, LP | | | | | | | | | | | |
| 1035 | Darden | Jon | Darden | Christine | | | | | | | | |
| 1036 | Avedikian | Eddie | Garnet | Noah | | | | | | | | |
| 1037 | Sorensen | Matthew | Sorenson | Joseph | Duarte | Effren | | | | | | |
| 1038 | Manio | Allan | Manio | Kimberly | Ma | Roger | | | | | | |
| 1042 | Thielen | Brian | | | | | | | | | | |
| 1044 | Kaminski | Frank | | | | | | | | | | |
| 1046 | Gough | Derek | | | | | | | | | | |
| 1059 | Cohan | Ross | Cohan | Morena | | | | | | | | |
| 1101 | Villasenor | Jose | | | | | | | | | | |
| 1110 | Trymax, California GP | | | | | | | | | | | |
| 1114 | Contento | Louis J | | | | | | | | | | |
| 1116 | Merrell | David E | | | | | | | | | | |
| 1118 | Harris | Randall S | Harris | Carolan G | | | | | | | | |
| 1120 | Mirra | David | Mirra | Kathleen | Mirra | Mark | | | | | | |
| 1122 | SHG Holding LLC | | | | | | | | | | | |
| 1126 | Dao | Mymy | | | | | | | | | | |
| 1128 | Lord | John Marc | Lord | Shannon | | | | | | | | |
| 1129 | Fabian | Rosie | Fabian | Vivian | | | | | | | | |
| 1131 | Painter | Robert | Painter | Deborah | Fletcher | Ronald | | | | | | |
| 1135 | Chew III | Edward | Wedge | Gary | Marcotte | Joe | Miranda | Leonard | Miranda | Teresa | | |
| 1136 | Signaigo | Thomas Mark | | | | | | | | | | |

| Unit No. | Buyer No. 1 Last Name | First Name | Buyer No. 2 Last Name | First Name | Buyer No. 3 Last Name | First Name | Buyer No. 4 Last Name | First Name | Buyer No. 5 Last Name | First Name | Buyer No. 6 Last Name | First Name |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1137 | Miller | Richard | Miller | Carla Ann | | | | | | | | |
| 1139 | Brunnhoelzl | Michael | Brunnhoelzl | Janine | | | | | | | | |
| 1142 | Healey | Fritz | Healey | Jeannine | | | | | | | | |
| 1143 | Massa | Farid | Klein | Jennifer | | | | | | | | |
| 1144 | Brookes | Darren | Yune | Jane Jiwon | | | | | | | | |
| 1146 | J&D Capital Holding, Inc | | | | | | | | | | | |
| 1148 | Sperbeck (Trustee) | Nura T | | | | | | | | | | |
| 1154 | Funke | Thomas M | | | | | | | | | | |
| 1156 | Magallon | Luis | Magallon | Ofelia | | | | | | | | |
| 1158 | Maze | Hobart | Maze | Freida | | | | | | | | |
| 1159 | Inzunza | Joseph | Inzunza | Kristi | Long | Catherine | | | | | | |
| 1201/1209 | Villasenor | Jose | | | | | | | | | | |
| 1208 | Vargas | James | Vargas | Frances | | | | | | | | |
| 1210 | Multhauf | Lloyd | Multhauf | Carmen | | | | | | | | |
| 1211 | Turner | Frank | Zinn | Laurel | | | | | | | | |
| 1212 | Vargas | James F | Vargas | Frances T | | | | | | | | |
| 1218 | Sowden | Douglas S | | | | | | | | | | |
| 1222 | Simington | Kenneth | Simington | Maureen | Sargenti | Steve | Sargenti | Sherri | | | | |
| 1226 | 1226 Hard Rock LLC | | | | | | | | | | | |
| 1229 | Andrews | Peter N | | | | | | | | | | |
| 1230 | Nagy Revocable Trust | | Nagy | Sandra | | | | | | | | |
| 1232 | Chappell | Jason | D'Ambrosia | Christopher | | | | | | | | |
| 1233 | Padua | Anthony | | | | | | | | | | |
| 1234 | Osley Jr. | John P | Mosh | Eric | Mosh | Danielle | | | | | | |
| 1235 | Joseph | Donald L | Joseph | Teresa | | | | | | | | |
| 1238 | Trymax, a California GP | | | | | | | | | | | |
| 1239 | Top of the Rock San Diego, LLC | | | | | | | | | | | |
| 1244 | Shakelian | Anto | Shakelian | Harout | | | | | | | | |
| 1250 | James Callaghan | James | Callaghan | Suzanne | | | | | | | | |
| 1252 | Sohovich | Gregory | Sohovich | Debra | | | | | | | | |
| 1259 | Neu | David | Neu | Esperanza | | | | | | | | |
| 1260 | Lopez | Brandon | Lopez | Tracy | | | | | | | | |
| | | | | | | | | | | | | |
| **SOLD UNITS** | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| 230 | Tsui | Albert H. | | | | | | | | | | |
| 318 | Bermeo | Dennis G. | | | | | | | | | | |
| 326 | Heydet | Richard | Heydet | Lisa | | | | | | | | |
| 340 | Guillet | Christopher G | | | | | | | | | | |
| 348 | Schneider | Charles | Schneider | Mary Jean | | | | | | | | |
| 410 | Garg | Geeta | | | | | | | | | | |
| 418 | Chacon | Robert | Nicolay | Christy M | | | | | | | | |
| 422 | Silver Bay Properties, Inc. | | | | | | | | | | | |
| 425 | Chrisman | Robert G | Rogers | Sarah N | | | | | | | | |
| 433 | Vigil | David L | Vigil | Rebecca J | | | | | | | | |
| 446 | Valentini | Christine F | Valentini | Danny T | McCafferty | Douglas M | Devone-McCafferty | Yvonne M. | | | | |
| 452 | Dunaway | Jerry T | Dunaway | Jennifer G | | | | | | | | |
| 458 | Sapienza | John J | Sapienza | Jennifer L. | | | | | | | | |
| 514 | Childre | Kevin | Lum | Margaret | | | | | | | | |
| 516 | Rodil | Belinda L. | Rodil-Separa | Florem | Gaffud | Emeline R. | | | | | | |
| 525 | Peterson | Eric G | Peterson | Jane L | Berridge | Ashley | | | | | | |
| 529 | Zeller | Kathleen Victoria Hill | | | | | | | | | | |
| 542 | Folkers | Benjamin | | | | | | | | | | |
| 558 | Merriman | Shawne | | | | | | | | | | |
| 610 | Gorne | Brian | Gorne | Lee Ann | | | | | | | | |
| 618 | Sanchez | Steve | Sanchez | Christine | Sanchez | Michelle | | | | | | |
| 625 | Delgado | Samuel | Delgado | Rose Mary | | | | | | | | |
| 629 | Cheng | Tina M. | Cheng | Sharon R. | | | | | | | | |
| 652 | Goniea | Clifford J | Goniea | Concepcion B | | | | | | | | |
| 656 | Loelkes | Roland X | DiMeglio | Paul J | | | | | | | | |
| 703 | Bennett | David S | Bennett | Leah H | | | | | | | | |

| | Buyer No. 1 | | Buyer No. 2 | | Buyer No. 3 | | Buyer No. 4 | | Buyer No. 5 | | Buyer No. 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit No. | Last Name | First Name | Last Name | First Name | Last Name | First Name | Last Name | First Name | Last Name | First Name | Last Name | First Name |
| 705 | Goniea | Clifford J | Goniea | Concepcion B | | | | | | | | |
| 710 | Kianpour | Alireza | | | | | | | | | | |
| 712 | Sanchez | Corey | | | | | | | | | | |
| 716 | Egan | James P | | | | | | | | | | |
| 722 | Zanotelli | Joseph V | Zanotelli | Mary R | | | | | | | | |
| 734 | Collins | William | Collins | Lisa | | | | | | | | |
| 739 | Persson | Lars G | | | | | | | | | | |
| 746 | Phillips | Kari A | Phillips | Christopher J | | | | | | | | |
| 759 | Myhedyn | Mark | Alstyne | Tracie Van | | | | | | | | |
| 760 | Ripley | Rodney J | | | | | | | | | | |
| 801 | NCO PROPERTIES, LLC | | | | | | | | | | | |
| 831 | Matiasic | Paul A | | | | | | | | | | |
| 835 | Frost | Sherri R | Frost | Larry E | | | | | | | | |
| 852 | Webster | George W | Webster | Patricia A | Gross | Edward W. | Yeager | Pauline | Yeager | Michael E | | |
| 906 | Batrez | Joshua M | Batrez | Veronica | | | | | | | | |
| 907 | Smith | Todd Derek | Smith | Heather Leigh | | | | | | | | |
| 908 | Molitor | Michael P | Molitor | Kourtney A | | | | | | | | |
| 926 | GTives Consulting LLC | | | | | | | | | | | |
| 940 | Frankel | Paul  R | | | | | | | | | | |
| 943 | Jupp | Peter | Stewart-Jupp | Beth | | | | | | | | |
| 944 | Nguyen | Doris K | | | | | | | | | | |
| 1006 | Peterson | Clayton | Peterson | Rebecca | Peterson | Todd | Peterson | Tara | | | | |
| 1027 | Sturm | Marco | | | | | | | | | | |
| 1030 | Congtang | Yenchi | | | | | | | | | | |
| 1048 | Rock Star 1048 LLC (Brian Verburg) | | | | | | | | | | | |
| 1050 | Melillo | Joseph | | | | | | | | | | |
| 1052 | Martin | Kevin N | Martin | Nicole D | | | | | | | | |
| 1056 | Bono | Christy | Mays | Dennis Michael | | | | | | | | |
| 1058 | Fordham | Robert | | | | | | | | | | |
| 1111 | Veliz | Jose G | | | | | | | | | | |
| 1127 | Rose | Edward A Jr | Rose | Janice A | | | | | | | | |
| 1130 | Davis | Jason | Schranz | Jeffrey | | | | | | | | |
| 1138 | Salas | Marco M. | Salas | Fabiola | Salas | Jorge A | | | | | | |
| 1140 | Souissi | Slim | | | | | | | | | | |
| 1152 | Thompson | Blake | Shoemaker (J Tenant - Di | William | | | | | | | | |
| 1160 | Golledge | Heidi | | | | | | | | | | |
| 1224 | Johnson | Richard  M | Johnson | Cynthia A | | | | | | | | |
| 1227 | Magallon | Luis J | Magallon | Ofelia | | | | | | | | |
| 1231 | Clements | Jim | Clements | Lori | Dougherty | Stephen | Bargoon | Martha | | | | |
| 1248 | Yasukochi | Takeshi | Yasukochi | Joyce S.A. | | | | | | | | |
| | | | | | | | | | | | | |

**FORECLOSED UNITS**

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 228 | Simeon | Omer T II | Simeon | Jacqueline A | | | | | | | | |
| 346 | Van de Zilver | Eric | Van de Zilver | Valerie | | | | | | | | |
| 414 | Faticone | Carrie Ann | | | | | | | | | | |
| 424 | Ovanesian | Louisa | Dorian | Baret | Dorian | Mariam | Dorian | Charissa | | | | |
| 428 | Dimacali | Dexter C | Dimacali | Arlene B | Benedicto | Alexander | | | | | | |
| 435 | Tecson | Paul C | | | | | | | | | | |
| 444 | Pitner | Todd | Golec | Michael | | | | | | | | |
| 450 | Montoya | Gabriel H | Montoya | Vickie P | | | | | | | | |
| 505 | Rajasingam | Pat | Rajasingam | Patrick S | Chestang | Anne E | | | | | | |
| 527 | Veliz | Ernesto | | | | | | | | | | |
| 531 | Bollen | Jamin | Zlotoff | Wesley | Kennedy | Robert | | | | | | |
| 548 | Attias | Messod | | | | | | | | | | |
| 554 | Loya | Glenda | Gollaz (trustee) | James | Gollaz (trustee) | Sandra | | | | | | |
| 601 | Doherty | Ryan | Lucke | Richard T | Leibner | David | Weginer | Justin | | | | |
| 603 | Smargon | Magdalena | | | | | | | | | | |
| 631 | Mullen | Jesse | Mullen | Tobin | | | | | | | | |
| 634 | Tran | Bihn Phuong | Naito | Risa | | | | | | | | |
| 646 | Geiger | Andrew | | | | | | | | | | |

| Unit No. | Buyer No. 1 Last Name | First Name | Buyer No. 2 Last Name | First Name | Buyer No. 3 Last Name | First Name | Buyer No. 4 Last Name | First Name | Buyer No. 5 Last Name | First Name | Buyer No. 6 Last Name | First Name |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 654 | Higgins | Quinn | | | | | | | | | | |
| 660 | Gerke | John | Roper | Scott T. | | | | | | | | |
| 707 | Crichton | Leslie | | | | | | | | | | |
| 714 | Schroadter | Adam | Schroadter | Susanna | | | | | | | | |
| 725 | Masanes | Edgardo | Masanes | Arlene | | | | | | | | |
| 737 | Perez | Peter A | | | | | | | | | | |
| 750 | Hammi | Ray | Issa | Frank | | | | | | | | |
| 752 | Sandhu | Harmanjit Singh | | | | | | | | | | |
| 805 | Wayne | Brian | Hanley | Michelle (Mia?) | | | | | | | | |
| 806 | Yahya | Adbullah | Yahya | Rosalee | Yahya | Sandra | Yahya | Emad | Yahya | Astabrik | | |
| 808 | Ferrer | Frederick | | | | | | | | | | |
| 811 | Marshall | Frank | Marshall | Lizbeth | | | | | | | | |
| 841 | Geisen | Grant | Geisen | Gregory | Geisen | Linda | Jolly | Kevin | Walsh | Patrick | | |
| 844 | Rosana | Ardith | Rosana | Ruth E | | | | | | | | |
| 848 | Kinsey | William J | | | | | | | | | | |
| 901 | Alber | J. David  Jr. | | | | | | | | | | |
| 910 | Okada | Michael | Okada | Shirley | | | | | | | | |
| 918 | Walsh | Patrick | Jolly | Kevin | Geisen | Grant | Geisen | Linda | Geisen | Gregory | | |
| 924 | Luna | Scott | Saltzman | Kevin | | | | | | | | |
| 935 | Martos | Humberto J | Martos | Kimberly K | | | | | | | | |
| 937 | Devito | John | Knapic | Kristina | | | | | | | | |
| 939 | Bluestar Development LLC | | | | | | | | | | | |
| 950 | Ergueta | Ester E | | | | | | | | | | |
| 954 | Saragueta | Michael | Placencia | Karen J | | | | | | | | |
| 958 | Plati | Liliana | | | | | | | | | | |
| 960 | Hodlin | Matthew R | Hodlin | Bridgette | | | | | | | | |
| 1007 | Corley | Douglas E | Lotwis | Barbara A | | | | | | | | |
| 1014 | KAG Hard Rock LLC | | Gordon | Kenneth | | | | | | | | |
| 1034 | Burton Jr | Earnest | | | | | | | | | | |
| 1039 | Morris Investment Properties, LLC | | Morris | Ronald L | | | | | | | | |
| 1040 | Nabors | John | Nabors | Sandra | | | | | | | | |
| 1041 | Nguyen | Cuong Duc | | | | | | | | | | |
| 1043 | Greene | David  L | | | | | | | | | | |
| 1054 | Sample | Kelly | Sample | Kristy L | | | | | | | | |
| 1060 | Mullen | Jesse | | | | | | | | | | |
| 1112 | Dunton | Sewell N. III | Dunton | Linn | | | | | | | | |
| 1133 | Martel Jr. | William | | | | | | | | | | |
| 1134 | Schroadter | Adam | Schroadter | Adrienne | | | | | | | | |
| 1216 | Laffen | Gregory E | | | | | | | | | | |
| 1242 | Fu | Amy | Myong | Robert | | | | | | | | |
| 10 Units | Stanzaz, LLC | #454,506,612,709,728,822,832,909,932,1124 | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

## Mixed Units - Bell Non-Parties

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 448 | Martin | Anita | | | | | | | | | | |
| 456 | Roby | Stacy | | | | | | | | | | |
| 635 | Adler | Caren | | | | | | | | | | |
| 724 | Coen | Brendan | | | | | | | | | | |
| 742 | Avon | Joseph S. | Avon | Cynthia Beltran | | | | | | | | |
| 756 | Wallace | Michele | Wallace | Steven | | | | | | | | |
| 1214 | Adler | Caren | | | | | | | | | | |
| 1225 | Deposki | Kenneth | | | | | | | | | | |
| | | | | | | | | | | | | |

## Mixed Units - Salemeh Non-Parties

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 360 | Cantoral | Diane | | | | | | | | | | |
| 512 | Havluciyan | Kami | Nolan | James | | | | | | | | |
| 624 | Nolan | James | | | | | | | | | | |
| 733 | Alvarenga Family Living Trust | | | | | | | | | | | |
| 748 | Lashgari | Shane | Lashgari | Roseanne | | | | | | | | |

| Unit No. | Buyer No. 1 | | Buyer No. 2 | | Buyer No. 3 | | Buyer No. 4 | | Buyer No. 5 | | Buyer No. 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Last Name | First Name | Last Name | First Name | Last Name | First Name | Last Name | First Name | Last Name | First Name | Last Name | First Name |
| 842 | Lovejoy | Mariah | | | | | | | | | | |
| 928 | Reyna | Richard | | | | | | | | | | |